# EXHIBIT C

# Exhibit C – All Process Pleadings and Orders

**Monges et al v Wells Fargo Bank National Association et al.**


| **Description** | **Tab** |
|---|---|
| Docket Sheet | Tab 1 |
| Complaint | Tab 2 |
| Summons | Tab 3 |
| Order on Motion to Appoint Special Process Server | Tab 4 |
| Order on Plaintiff's Motion for Preliminary Injunction | Tab 5 |
| Amended Complaint | Tab 6 |
| Memorandum and Order | Tab 7 |
| Order of Remand | Tab 8 |
| Order on Motion to Withdraw Appearance of Natalie Langlois | Tab 9 |
| Order on Motion to Continue Hearing on Motion to Dismiss | Tab 10 |
| Order on Motion for Leave to Amend Complaint and Extend Tracking Order | Tab 11 |
| Memorandum of Decision and Order on Certain Defendants Motion to Dismiss for Failure to State a Claim Conclusion and Order | Tab 12 |
| Order on Motion to Continue Pre-Trial Conference | Tab 13 |
| Second Amended Complaint | Tab 14 |

# TAB 1

# Commonwealth of Massachusetts
# SUFFOLK SUPERIOR COURT
# Case Summary
# Civil Docket

## Monges et al v Wells Fargo Bank National Association et al

Details for Docket: SUCV2010-04419

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2010-04419 | **Caption:** | Monges et al v Wells Fargo Bank National Association et al |
| **Filing Date:** | 11/10/2010 | **Case Status:** | Active |
| **Status Date:** | 08/26/2011 | **Session:** | Civil D, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Most |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 10/31/2013 |
| **Service Date:** | 02/08/2011 | **Disposition:** | 10/25/2013 |
| **Rule 15:** | 02/03/2012 | **Rule 12/19/20:** | 04/09/2011 |
| **Final PTC:** | 02/20/2014 | **Rule 56:** | 11/30/2013 |
| **Answer Date:** | 07/12/2013 | **Jury Trial:** | NO |

**Case Information**

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2010-04419 | **Caption:** | Monges et al v Wells Fargo Bank National Association et al |
| **Filing Date:** | 11/10/2010 | **Case Status:** | Active |
| **Status Date:** | 08/26/2011 | **Session:** | Civil D, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Declaratory judgement (231A) |

**Tracking Deadlines**

| | | | |
|---|---|---|---|
| **TRK:** | A | **Discovery:** | 10/31/2013 |
| **Service Date:** | 02/08/2011 | **Disposition:** | 10/25/2013 |
| **Rule 15:** | 02/03/2012 | **Rule 12/19/20:** | 04/09/2011 |
| **Final PTC:** | 02/20/2014 | **Rule 56:** | 11/30/2013 |
| **Answer Date:** | 07/12/2013 | **Jury Trial:** | NO |

## Parties Involved

11 Parties Involved in Docket: SUCV2010-04419

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Alias defendant name |
| **Last Name:** | BAC Home Loans Servicing LP | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Alias deft name |
| **Last Name:** | BAC Home Loans Servicing LP | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | BAC Home Loans Servicing, LP, (As Amended) | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Bank of America dba (as amended) | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Gillis (As Amended) | **First Name:** | Richard |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

**Party**

| | | | |
|---|---|---|---|
| **Involved:** | | **Role:** | Defendant |
| **Last Name:** | Mortgage Electronic Registration Systems Inc | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Next Home Mortgage Company, Inc.(As Amended) | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Securities Asset Backed Receivables LLC 2005-FH4 Trust (amended) | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Wells Fargo Bank National Association | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Monges | **First Name:** | Ariel |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Santiago | **First Name:** | Delma |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

11 Attorneys Involved for Docket: SUCV2010-04419

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Scarino | **First Name:** | Robert H |
| **Address:** | Law Officed of Robert Scarino | **Address:** | 225 Cedar Hill Street Suite 200 |
| **City:** | Marlborough | **State:** | MA |
| **Zip Code:** | 01752 | **Zip Ext:** | |
| **Telephone:** | 508-630-2133 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Santiago, Delma (Plaintiff) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Langlois | **First Name:** | Natalie F |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Mortgage Electronic Registration Systems Inc, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Scarino | **First Name:** | Robert H |
| **Address:** | Law Officed of Robert Scarino | **Address:** | 225 Cedar Hill Street Suite 200 |
| **City:** | Marlborough | **State:** | MA |
| **Zip Code:** | 01752 | **Zip Ext:** | |
| **Telephone:** | 508-630-2133 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Monges, Ariel (Plaintiff) |

**Attorney**

| | | | |
|---|---|---|---|
| **Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Langlois | **First Name:** | Natalie F |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Wells Fargo Bank National Association, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Langlois | **First Name:** | Natalie F |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | BAC Home Loans Servicing, LP, (As Amended), (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Fazio | **First Name:** | Rosalie H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Wells Fargo Bank National Association, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Fazio | **First Name:** | Rosalie H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Mortgage Electronic Registration Systems Inc, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Good | **First Name:** | Thomas H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |

| | | | |
|---|---|---|---|
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Wells Fargo Bank National Association, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Good | **First Name:** | Thomas H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | Mortgage Electronic Registration Systems Inc, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Fazio | **First Name:** | Rosalie H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | BAC Home Loans Servicing, LP, (As Amended), (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | GOOD01 |
| **Last Name:** | Good | **First Name:** | Thomas H |
| **Address:** | 53 State Street | **Address:** | Exchange Place |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-570-1000 | **Tel Ext:** | |
| **Fascimile:** | 617-523-1231 | **Representing:** | BAC Home Loans Servicing, LP, (As Amended), (Defendant) |

## Calendar Events

9 Calendar Events for Docket: SUCV2010-04419

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 11/22/2010 | 14:00 | Motion/Hearing: prel inj | D | Event not held-joint request |

| | | | | | |
|---|---|---|---|---|---|
| 2 | 12/14/2010 | 14:00 | Motion/Hearing: prel inj | D | Event canceled not re-scheduled |
| 3 | 08/22/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | D | Event not held-joint request |
| 4 | 08/29/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | D | Event not held-joint request |
| 5 | 09/18/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | D | Event rescheduled by court prior to date |
| 6 | 10/30/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | D | Event not held-joint request |
| 7 | 11/15/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | D | Event held (ACTIVE ) Under Advisement |
| 8 | 04/25/2013 | 14:00 | Conf: final pre-trial | D | Event canceled not re-scheduled |
| 9 | 06/25/2013 | 14:00 | Conf: final pre-trial | D | Event canceled not re-scheduled |

## Full Docket Entries

85 Docket Entries for Docket: SUCV2010-04419

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 11/10/2010 | 1 | Complaint |
| 11/10/2010 | | Origin 1, Type D13, Track A. |
| 11/10/2010 | 2 | Civil action cover sheet filed (n/a) |
| 11/10/2010 | 3 | Motion of plffs for appointment of Quickserv Inc as special process |
| 11/10/2010 | 3 | server & Allowed (Hines,J) |
| 11/10/2010 | 4 | Plffs Motion for Preliminary Injunction |
| 11/10/2010 | 5 | Affidavit of Ariel Monges |
| 11/10/2010 | | Summons and order of notice issued; returnable 11/22/2010 2:00pm CTRM |
| 11/10/2010 | | 314 RE: PI (Hines, J) summons & order of notice issued (See P#1) |
| 12/10/2010 | 6 | Joint stipulartion to extend time for defts to file answer to & |
| 12/10/2010 | 6 | including January 6, 2011 |
| 12/10/2010 | | Copy of Petition for Removal Us Dist Court of defendants (US Dist# |
| 12/10/2010 | | 10-cv-12131) |
| 12/10/2010 | | Case REMOVED this date to US District Court of Massachusetts |
| 08/26/2011 | | ACTION RETURNED TO COURT ACCORDINGLY SEE P# 20 NOTICE SENT 9/20/2011 |
| 08/26/2011 | 7 | Notice of Removal of defendants |
| 08/26/2011 | 8 | Defendants' Response to Plaintiff's Motion for Preliminary Injunction |
| 08/26/2011 | 9 | ORDER: Accordingly it is hereby ORDRED that: 1. Plaintiffs' Motion |
| 08/26/2011 | 9 | for Prelininary Injunction is MOOT. 2. By january 15, 2011, the |
| 08/26/2011 | 9 | parties shall confer and report, jointly if possible but separtely of |
| 08/26/2011 | 9 | necessary, whether this case should be dismissed as moot. 3. If the |
| 08/26/2011 | 9 | parties doe not agree that the case should be dismissed as scheduling |
| 08/26/2011 | 9 | conference shall be held on January 20, 2011, at 4:00 p.m. the |
| 08/26/2011 | 9 | parties shall comply with the attached scheduling Order and also |

| | | |
|---|---|---|
| 08/26/2011 | 9 | explain, in their report, why the case is not moot. (Wolf, J.,USD) |
| 08/26/2011 | 9 | 12/ 15/ 2010 / |
| 08/26/2011 | 10 | Amended complaint and Jury Demand for Trial by Jury |
| 08/26/2011 | 11 | Plaintiffs' Motion to Remand with opposition |
| 08/26/2011 | 12 | Joint Motion for extension of time to respond to Amended Complaint |
| 08/26/2011 | 12 | and to continued scheduling conference |
| 08/26/2011 | 13 | Plaintiff's Motion for leave to file Reply Brief in support of Motion |
| 08/26/2011 | 13 | to Remand |
| 08/26/2011 | 14 | Motion to Dismiss of certain defendants |
| 08/26/2011 | 15 | Morion to stay Decision of certain defendant's motion to dismiss and |
| 08/26/2011 | 15 | to enlarge time for plaintiffs to respond with oppostion |
| 08/26/2011 | 16 | Defendants' Motion for leave to file reply in support of their Motion |
| 08/26/2011 | 16 | to Dismiss |
| 08/26/2011 | 17 | MOTION for leave to file notice of Supplemental Authorities in |
| 08/26/2011 | 17 | support of their Motion to Dismiss Assented to by defendants' |
| 08/26/2011 | 18 | MOTION for leave to filed second notice of Supplemental Authorities |
| 08/26/2011 | 18 | in support of their Motion to Dismiss Assented to by Defendants' |
| 08/26/2011 | 19 | CERTIFIED MEMORANDUM AND ORDER: In view of the foregoing, it is |
| 08/26/2011 | 19 | hereby ORDERED that plaintiffs' Motion to Remand is ALLOWED and this |
| 08/26/2011 | 19 | case is REMANDED to Suffolk Superior Court. (Wolf, J., USD) 08/23/2011 |
| 08/26/2011 | 20 | CERTIFIED ORDER OF REMAND: In accordance with the Court's Memorandum |
| 08/26/2011 | 20 | and Order dated August 23, 2011, in the above-referenced action, it |
| 08/26/2011 | 20 | is hereby ORDERED: This case is remanded to the Massachusetts |
| 08/26/2011 | 20 | Superior Court for Suffolk County (Wolf,J.,USD) 08/24/2011 |
| 08/26/2011 | 21 | Certified Docket Entries Recieved |
| 12/08/2011 | 22 | Defendants' Assented to MOTION for leave to withdraw appearance of |
| 12/08/2011 | 22 | Natalie F. Langlois |
| 12/19/2011 | | Motion (P#22) ALLOWED (Geraldine S. Hines, Justice) Notices mailed |
| 12/19/2011 | | 12/16/11 (entered 12/15/11) |
| 08/15/2012 | 23 | Parties' joint MOTION to continue hearing on motion to dismiss |
| 08/22/2012 | | Motion (P#23) ALLOWED (Jeffrey A. Locke, Justice) Dated 8/20/12 |
| 08/22/2012 | | Notices mailed 8/21/2012 |
| 11/09/2012 | 24 | Plaintiffs' MOTIONfor leave to amend complaint & extend the Tracking |
| 11/09/2012 | 24 | Order (w/opposition) |
| 11/09/2012 | 25 | Request for hearing filed by Plffs |
| 11/30/2012 | 26 | Certain Defendants' Assented to MOTION to Stay Discovery |
| 12/07/2012 | 27 | ORDER All discovery in the above reference matter is hereby STAYED |
| 12/07/2012 | 27 | pending this Court's rulings on Defendants Motion to Dismiss and |
| 12/07/2012 | 27 | Plaintiffs Motion to Amend; In the event that this Court denies |
| 12/07/2012 | 27 | Defendant Motion to Dismiss in whole or in part, or grants Plaintiffs |
| 12/07/2012 | 27 | Motion to Amend, Defendants shall respond to Plaintiffs Requests for |
| 12/07/2012 | 27 | Admission and Requests for Production within thirty (30) days and |
| 12/07/2012 | | |

| | | |
|---|---|---|
| | 27 | shall respond to Plaintiffs Interrogatories within forty-five (45) |
| 12/07/2012 | 27 | days from the entry of the order denying Defendants Motion (Geraldine |
| 12/07/2012 | 27 | S Hines, Justice) notice sent 12/6/12 |
| 12/07/2012 | | Motion (P#26) ALLOWED (Geraldine S Hines, Justice) Notices mailed |
| 12/07/2012 | | 12/6/2012 |
| 01/14/2013 | | Motion (P#24) ALLOWED (Geraldine Hines, Justice) Notices mailed |
| 01/14/2013 | | 1/11/2013 |
| 01/14/2013 | 28 | Second Amended complaint of Ariel Monges |
| 05/14/2013 | 29 | MEMORANDUM OF DECISION AND ORDER ON CERTAIN DEFENDANTS MOTION TO |
| 05/14/2013 | 29 | DISMISS FOR FAILURE TO STATE A CLAIM CONCLUSIION AND ORDER For the |
| 05/14/2013 | 29 | foregoing reasons the Motion to Dismiss is in all respects DENIED. |
| 05/14/2013 | 29 | (Hines, J.). dated 1/10/13 Notice sent 5/13/13 (Bonnie H. MacLeod, |
| 05/14/2013 | 29 | Justice). Copies mailed [dt] |
| 06/21/2013 | 30 | JOINT Motion of parties to continue Final Pre-Trial conference and to |
| 06/21/2013 | 30 | Amend Tracking order |
| 06/28/2013 | | Motion (P#30) Allowed as submitted (see P#2) For good cause shown No |
| 06/28/2013 | | furthr extensions to be considered (Bonnie H. MacLeod, Justice). |
| 06/28/2013 | | Notices mailed 6/18/13 (6/26/13) |
| 07/12/2013 | 31 | Joint Submissios relating to the Court's June 26, 2013 Order |

# TAB 2

1

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss. C.A. NO. 10-4419 D

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4 and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Defendants

Nov. 10, 2010
Order of notice returnable
Nov. 22, 2010 at 2:00pm
Rm 314 Re:
mo for Prel. Inj.
(Hines, J)
attest: Jane M. Malone
Asst. Clerk

Summons
& order of
notice issued

**COMPLAINT**

**INTRODUCTION**

This case involves an action brought by the owners of a condominium unit located in the Roslindale section of Boston, against Wells Fargo Bank, N.A., as the trustee of a mortgage securitization trust, which claims to be the current owner of the Plaintiffs' mortgage loan, and Mortgage Electronic Registration Systems, Inc., which claims to be the original owner of the same loan.

Wells Fargo Bank, as Trustee and as successor in interest to MERS, has commenced a proceeding to foreclose the plaintiffs' mortgage loan. This complaint seeks a declaratory judgment that an alleged assignment of the Plaintiffs' mortgage loan from MERS TO Wells Fargo Bank, N.A.,

as trustee, is invalid and that, as a result, the defendant securitization trust is not the current mortgagee and has no standing or authority to foreclose.

## PARTIES

1. The plaintiffs, Ariel Monges and Delma Santiago, are individuals residing at 20 Brook Street, Roslindale, Suffolk County, Massachusetts 02131. The plaintiffs are husband and wife.

2. Defendant Wells Fargo Bank, National Association, is a national banking association and has principal place of business at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104 ("Wells Fargo" or the "Trustee"). Wells Fargo is a direct and indirect subsidiary of Wells Fargo & Company, a publicly-traded company which has a principal place of business in the city and county of San Francisco, California.

3. Wells Fargo is the Trustee of a "securitization trust" known as Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, which has an address of 1015 10th Avenue SE, Minneapolis, Minnesota 55414 (the "Trust").

4. Defendant Mortgage Electronic Registration Systems, Inc., is a business corporation organized under the laws of Delaware with a principal office at 1818 Liberty Street, Reston, Virginia 20190 ("MERS"). MERS is a wholly-owned, subsidiary of MERSCORP., Inc., which also has a principal place of business at the same address. MERSCORP, Inc., is owned by a consortium of large banks, including Wells Fargo.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over actions for declaratory relief pursuant to G.L. c. 231A, §1 where an actual controversy has arisen. An actual controversy has arisen between the parties, as set forth and pleaded herein.

6. This Court has personal jurisdiction over the Plaintiffs who reside in Suffolk County and whose condominium unit, which is the subject of this action, is located Massachusetts, specifically Suffolk County.

7. The Court has personal jurisdiction over the Defendants under G.L. c. 223A, § 3, the Massachusetts "long-arm statute, by virtue of both Defendants having transacted business in Massachusetts and having an interest in real property located in Massachusetts, specifically the Plaintiffs' condominium unit.

8. This Court is the proper venue for this action because the Plaintiffs live in Suffolk County, the property which is the subject of this action is located in Suffolk County and all business between the parties was transacted in Suffolk County.

## STATEMENT OF FACTS

9. On March 4, 2005, the Plaintiffs, Ariel Monges and Delma Santiago, husband and wife, purchased Unit 20 (the "Unit"), of the Brook Street Condominium created by Master Deed dated May 21, 2004. The Unit has a street and post office address of 20 Brook Street, Roslindale, MA 02131. The Plaintiffs hold title to the Unit as tenants by the entirety.

10. The Plaintiffs paid $398,000.00 to purchase the Unit.

11. In order to finance their purchase of the Unit, the Plaintiffs obtained two mortgage loans from Fremont Investment & Loan, a banking corporation then organized under the laws of the State of California and having a then current address of 2727 East Imperial Highway, Brea, California 92821 ("Fremont").

12. Fremont has since filed for bankruptcy.

13. The amount of the first mortgage loan given by Fremont to the Plaintiffs was $358,200.00. The loan carried an initial fixed interest rate of 8.3% for a period of two years. After two years, beginning on of April 1, 2007, and every six months thereafter during the 30 year term of the loan, the interest rate was adjusted, with the new rate determined by adding a margin of 6.99% to the so-called LIBOR Index, subject to certain minimum and maximum interest rates and rate changes.

14. The amount of the second mortgage loan given by Fremont to the Plaintiffs was $19,900.00. The second mortgage loan carried a fixed interest rate of 12.25% and had a term of 15 years.

15. In order to secure the repayment of the two mortgage loans, the Plaintiffs granted two separate mortgages on the Unit, one for each loan.

16. The first mortgage was given by the Plaintiffs, as mortgagor, to defendant Mortgage Electronic Registration Systems, Inc. ("MERS") and is recorded in the Suffolk Registry of Deeds in Book 36602, Page 112. The mortgage contains the following statement with respect to the identify of the mortgagee:

> 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for the Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.

17. The second mortgage was also given by the Plaintiffs, as mortgagor, to MERS, and is recorded in the Suffolk Registry of Deeds in Book 36602, Page 133. The second mortgage contains the identical language set forth in paragraph 11 above, with MERS named as the mortgagee, as nominee for Fremont.

18. The Plaintiffs signed two promissory notes at the loan closing, one for the first mortgage loan and one for the second mortgage loan. Both notes were payable to Fremont. MERS is not named or mentioned in either note.

19. According to MERS' membership rules, MERS was "created for the purpose of serving as the mortgagee of record in the appropriate public records" with regard to loans registered on its computer system" (Rule 2, Section 5).

20. MERS owns, maintains and operates a proprietary computer system and database which claims to track the assignment and beneficial ownership of mortgages ("MERS® system").

21. Only banks who are members of MERS have access to the MERS® System. The information registered on the MERS® System is not available to the public.

22. The MERS® System is a tracking system. It does not assign or transfer ownership of mortgages which are registered on the system.

23. Although MERS was named as the mortgagee of the Plaintiffs' first mortgage loan (as nominee for Fremont), MERS did not lend money to the Plaintiffs, does not have a legal or equitable interest in either promissory note executed by the Plaintiffs, did not receive or collect loan payments from the Plaintiffs and did not service the loan.

24. If the Plaintiffs' loans are foreclosed, MERS will not receive any of the proceeds from a subsequent sale of the Unit.

25. After the closing on the Plaintiffs' mortgage loans took place, the Plaintiffs' first mortgage loan was "securitized".

26. The Plaintiffs do not know whether their second mortgage loan was also "securitized".

27. The securitization of mortgage loans, including the Plaintiffs' loan, involves pooling thousands of individual loans together and transferring the loans to a trust or other entity specifically created for that purpose.

28. The securitization of the Plaintiffs' loan was created and governed by a Pooling Service Agreement dated September 1, 2005 (the "PSA").

29. The parties to the PSA are Securitized Asset Backed Receivables, LLC, a Delaware limited liability company, as Depositor, Countrywide Home Loans Servicing LP, as "Servicer", Mortgageramp, LLC, as "Loan Performance Advisor", Fremont, as the "Responsible Party", and Wells Fargo, as Trustee for the Trust.

30. Under the terms of the PSA, the Trust had a "closing date" of September 29, 2005 (the "Closing Date").

31. In order to securitize the Plaintiffs' first mortgage loan, the PSA requires that MERS, as the original mortgagee, and Fremont, as the original note holder, transfer the mortgage and note, respectively, to the Depositor, that the Depositor then transfer the note and mortgage to the Sponsor, believed to be Barclays Bank, PLC, and that the Sponsor then sell and/or transfer the note and mortgage to the Trust.

32. The PSA requires all of the transfers described in the preceding paragraph to have been done by the Closing Date.

33. On November 16, 2006, an Assignment of Mortgage from MERS, as nominee for Fremont, to Wells Fargo, as Trustee (the "Assignment"), was allegedly executed. The Assignment purports to assign the first mortgage on the Plaintiffs' condominium unit.

34. The Assignment was recorded on December 14, 2006, in the Suffolk Registry of Deeds in Book 40933, Page 255 (the "Assignment"), and contains the following statement:

> Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan holder of a real estate mortgage from: [the Plaintiffs] to: Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan . . . for value received and other good and valuable consideration paid assigns said mortgage and the note and claim secured thereby to: Wells Fargo, N.A. as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 . . .

35. The Assignment was executed and recorded more than one year after the Closing Date for the Trust.

36. At no time did MERS have an interest in the promissory note for the Plaintiffs' first mortgage loan. Consequently, MERS had no authority to assign the note to the Trust.

37. The Assignment is signed on behalf of "Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan" by M. Kelly Michie, 1st Vice President of MERS ("Michie").

38. Michie's signature on the Assignment was allegedly notarized by Sandra L. Rivers, a notary public licensed in the State of Texas.

39. Although Michie's name appears on the signature line of the Assignment, Michie did not execute the Assignment. The Assignment was executed by another individual whose identity is not known.

40. Michie was not an employee of MERS, which claims to be the original mortgagee, or Fremont, the originating lender. Even if Michie did execute the Assignment, he or she had no authority to sign on behalf of MERS.

41. There are no other assignments of the mortgage, and no corporate resolutions or like documents recorded in the Suffolk Registry of Deeds which verify that Michie was appointed as a Vice President of MERS.

42. The Plaintiffs were unable to stay current with their mortgage loan payments and defaulted on their obligation to repay the two loans.

43. The Plaintiffs' loans were subsequently modified and the monthly payments were reduced. However, the Plaintiffs could not afford to make reduced monthly payment and again defaulted.

44. As a result, Wells Fargo, as Trustee, commenced a procedure to foreclose the mortgage by filing a notice in the Massachusetts Land Court directed to "all persons entitled to the benefit of the Servicemembers Civil Relief Act (the "Foreclosure Notice"). The Foreclosure Notice relates to the first mortgage given by the Plaintiffs and contains the following statement:

> Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 claiming to be the holder of [a] mortgage covering real property in Boston (Roslindale), numbered 20 Brook Street, Unit 20 of the Brook Street Condominium given by [the Plaintiffs] to "MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is solely acting as nominee for Fremont Investment & Loan, "Lender"; and its successors and assigns, dated March 4, 2005, and recorded at the Suffolk County Registry of Deeds at Book 36602, Page 112, and now held by plaintiff by assignment Wells Fargo, N.A. as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 . . . "

45. The Foreclosure Notice further states that a complaint was filed in the Land Court seeking authority to foreclose the above mortgage "by entry and possession and by exercise of the power of sale".

46. The Foreclosure Notice was recorded in the Suffolk Registry of Deeds on September 16, 2010 in Book 46916, Page 229.

47. The Plaintiffs are not entitled to the benefit of the Servicemembers Civil Relief Act and, to the best of their knowledge, no person claiming to be entitled to such benefits has filed an objection to the foreclosure with the Land Court.

48. Wells Fargo, through its attorneys, Guaetta and Benson, LLC, subsequently sent the Plaintiffs a letter or notice stating their client's intention " on or after October 26, 2010 at 2:00 P.M., to foreclose by sale under the power of sale for breach of condition, and by entry".

49. The Plaintiffs' subsequently received a new notice stating that the foreclosure sale has been postponed to November 29, 2010.

50. In order to have standing to foreclose the Plaintiffs' mortgage, the Trust must be the current mortgagee and must own and have possession of the underlying note.

51. Since the Trust was not the original mortgagee, it can be the current mortgagee only through a valid assignment of the mortgage.

52. The Assignment was not valid and did not transfer legal or equitable title to the mortgage to the Trust, or any of the rights associated therewith, including the right to foreclose under the power of sale, for the following reasons:

a) the Assignment was not executed by the person whose name appears on the Assignment (Michie) and it is possible that Michie's signature was forged;

b) since Michie did not execute the Assignment, the notarization of his or her signature is also fraudulent;

c) even if Michie did execute the Assignment, he or she had no authority to act or execute the Assignment on behalf of MERS;

d) even if the Assignment was properly executed with proper authority, the mortgage was transferred to several intervening assignees before being transferred to the Trust, and none of the intervening assignments are recorded;

e) the Assignment was made and subsequently recorded in the Registry of Deeds after the Closing Date for the Trust and therefore did not transfer ownership of the mortgage to the Trust.

53. Even if the Assignment is valid, the Trust, upon information and belief, does not currently have possession of the mortgage and/or the note.

54. Under General Laws Chapter 244, § 1, only a current mortgagee can foreclose a loan by entry and possession.

55. Under General Laws Chapter 244, § 14, only a mortgagee or certain other identified persons may foreclose a loan by exercising the power of sale contained in a mortgage. The Trust claims to be the current mortgagee, but does not qualify as one of the other classes of persons legally authorized to foreclose under G.L. c. 244, § 14.

56. The power of sale in the Plaintiffs' mortgage loan gives only the mortgagee the right to foreclose under the power of sale.

57. Since the Plaintiffs' first mortgage was never validly assigned to the Trust, the Trust is not the current mortgagee.

58. Since the Trust is not the current mortgagee of the Plaintiffs' first mortgage and may not have physical in possession of the note secured by such mortgage, the Trust has no standing or authority to foreclose.

## REQUESTS FOR RELIEF

WHEREFORE, the Plaintiffs, Ariel Monges and Delma Santiago, respectfully request this Court to:

a) enter a declaratory judgment and binding declaration that the purported assignment of the first mortgage on the Plaintiffs' condominium unit, from MERS, as nominee, to Wells Fargo, as trustee, which mortgage is recorded in Suffolk Registry of Deeds in Book 36602, Page 112, is invalid and did not transfer title to said mortgage to the Trust;

b) enter a declaratory judgment and binding declaration that the Trust is not the current mortgagee of the above mortgage;

c) after hearing, enter a preliminary injunction restraining and enjoining the Trust, its attorneys, nominees, agents, successor and assigns, and any other person from foreclosing either of the mortgages secured by the Plaintiffs' condominium unit;

d) grant such other relief as the Court deems just and appropriate.

ARIEL MONGES and DELMA SANTIAGO
By their attorney,

November 9, 2010

Robert Scarino
BBO NO. 444340
Dillon & Scarino, P.A.
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 598-6798
rs@dillonscarino.com

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT COUNTY OF SUFFOLK | DOCKET NO. 10-4419 |
|---|---|---|
| PLAINTIFF(S) Ariel Monges & Delma Santiago | DEFENDANT(S) Wells Fargo Bank, National Association, Trustee (see attached for full listing) | |

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Robert Scarino, Dillon & Scarino, PA, One Beacon Street, Suite 1320, Boston, MA 02108; Tel (617) 598-6798; BBO No. 444340 | |

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| D13 Declaratory Judgment G L C 231A - Average Track | | | [ ] Yes [x] No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses $________
2. Total doctor expenses $________
3. Total chiropractic expenses $________
4. Total physical therapy expenses $________
5. Total other expenses (describe) $________

Subtotal $________

B. Documented lost wages and compensation to date $________
C. Documented property damages to date $________
D. Reasonably anticipated future medical expenses $________
E. Reasonably anticipated lost wages and compensation to date $________
F. Other documented items of damages (describe) $________
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Total $________

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record [signature] Date: Nov 9, 2010

A.O.S.C. 3-2007

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### * CONTRACTS

| | | |
|---|---|---|
| A01 | Services, Labor and Materials F) | |
| A02 | Goods Sold and Delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or Lease of Real Estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

### *TORT

| | | |
|---|---|---|
| B03 | Motor Vehicle Negligence personal injury/property damage | (F) |
| B04 | Other Negligence- personal injury/property damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice-MedicaL | (A) |
| B07 | Malpractice-Other (Specify) | (A) |
| B08 | Wrongful Death, G.L. c.229, s.2A | (A) |
| B15 | Defamation (Libel-Slander) | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury- slip & fall | (F) |
| B21 | Environmental | (F) |
| B22 | Employment Discrimination | (F) |
| B99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth | (A) |

### * REAL PROPERTY

| | | |
|---|---|---|
| C01 | Land Taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

### EQUITABLE REMEDIES

| | | |
|---|---|---|
| D01 | Specific Performance of Contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L. c. 231A | (A) |
| D99 | Other (Specify) | (F) |

### MISCELLANEOUS

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency G.L. c. 30A | (X |
| E03 | Claims against Commonwealth or Municipality | (A |
| E05 | Confirmation of Arbitration Awards | (X |
| E07 | G.L. c.112, s.12S (Mary Moe) | (X |
| E08 | Appointment of Receiver | (X |
| E09 | General Contractor bond, G.L. c. 149, ss. 29, 29a | (A |
| E11 | Worker's Compensation | (X |
| E12 | G.L.c.123A, s.12 (SDP Commitment) | (X |
| E14 | G.L. c. 123A, s. 9 (SDP Petition) | |
| E15 | Abuse Petition, G. L. c. 209A | (X |
| E16 | Auto Surcharge Appeal | (> |
| E17 | Civil Rights Act, G.L. c.12, s. 11H | (A |
| E18 | Foreign Discovery Proceeding | (X |
| E19 | Sex Offender Registry G.L. c. 178M, s. 6 | (X |
| E25 | Plural Registry (Asbestos cases) | |
| E95 | **Forfeiture G.L. c. 94C, s. 47 | (F |
| E96 | Prisoner Cases | (F |
| E97 | Prisoner Habeas Corpus | (X |
| E99 | Other (Specify) | (X |

***Claims against the Commonwealth or a municipality are type E03, Average Track, cases.**
****Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.**

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes [ ] |

SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, **where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).**

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.

## CIVIL ACTION COVER SHEET - ATTACHMENT

Defendants:

1. Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4

2. Mortgage Electronic Registration Systems, Inc.

# TAB 3

# Commonwealth of Massachusetts

A TRUE COPY ATTEST
DAVID D. AYLES, PROCESS SERVER
AND DISINTERESTED PERSON

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 10-4419

Ariel Monges and Delma Santiago, Plaintiff(s)

v.

Mortgage Electronic Registration Systems, Inc., Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon Robert Scarino, Dillon & Scarino plaintiff's attorney, whose address is One Beacon Street, Ste. 1320 Boston, MA 02108, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the ____________ day of ____________, in the year of our Lord two thousand ____________.

Michael Joseph Donovan
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIVP 1 3rd Rev 10M - 8/09

# PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ______________, 20 ___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

______________________________________________________________

______________________________________________________________

______________________________________________________________

Dated:____________________, 20 ____.                    ______________________________

**N.B. TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| 11/17 , 20 10 |
|---|

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. ______

______________, Plff(s).

v.

______________, Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

# TAB 4

3

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss. C.A. NO. 10-4419 D

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4 and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
Defendants

Nov. 10, 2010
Motion allowed.
(Hines, J.)
attest:
Jane M. Mahon
Asst-Clerk

**MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVERS**

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, the Plaintiffs, Ariel Monges and Delma Santiago, move that:

1. Quickserv, Inc., 57 Providence Highway, 2nd Floor, Norwood, MA 02062, be specially appointed for the purpose of serving process and other papers in the above-captioned matter on Defendant Mortgage Electronic Registration Systems, Inc., with service to be made on its resident agent in Massachusetts;

2. Action Professional Services, 408 South 2nd Avenue, Suite 202, P.O. Box 675, Sioux Falls, South Dakota 57104, be specially appointed for the purpose of serving process and other papers on Defendant Wells Fargo Bank, N.A, as Trustee for the Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4.

# TAB 5

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARIEL MONGES, DELMA SANTIAGO )
Plaintiffs. )
)
v. ) C.A. No. 10-12131-MLW
)
)
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, AS TRUSTEE FOR )
SECURITIZED ASSET BACKED )
RECEIVABLES LLC 2005-FR4 )
MORTGAGE PASS-THROUGH )
CERTIFICATES, SERIES )
2005-FR4, ET AL )
Defendants. )

ORDER

WOLF, D.J. December 15, 2010

On November 9, 2010, plaintiffs filed in state court a complaint seeking declaratory and injunctive relief to prevent the foreclosure sale of their home by defendant Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 ("Wells Fargo"). Plaintiffs allege that defendant Mortgage Electronic Registration Systems, Inc. ("MERS") failed to assign properly Plaintiffs' mortgage to Wells Fargo, and therefore that Wells Fargo lacks the authority to foreclose on their home. Plaintiffs simultaneously filed a Motion for Preliminary Injunction to prevent the foreclosure sale.

On December 10, 2010, defendants removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446. On December 15, 2010, defendants responded to

plaintiffs' Motion for Preliminary Injunction, asserting that the foreclosure sale, formerly scheduled for January 20, 2011, was cancelled when plaintiffs initiated this case. Defendants represent that plaintiffs agree that the cancellation of the sale renders the Motion for Preliminary Injunction moot.

Accordingly, it is hereby ORDERED that:

1. Plaintiffs' Motion for Preliminary Injunction (Docket No. 1) is MOOT.

2. By January 15, 2011, the parties shall confer and report, jointly if possible but separately if necessary, whether this case should be dismissed as moot.

3. If the parties do not agree that the case should be dismissed, a scheduling conference shall be held on January 20, 2011, at 4:00 p.m. The parties shall comply with the attached Scheduling Order and also explain, in their report, why the case is not moot.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

# TAB 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BAC HOME LOANS SERVICING, LP, NEXT HOME MORTGAGE COMPANY, INC., and RICHARD GILLIS,
Defendants

Civil Action No. 10-12131

## FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

## INTRODUCTION

This action is brought by the owners of a condominium unit located in the Roslindale section of Boston and seeks a declaratory judgment that a purported assignment of their mortgage to Wells Fargo Bank, N.A., as the trustee of a mortgage securitization trust, was a nullity and that the trust, which is seeking to foreclose the Plaintiffs' loan, has no standing authority to do so. The Plaintiffs are seeking injunctive relief to stop the threatened foreclosure.

The Plaintiffs are also seeking money damages against the securitization trust for conversion, money had and received and unjust enrichment; against BAC Home Loans Servicing, LP, their mortgage loan servicer, for conversion; and against Defendant Next Home Mortgage Company, Inc.,

Case 1:11-cv-11213-MLW Document 1-6 Filed 07/05/11 Page 2 of 27

and its employee, Richard Gillis, their mortgage loan brokers, for fraud and misrepresentation, breach of fiduciary duty, negligent misrepresentation, breach of contract, breach of an implied covenant of good faith and fair dealing and unjust enrichment.

**PARTIES**

1. The plaintiffs, Ariel Monges and Delma Santiago, are individuals residing at 20 Brook Street, Roslindale, Suffolk County, Massachusetts 02131. The plaintiffs are husband and wife.

2. Defendant Wells Fargo Bank, National Association, is a national banking association and has principal place of business at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104 ("Wells Fargo" or the "Trustee"). Wells Fargo is a direct and indirect subsidiary of Wells Fargo & Company, a publicly-traded company which has a principal place of business in the city and county of San Francisco, California.

3. Defendant Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, is a securitization trust which has an address of 1015 10th Avenue SE, Minneapolis, Minnesota 55414 (the "Trust"). Wells Fargo is the Trustee of the Trust.

4. Defendant Mortgage Electronic Registration Systems, Inc., is a business corporation organized under the laws of Delaware with a principal office at 1818 Liberty Street, Reston, Virginia 20190 ("MERS"). MERS is a wholly-owned, subsidiary of MERSCORP., Inc., which also has a principal place of business at the same address. MERSCORP, Inc., is owned by a consortium of large banks, including Wells Fargo and Bank of America, N.A.

5 Defendant BAC Home Loans Servicing, LP ("BAC") is a limited partnership and subsidiary of Bank of America, N.A., with its principal executive offices located at 4500 Park

Granada, Calabasas, California 91302. BAC is a successor in interest to Countrywide Home Loans Servicing LP.

6. Defendant Next Home Mortgage Company, Inc., ("Next Home") is a Massachusetts corporation having a principal place of business at 229 Berkeley Street, Suite 500, Boston, MA 02116.

7. Defendant Richard Gillis is an individual and former employee of Next Home who, upon information and belief, is currently an inmate at MCI-Norfolk, a correctional facility located in Norfolk, Massachusetts.

**JURISDICTION**

8. The Plaintiffs' original complaint was removed to this Court from the Trial Court of Massachusetts, Superior Court Department, Suffolk County, by Defendants Wells Fargo and MERS. Removal was based solely on the fact that there was complete diversity of citizenship between the Plaintiffs and both original defendants.

9. This complaint, as now amended, includes two defendants who are residents of Massachusetts; specifically, Next Home Mortgage Company, Inc. and Richard Gillis.

10. Due to the addition of two party defendants who are residents of Massachusetts, there is no longer complete diversity of citizenship between the plaintiffs and defendants. As such, this Court now lacks jurisdiction over this matter and must remand the case to the state court from which it was removed.

## FACTS RELEVANT TO ALL CLAIMS

11. In late 2004 and/or early 2005, the Plaintiffs were looking to purchase their first home. Realizing that they needed to borrow money in order to purchase a home, the Plaintiffs entered into an agreement with a mortgage broker, Richard Gillis ("Gillis"), to obtain a mortgage loan for them.

12. Gillis was employed by Defendant Next Home Mortgage Company, Inc. ("Next Home"), at that time.

13. Under the terms of the agreement between the Plaintiffs and Gillis and Next Home, Gillis and Next Home agreed to obtain a mortgage loan for the Plaintiffs with the lowest interest rate and the most favorable terms which the Plaintiffs were qualified to receive, and the Plaintiffs agreed to compensate Gillis and Next Home for this service.

14. The Plaintiffs told Gillis that they could only afford to make a down payment of $10,000.00. Gillis assured the Plaintiffs that $10,000.00 would be a sufficient down payment, that he could obtain a suitable mortgage loan for them and that he would take care of the entire application process for them.

15. Upon information and belief, Gillis and/or other employees or agents of Next Home filled out a Uniform Residential Loan Application (the "Application") containing financial and other information pertaining to the Plaintiffs, including their incomes, without informing them that he was doing so. Upon information and belief, Gillis or another employee or agent of Next Home signed the Application on behalf of the Plaintiffs without their knowledge or consent and submitted it for approval to one or more mortgage lenders, including Fremont Investment & Loan.

16. The Plaintiffs found a new condominium unit in the Roslindale section of Boston (the "Unit") which they wanted to buy and signed an agreement to purchase the Unit from its owner, Lowell Investment, LLC. The Unit was part of the Brook Street Condominium created by Master Deed dated May 21, 2004, and has a street address of 20 Brook Street, Roslindale, MA 02131.

17. The Plaintiffs gave a $10,000.00 to a representative of the seller, Lowell Investment, LLC., as a deposit.

18. Gillis and Next Home arranged for the Plaintiffs to receive two mortgage loans (referred to, collectively, as the "Loans") from Fremont Investment & Loan, a banking corporation then organized under the laws of the State of California and having a then current address of 2727 East Imperial Highway, Brea, California 92821 ("Fremont").

19. The closing on the purchase of the Unit took place on March 4, 2005 (the "Closing"). The Plaintiffs received a deed to the property and took title to the Unit jointly.

20. The Plaintiffs paid $398,000.00 at the closing to purchase the Unit.

21. At the Closing, the Plaintiff received two "piggyback" mortgage loans from Fremont. which they used to purchase the Unit.

22. The first mortgage loan was for $358,200.00, had a term of 30 years and carried an initial fixed interest rate of 8.3% for a period of two years. After two years, beginning April 1, 2007, and every six months thereafter during the term of the loan, the interest rate was to be adjusted, with the new rate determined by adding a margin of 6.99% to the LIBOR Index, subject to certain minimum and maximum interest rates and rate changes.

23. The second mortgage loan was for $19,900.00, had a term of 15 years and carried a fixed interest rate of 12.25%.

24. In order to secure the repayment of the two mortgage loans, the Plaintiffs granted two separate mortgages on the Unit, one for each loan.

25. The first mortgage was given by the Plaintiffs, as mortgagors, to MERS and is recorded in the Suffolk Registry of Deeds in Book 36602, Page 112. The mortgage contains the following statement with respect to the identify of the mortgagee:

> 'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for the Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.

26. The second mortgage was also given by the Plaintiffs, as mortgagors, to MERS, and is recorded in the Suffolk Registry of Deeds in Book 36602, Page 133. The second mortgage contains the identical language set forth in paragraph 25 above, with MERS named as the mortgagee, as nominee for Fremont.

27. The Plaintiffs also signed two promissory notes at the loan closing, one for each mortgage loan. Both notes were payable to Fremont. MERS is not named or mentioned in either note.

28. The mortgage loans arranged by Gillis and Next Home and issued by Fremont contained predatory, unfair and deceptive terms.

29. Following the closing, both mortgage loans were initially serviced by Countrywide.

30. The Plaintiffs were not able to stay current with their mortgage payments and had fallen several months behind by January 2007.

31. At that time, the Plaintiffs entered into a repayment agreement with Countrywide in connection with their first mortgage loan. The terms of this repayment agreement required the

Plaintiffs to resume paying the regular monthly payment of $2,703.64, plus the additional sum of $826.97 per month for a period of 10 months. This brought the new monthly payment to $3.530.61, beginning with the payment due in February 2007.

32. A few months later, the interest rate on the Plaintiffs' first mortgage loan reset, with the rate increasing from 8.3% to 11.3% .This increased the Plaintiffs' total monthly payment due beginning May 1, 2007, including principal, interest and taxes but excluding the past due amount under the repayment agreement, from $2,703.64 to $4,102.60, an increase of almost $1,400.00. The total monthly payment on the Plaintiffs' first mortgage loan, including the additional payment for arrearages under the repayment agreement, was now approximately $4,930.00. The Plaintiffs also had to make payments on their second mortgage loan.

33. The Plaintiffs could not afford the higher payment on their first mortgage loan and defaulted.

34. On or about October 29, 2007, Defendant Wells Fargo, as Trustee for the Trust, began proceedings to foreclose the Plaintiffs' first mortgage loan.

35. Hoping to negotiate a modification of their mortgage loan and avoid foreclosure, the Plaintiffs consulted with the Neighborhood Assistance Corporation of America ("NACA"), a non-profit, HUD-certified counseling agency that provides assistance to homeowners who are struggling to pay their mortgage loans or which are threatened with foreclosure.

36. On or about February 22, 2008, with the assistance of NACA, the Plaintiffs negotiated a modification of their first mortgage loan and entered into a Loan Modification Agreement with Countrywide. The Plaintiffs' second mortgage loan was not modified.

37. The Modification Agreement with Countrywide contained the following terms:

a) accrued interest, late fees and other charges, and escrow advances paid by Countrywide were capitalized and added to the principal balance of the loan, bringing the new principal balance to $405,991.30;

b) the interest rate was reduced to a fixed rate of 5.25%;

c) the new monthly payment, including principal, interest and taxes, was reduced to $2,755.65, beginning with the payment due on March 1, 2008.

38. As a result of the loan modification agreement describe above, the Trust chose not to proceed with foreclosure.

39. Due to circumstances beyond their control, the Plaintiffs again began falling behind on their mortgage loan payments.

40. In May 2009, with the assistance of NACA, the Plaintiffs negotiated a second modification of their first mortgage loan and entered into a Loan Modification Agreement with defendant BAC, which was now servicing the loan as successor in interest to Countrywide.

41. According to the terms of this Loan Modification Agreement with BAC, the new principal balance for the first mortgage loan was $396,452.53, the interest rate was 5.25% starting June 1, 2009, and the new monthly payment for principal and interest was $2,338.80 beginning July 1, 2009.

42. In late September 2009, the Plaintiffs received a Notice of Intention To Foreclose from BAC. According to this notice, the Plaintiffs had to pay the sum of $12,629.04 to cure their default and bring their first mortgage loan current.

43. The Plaintiffs, with the assistance of NACA, tried to negotiate another loan modification with BAC, but BAC turned down their Plaintiffs' request on grounds that the "investors" who owned the Plaintiffs' the loan would not permit a modification.

COUNT I - DECLARATORY JUDGMENT

*Against Wells Fargo, as Trustee, and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4*

44. The Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 43 herein.

45. Within a few months following the Closing, the Plaintiffs' first mortgage loan was sold on the secondary market and securitized.

46. The securitization of mortgage loans, including the Plaintiffs' loan, involves pooling thousands of individual loans together and transferring the loans to a trust or other special purpose entity specifically created for that purpose.

47. The securitization of the Plaintiffs' loan was created under and governed by a Pooling Service Agreement dated September 1, 2005 (the "PSA").

48. The parties to the PSA include Securitized Asset Backed Receivables, a Delaware limited liability company, as Depositor (the "Depositor"), Defendant Countrywide as "Servicer", Fremont, as the "Responsible Party", Wells Fargo, as Trustee for the Trust, and Barclays Bank, as "Purchaser".

49. Pursuant to the PSA, the Depositor created an express trust, under the laws of the State of New York, to be known as Securitized Asset Backed Receivables LLC Trust 2005-FR4, and appointed Wells Fargo as Trustee thereof.

Case 1:10-cv-11751-NMG Document 1-6 Filed 07/25/11 Page 47 of 153

50. Concurrently with the execution of the PSA, the Plaintiffs' first mortgage loan, together with thousands of other loans, was conveyed by the Depositor to Wells Fargo, as Trustee.

51. The PSA required the Depositor, in connection with the assignment and transfer of each loan sold to the Trust, to deliver or cause to be delivered to the Trustee the following documents at the time the PSA was executed:

a) "the original [promissory note] bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed "Pay to the order of _____________, without recourse" and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer. (§ 2.01(b)(I)); and

b) "the original [mortgage] with evidence of recording thereon; (§ 2.01(b)(iii);

c) "the original Assignment of Mortgage for each Mortgage Loan endorsed in blank (except with respect to MERS Designated Loans)" (§ 2.01(b)(iv));

d) "the originals of all intervening assignments of Mortgage (if any) evidencing a complete chain of assignment from the applicable originator to the last endorsee (or, in the case of a MERS Designated Loan, MERS) with evidence of recording thereon" (§ 2.01(b)(vi).

52. Under the terms of the PSA, the Trust had a "closing date" of September 29, 2005 (the "Closing Date").

53. The PSA requires the Trustee to acknowledge that it had received by the closing date, a promissory note and a mortgage assignment for each loan. (§ 2.02).

Case 1:10-cv-11521-WGY Document 1-6 Filed 09/02/10 Page 13 of 75

54. On November 16, 2006, an Assignment of Mortgage from MERS, as nominee for Fremont, to Wells Fargo, as Trustee (the "Assignment"), was allegedly executed. The Assignment purports to assign the first mortgage on the Unit.

55. The Assignment was recorded on December 14, 2006, in the Suffolk Registry of Deeds in Book 40933, Page 255, and contains the following statement:

> Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan holder of a real estate mortgage from: [the Plaintiffs] to: Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan . . . for value received and other good and valuable consideration paid assigns *said mortgage and the note and claim secured thereby* to: Wells Fargo, N.A. as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 . . . (emphasis added)

56. While the Assignment states that MERS was assigning both the promissory note for the Plaintiffs' first mortgage loan and the mortgage securing that note, MERS did not own or hold the note and had no legal or equitable interest in the note. Accordingly, MERS had no authority to assign the note to the Trust and the purported assignment was ineffective.

5. The Assignment was allegedly executed more than a year after the Trust's Closing Date (September 29, 2005).

58. According to MERS' membership rules, MERS was "created for the purpose of serving as the mortgagee of record in the appropriate public records" with regard to loans registered on its computer system" (Rule 2, Section 5).

59. MERS owns, maintains and operates a proprietary computer system and database which claims to track the assignment and beneficial ownership of mortgages ("MERS® system").

60. Only banks who are members of MERS have access to the MERS® System. Information registered on the MERS® System relating to the assignment of mortgages is not available to the public.

61. The MERS® System is a tracking system only. It does not assign or transfer ownership of mortgages which are registered on the system.

62. Although MERS was named as the mortgagee of the Plaintiffs' first mortgage loan (as nominee for Fremont), MERS did not lend money to the Plaintiffs, does not have a legal or equitable interest in either promissory note executed by the Plaintiffs, has not received or collected loan payments from the Plaintiffs and has not serviced either of the Plaintiffs' mortgage loans.

63. If the Plaintiffs' loans are foreclosed, MERS will not receive any of the proceeds from the sale of the Unit.

64. The Assignment is signed on behalf of "Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Fremont Investment & Loan" by M. Kelly Michie, 1st Vice President of MERS ("Michie").

65. Michie's signature on the Assignment was allegedly notarized by Sandra L. Rivers, a notary public licensed in the State of Texas.

66. Although Michie's name appears on the signature line of the Assignment, Michie did not execute the Assignment. The Assignment was executed by another individual whose identity is not known.

67. Michie was not an employee of MERS, which claims to be the original mortgagee, or Fremont, the originating lender. Even if Michie did execute the Assignment, he or she had no authority to sign on behalf of MERS.

68. There are no other assignments of the mortgage, and no corporate resolutions or like documents recorded in the Suffolk Registry of Deeds which verify that Michie was appointed as a Vice President of MERS.

69. Wells Fargo, as Trustee, commenced a procedure to foreclose the mortgage by filing a notice in the Massachusetts Land Court directed to "all persons entitled to the benefit of the Servicemembers Civil Relief Act (the "Foreclosure Notice"). The Foreclosure Notice relates to the first mortgage given by the Plaintiffs and contains the following statement:

> Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 claiming to be the holder of [a] mortgage covering real property in Boston (Roslindale), numbered 20 Brook Street, Unit 20 of the Brook Street Condominium given by [the Plaintiffs] to "MERS", Mortgage Electronic Registration Systems, Inc., a separate corporation that is solely acting as nominee for Fremont Investment & Loan, "Lender"; and its successors and assigns, dated March 4, 2005, and recorded at the Suffolk County Registry of Deeds at Book 36602, Page 112, and now held by plaintiff by assignment Wells Fargo, N.A. as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 . . . "

70. The Foreclosure Notice further states that a complaint was filed in the Land Court seeking authority to foreclose the above mortgage "by entry and possession and by exercise of the power of sale".

71. The Foreclosure Notice was recorded in the Suffolk Registry of Deeds on September 16, 2010 in Book 46916, Page 229.

72. The Plaintiffs are not entitled to the benefit of the Servicemembers Civil Relief Act and, to the best of their knowledge, no person claiming to be entitled to such benefits has filed an objection to the foreclosure with the Land Court.

73. Wells Fargo, through its attorneys, Guaetta and Benson, LLC, subsequently sent the Plaintiffs a letter or notice stating their client's intention " on or after October 26, 2010 at 2:00 P.M., to foreclose by sale under the power of sale for breach of condition, and by entry".

74. The foreclosure sale was subsequently canceled and, at the time this Complaint was filed, no new auction sale date had been scheduled.

75. In order to have standing to foreclose the Plaintiffs' mortgage, the Trust must be the current mortgagee and must own and have possession of the underlying note.

76. Since the Trust was not the original mortgagee, it can be the current mortgagee only through a valid assignment of the mortgage.

77. For the following reasons, the Assignment is a nullity and did not transfer legal or equitable title to the Mortgage or Note to the Trust, or any of the rights associated therewith, including the right to foreclose under the power of sale:

a) the Assignment was not executed by the person whose name appears on the Assignment (Michie);

b) since Michie did not execute the Assignment, the notarization of his or her signature is also fraudulent;

c) even if Michie did execute the Assignment, he or she had no authority to act or execute the Assignment on behalf of MERS;

d) even if the Assignment was properly executed with proper authority, the mortgage was transferred to several intervening assignees before being transferred to the Trust, and none of the intervening assignments are recorded;

e) the Assignment was made and subsequently recorded in the Registry of Deeds after the Closing Date for the Trust and therefore did not transfer ownership of the mortgage to the Trust.

78. Upon information and belief, the note and mortgage were not delivered to the Trust by its Closing Date and/or have never been delivered to the Trust, as expressly required by the PSA.

79. Under General Laws Chapter 244, § 1, only a current mortgagee can foreclose a loan by entry and possession.

80. Under General Laws Chapter 244, § 14, only a mortgagee or certain other identified persons may foreclose a loan by exercising the power of sale contained in a mortgage. The Trust claims to be the current mortgagee, but does not qualify as one of the other classes of persons legally authorized to foreclose under G.L. c. 244, § 14.

81. The power of sale in the Plaintiffs' mortgage loan gives only the mortgagee the right to foreclose under the power of sale.

82. Since the Plaintiffs' first mortgage was never validly assigned to the Trust, the Trust is not the current mortgagee.

83. Since the Trust is not the current mortgagee of the Plaintiffs' first mortgage and does not have physical possession of the note secured by such mortgage, the Trust has no standing or authority to foreclose.

84. As a consequence, this Court should enter a binding declaration that the Assignment of Plaintiffs' first mortgage from MERS to the Trust in a nullity and that the Trust is not the current mortgagee and has no standing to foreclose.

.

COUNT II - CONVERSION

*Against Wells Fargo, as Trustee, and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4*

85. The Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 herein.

86. Upon information and belief, the promissory note evidencing the Plaintiffs' first mortgage loan was not properly endorsed to the Trust, as required by the PSA.

87. Upon information and belief, neither the promissory note nor the mortgage for the Plaintiffs' first mortgage were delivered to the Trust by its Closing Date and/or have ever been delivered to the Trust in the manner expressly required by the PSA.

88. Due to the failure to deliver the note to the Trust with proper endorsements and/or the failure to deliver the note and firs mortgage to the Trust, the Trust does not currently own or hold the Note and is not the current mortgagee.

89. The Trust had no right to collect or receive payments made by the Plaintiffs for the first mortgage loan since it does not own the note.

90. The Trust has nevertheless collected and received funds from the Plaintiffs in the form of mortgage loan payments made by the Plaintiffs through the entities servicing the loans, and has exercised dominion and control over the funds it received.

91. The acts of the Trust in collecting and receiving loan payments made by the Plaintiffs were intentional.

92. The Plaintiffs are still liable for failing to make loan payments to the rightful owner of the Note.

93. For the foregoing reasons, the Trust is required to return all of the loan payments collected or received from the Plaintiffs.

<u>COUNT III - MONEY HAD AND RECEIVED</u>
*Against Wells Fargo, as Trustee and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4*

94. The Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 93 herein.

95. The Trust has unjustly received money from the Plaintiffs in the form of loan payments which it was not entitled to receive and to which it has no rightful claim.

96. The money received from the Plaintiffs in the form of mortgage loan payments should not in justice and good conscience be retained by the Trust.

97. For the foregoing reasons, the Plaintiffs should recover all monies paid to the Trust and the Trust should disgorge all such monies received from the Plaintiffs.

<u>COUNT IV - UNJUST ENRICHMENT</u>
*Against Wells Fargo, as Trustee and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4*

98. The Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 97 herein.

99. Since the Trust does not own the Note, it was not entitled to collect loan payments from the Plaintiffs and has been unjustly enriched by the collection of such payments at the expense of the Plaintiffs who are still liable to the rightful owner of their loan.

100. The Trust should therefore be required to disgorge all funds received from mortgage loan payments made by the Plaintiff and pay such funds to the Plaintiffs.

<u>COUNT V - CONVERSION</u>
*Against BAC Home Loans Servicing, LP*

101. The Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 100 herein.

102. BAC is the current servicer of the Plaintiffs' first mortgage loan and is a successor in interest to the initial servicer, Countrywide. As such, it is liable for its own acts and conduct and the acts and conduct of Countrywide.

103. Countrywide and BAC received compensation from the Trust for performing their servicing duties under the PSA.

104. Countrywide's and BAC's servicing duties included sending monthly loan statements to the Plaintiffs, collecting monthly mortgage loan payments from the Plaintiffs, including amounts for escrow, and distributing the net payments received to the Trust after deducting servicing fees.

105. For the reasons set forth above, the Trust does not own the Plaintiffs' first mortgage loan and therefore had no right to collect and receive mortgage loan payments from the Plaintiffs.

106. BAC wrongfully distributed loan payments it received from the Plaintiffs to the Trust even though the Trust does not own the Plaintiffs' first mortgage loan.

107. The conduct and actions of BAC in doing so were intentional.

108. For the foregoing reasons, BAC is required to return all of the loan payments collected or received from the Plaintiffs and which it thereafter distributed to the Trust and all fees it received as compensation for performing servicing duties.

COUNT VI - COMMON LAW FRAUD AND MISREPRESENTATION
*Against Richard Gillis and Next Home Mortgage Company, Inc.*

109. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 108 herein.

110. At all times material and relevant hereto, Gillis was employed by and acted as an authorized agent of Next Home, and Next Home is liable for the actions of Gillis, its authorized agent.

111. In the course of their dealings and communications with the Plaintiffs, Gillis and Next Home made material misrepresentations to the Plaintiffs and omitted and failed to apprise the Plaintiffs of material facts regarding the Plaintiffs' mortgage loans and the loan application process and procedures.

112. These false and misleading misrepresentations made by Gillis and Next Home include, but may not be limited to, preparing a Uniform Residential Loan Application (the "Loan Application") which had false and inaccurate information relating to the Plaintiffs, including their incomes; signing the Plaintiffs' names on the Loan Application without their knowledge or consent; submitting the Loan Application to Fremont and possibly other lenders without their knowledge or consent; misrepresenting the terms of the mortgage loans which they procured for the Plaintiffs and omitting material information and terms in connection therewith; arranging a loan for the Plaintiffs with knowledge that the Plaintiffs could not afford to make payments thereon; and misleading the Plaintiffs to believe that they would be able to refinance the loans in the near future.

113. Gillis and Next Home knew that their statements and representations were false and misleading at the time they were made and made those statements and representations with the intent to mislead, deceive and defraud the Plaintiffs.

114. The Plaintiffs justifiably relied on the false statements and representations and misleading omissions described herein.

115. The Plaintiffs would not have closed on the mortgage loans had they not been deceived and misled.

116. As a result of fraud on the part of Gillis and Next Home, the Plaintiffs suffered damages which they will prove at trial.

COUNT VII - BREACH OF FIDUCIARY DUTY

*Against Richard Gillis and Next Home Mortgage Company, Inc.*

117. The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 116 herein.

118. The Plaintiffs hired Gillis and Next Home as a mortgage loan broker to act on their behalf and to obtain for them a mortgage loan or loans having the lowest interest rate and the most favorable terms which they were qualified to receive, which induced the Plaintiffs to trust and rely on Gillis and Next Home to act in their best interest.

119. In consideration of Gillis' and Next Home's promise and agreement to obtain a mortgage loan or loans for the Plaintiffs having the lowest interest rate and the most favorable terms which they were qualified to receive, the Plaintiffs agreed to compensate Gillis and Next Home for their services.

120. In arranging and procuring mortgage loans for the Plaintiffs, Gillis and Next Home acted as their agent by express and implied contract and by operation of law.

121. In their capacity as an agent for the Plaintiffs, Gillis and Next Home owed a fiduciary duty and a duty of loyalty to the Plaintiffs to act primarily for their benefit, to act on their behalf with skill and diligence, to not arrange a loan with disadvantageous terms and to not to profit at their expense.

122. Gillis and Next Home breached their fiduciary duty to the Plaintiffs by:

a) failing to arrange mortgage loans for the Plaintiffs with the lowest interest rate and most favorable terms which they were qualified to receive;

b) arranging and procuring mortgage loans for the Plaintiffs that contained terms that were not advantageous and not in their interest;

c) arranging and procuring mortgage loans for the Plaintiffs with knowledge that the Plaintiffs could not afford to make the payments thereon;

d) accepting and receiving excessive fees and compensation unrelated to the services provided to the Plaintiffs, including, but not limited to, accepting and receiving an excessive and unjustified "yield spread premium" from Fremont which was intended as an incentive to steer the Plaintiffs into loans with higher interest rates and/or less favorable terms than the Plaintiffs were qualified to receive;

e) making false and misleading statements and representations and failing to disclose important and material facts to the Plaintiffs which, if known, would have caused them not to enter into the loan transaction described herein and/or to seek a loan from other sources; and

f) failing to act in good faith and in the Plaintiff's best interest, and by profiting at their expense.

123. As a result of the breach of their fiduciary duty to the Plaintiffs, Gillis and Next Home are liable to the Plaintiffs for damages to be proven at trial.

<u>COUNT VIII - NEGLIGENT MISREPRESENTATION</u>
*Against Richard Gillis and Next Home Mortgage Company, Inc.*

124. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 123 herein.

125. Based on their superior knowledge of and expertise with regard to mortgage loans and the mortgage loan process, Gillis and Next Home owed a duty to the Plaintiffs to provide complete and accurate information regarding the terms of the loans they arranged for the Plaintiffs.

126. Gillis and Next Home breached their duty to provide complete and accurate information to the Plaintiffs.

127. Gillis and Next Home likewise made false and inaccurate statements and misrepresentations which they knew, or were negligent in not knowing at the time to be false, in order to induce the Plaintiffs to accept and close on the mortgage loans arranged for them.

128. At the time these misrepresentations were made, Gillis and Next Home knew or were negligent in not knowing that their statements were false, misleading and inaccurate, and that such information was not known to the Plaintiffs.

129. Gillis and Next Home knew or were negligent in not knowing that the Plaintiffs were relying on their false, misleading and inaccurate misrepresentations and on their misleading omissions.

130. The Plaintiffs did rely on such false, misleading and inaccurate misrepresentations and omissions and suffered damages as a result.

131. By reason of the foregoing, Gillis and Next Home are liable to the Plaintiffs for negligent misrepresentation.

<u>COUNT IX - BREACH OF CONTRACT</u>
*Against Richard Gillis and Next Home Mortgage Company, Inc.*

132. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 131 herein.

133. The Plaintiffs and Gillis and Next Home entered into a binding and enforceable contract whereby Gillis and Next Home agreed to procure a mortgage loan for the Plaintiffs with the lowest interest rate and the most favorable terms then available and the Plaintiffs agreed to compensate Gillis and Next Home for this service.

134. The Plaintiffs paid consideration to Gillis and Next Home for their services in the form of fees that were deducted from the gross mortgage loan proceeds at the time of closing.

135. The Plaintiffs duly performed all of their obligations under their agreement with Gillis and Next Home.

136. Gillis and Next Home failed to perform the services they agreed to provide and breached their agreement with the Plaintiffs by arranging and procuring mortgage loans for the Plaintiffs that did not have the lowest interest rates and/or the most favorable terms which they were qualified to receive.

137. As a result, the Plaintiffs have suffered damage and injuries which will be proven at trial.

Case 1:10-cv-11251-NMG Document 1-3 Filed 07/22/10 Page 24 of 23

138. By reason of the foregoing, Gillis and Next Home are liable to the Plaintiffs for breach of contract.

COUNT X - UNJUST ENRICHMENT

*Against Richard Gillis and Next Home Mortgage Company, Inc.*

139. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 138 herein.

140. Gillis and Next Home were unjustly and wrongfully enriched at the expense of the Plaintiffs through their receipt of fees and compensation paid by the Plaintiffs and through their receipt of an excessive yield spread premium paid to them by Fremont as an incentive to steer the Plaintiffs into mortgage loans with higher interest rates and/or less advantageous terms than the Plaintiffs were otherwise qualified to receive.

141. Gillis and Next Home failed to perform the services for which they were compensated.

142. Gillis and Next Home were unjustly enriched at the expense of the Plaintiffs and profited at the Plaintiffs' expense.

143. The Plaintiffs were damaged and harmed by the unjust enrichment of Gillis and Next Home.

144. As a result of such unjust enrichment, Gillis and Next Home are liable to the Plaintiffs to return and pay over to the Plaintiffs all of the compensation they received in connection with the Plaintiffs' mortgage loans, including the above-described yield spread premium.

<u>COUNT XI - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING</u>

*Against Richard Gillis and Next Home Mortgage Company, Inc.*

145. Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 144 herein.

146. The Agreement between the Plaintiffs and Gillis and Next Home includes an implied covenant of good faith and fair dealing.

147. Gillis and Next Home breached the implied covenant of good faith and fair through their conduct described herein.

148. As a result of such breach, the Plaintiffs were damaged and were denied their right to receive the fruits of their agreement with Gillis and Next Home, to wit: to receive a mortgage loan with the lowest interest rate and most favorable terms they were qualified to receive.

149. Gillis and Next Home are liable to the Plaintiffs for their bad faith in breaching the implied covenant of good faith and fair dealing.

**REQUESTS FOR RELIEF**

WHEREFORE, the Plaintiffs, Ariel Monges and Delma Santiago, respectfully request this Court to:

a) enter a declaratory judgment and binding declaration that the purported assignment of the first mortgage secured by the Plaintiffs' condominium unit, from MERS, as nominee, to Wells Fargo, as Trustee, for Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, which mortgage is recorded in Suffolk Registry of Deeds in Book 36602, Page 112, is a nullity;

b) enter a declaratory judgment and binding declaration that neither Wells Fargo, as Trustee, nor Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, as certificate holders and beneficiaries, are the current mortgagee of the first mortgage secured by the Plaintiffs' condominium and that neither of said defendant, nor any of their predecessors, successors, nominees, assigns, subsidiaries, affiliates, attorneys or agents have standing or authority to foreclose said mortgage;

c) after hearing, enter a preliminary injunction restraining and enjoining Wells Fargo, as Trustee, for Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, and their predecessors, successors, nominees, assigns, subsidiaries, affiliates, attorneys or agents, and any other person from foreclosing the first mortgage secured by the Plaintiffs' condominium unit unless and until said mortgage is validly assigned;

d) award damages in favor of the Plaintiffs against all Defendants, jointly and severally, or as the Court deems just and proper, for all damages and monetary losses suffered by the Plaintiffs as a result of the Defendants' wrongful acts and conduct, in an amount to be proven at trial;

e) award the Plaintiffs' attorneys' fees and costs of suit;

f) grant such other relief as the Court deems just and proper.

Case 1:10-cv-11252-MLW Document 1-6 Filed 01/05/11 Page 27 of 27

**JURY TRIAL DEMANDED**

The Plaintiffs demand a trial by jury on all issues so triable.

ARIEL MONGES and DELMA SANTIAGO
By their attorney,

January 5, 2011

/s/ Robert Scarino
Robert Scarino
BBO NO. 444340
Dillon & Scarino, P.A.
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 598-6798
rs@dillonscarino.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 5, 2011.

/s/ Robert Scarino
Robert Scarino

# TAB 7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ARIEL MONGES, )
DELMA SANTIAGO, )
Plaintiffs. )
)
v. ) C.A. No. 10-12131-MLW
)
WELLS FARGO BANK, NATIONAL )
ASSOCIATION, AS TRUSTEE FOR )
SECURITIZED ASSET BACKED )
RECEIVABLES LLC 2005-FR4 )
MORTGAGE PASS-THROUGH )
CERTIFICATES, SERIES )
2005-FR4, and MORTGAGE ELECTRONIC )
ELECTRONIC REGISTRATION SYSTEMS, )
Defendants. )

MEMORANDUM AND ORDER

WOLF, D.J. August 23, 2011

## I. INTRODUCTION

On November 9, 2010, plaintiffs Ariel Monges and Delma Santiago, who are married, filed a complaint in Suffolk Superior Court against defendants Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 ("Wells Fargo") and Mortgage Electronic Registration Systems, Inc. ("MERS"). In the complaint, plaintiffs sought declaratory and injunctive relief to prevent the foreclosure sale of their home by Wells Fargo. Plaintiffs alleged that MERS failed to properly assign their home mortgage to Wells Fargo and that, therefore, Wells Fargo was unable to foreclose on the home. The complaint raised solely state law claims.

On December 10, 2010, Wells Fargo and MERS timely filed a

notice of removal pursuant to 28 U.S.C. §§1441 and 1446, stating that this court has jurisdiction over this case pursuant to 28 U.S.C. §1332(a) because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. On December 15, 2010, Wells Fargo and MERS notified the court that the scheduled foreclosure sale of plaintiffs' home had been cancelled. This cancellation mooted plaintiffs' claim for a preliminary injunction but not plaintiffs' claim for a declaratory judgment.

On January 5, 2011, before either Wells Fargo or MERS had answered the complaint or served a motion to dismiss, plaintiffs filed an amended complaint, adding non-diverse defendants whose joinder, if allowed, would destroy federal jurisdiction over this case. That same day, plaintiffs also timely filed a motion to remand, pursuant to 28 U.S.C. §1447(c), arguing that the amended complaint deprives the court of subject matter jurisdiction over this case. Wells Fargo and MERS oppose the motion to remand and ask that the court "disallow" the amended complaint. Essentially, they argue that plaintiffs are impermissibly attempting to join additional parties solely to defeat diversity jurisdiction.

For the reasons described below, plaintiffs' motion to remand is being allowed.

II. LEGAL STANDARDS

A. Removal Pursuant to Diversity Jurisdiction and Remand

When a plaintiff files suit in state court and asserts

exclusively state law claims, a defendant may remove the case to the appropriate district court if the case is one in which the district court could have exercised original jurisdiction, meaning that the case contains an amount in controversy greater than $75,000 and pits citizens of different states against one another. See 28 U.S.C. §1332(a), (a)(1) (diversity jurisdiction); 28 U.S.C. §1441(a) (removability); 28 U.S.C. §1446 (procedure for removal).

However, a plaintiff may respond to a notice of removal by filing a motion to remand the case to state court if, among other reasons, the plaintiff believes that the district court lacks subject matter jurisdiction. See 28 U.S.C. §1447(c). Indeed, even if no such motion is filed, the court has "an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate [and, therefore, is] obliged to address the propriety of removal." Am. Policyholders Ins. Co. v. Nyacol Prods., Inc., 989 F.2d 1256, 1258 (1st Cir. 1993) (considering whether removal was proper, despite fact that parties agreed the federal courts had subject matter jurisdiction). On this point, 28 U.S.C. §1447(c) states that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The First Circuit has recently made clear that "[t]his command is obligatory . . . ." Hudson Savings Bank v. Austin, 479 F.3d 102, 108-09 (1st Cir. 2007).

B. The Burden of Establishing Federal Diversity Jurisdiction

"Under our dual sovereign system, the plaintiff is the 'master to decide what law he will rely upon.'" Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999) (quoting Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913)). In light of that fundamental premise, when a plaintiff files a complaint in state court and the defendant responds by invoking federal jurisdiction through removal, the defendant has the burden of establishing that removal to the district court is proper. See Valentin v. Hosp. Bella Vista, 254 F.3d 358, 366 (1st Cir. 2001); Danca, 185 F.3d at 4; MB Auto Care Mgmt., Inc. v. Plaza Carolina Mall, L.P., 695 F. Supp. 2d 1, 2 (D.P.R. 2010) ("[I]n case of removal, the removing party bears the burden of showing that no plaintiff is a citizen of the same state as any of the defendants, and that the matter in controversy exceeds $75,000, excluding interests and costs.").

"Subject matter jurisdiction is not a 'nicety of legal metaphysics' but rests instead on 'the central principle of a free society that courts have finite bounds of authority.' Courts must be careful to respect these limits on their authority." Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 101 (1st Cir. 2001) (internal citations omitted). When federal subject matter jurisdiction is doubtful, those doubts should be resolved in favor of remand. See Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d

Cir. 1990); Padilla-Gonzalez v. Local 1575, 635 F. Supp. 2d 105, 108 (D.P.R. 2009); In re Mass. Diet Drug Litig., 338 F. Supp. 2d 198, 202 (D. Mass. 2004).

C. Post-Removal Amendment to Add Non-Diverse Defendants

"When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e)." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999).[1] That Section provides: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. §1447(e). "These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case."

---

[1] Ordinarily, Federal Rule of Civil Procedure 15 governs the amendment of pleadings and gives a plaintiff the right to file an amended complaint in certain circumstances. However, Section 1447(e) supersedes Rule 15, if, after removal, a plaintiff seeks to join non-diverse defendants. See Drelick v. Innovative Dev. Co., Civil No. 08-cv-112-JL, 2008 WL 2486040, at *2 n.4 (D.N.H. June 13, 2008). Thus, "courts have concluded that when an amendment would deprive a federal court of subject matter jurisdiction, a party may not rely on Rule 15(a) to amend a pleading without leave of court and such an amendment must be analyzed pursuant to § 1447(e)." Schindler v. Charles Schwab & Co., Inc., No. Civ.A.05-0082, 2005 WL 1155862, at *2 (E.D. La. May 12, 2005). In short, a "district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court." Mayes, 198 F.3d at 462 n.11.

Mayes, 198 F.3d at 462; see also Casas Office Machs., Inc. v. Mita Copystar America, Inc., 42 F.3d 668, 675 (1st Cir. 1994); Travelers Prop. Cas. Co. of America v. Noveon, Inc., 248 F.R.D. 87, 90 (D. Mass. 2008) (allowing plaintiff's motion to amend and remanding case to state court).

"The permissive language of § 1447(e) makes clear that Congress granted the courts broad discretionary power to permit or deny joinder, even though the decision could divest the court of its jurisdiction and force a remand to state court." Kelley v. Vermont Mut. Ins. Co., 407 F. Supp. 2d 301, 305 (D. Mass. 2005) (allowing plaintiff's motion to amend and remanding case to state court). "A court's decision under § 1447(e) does not depend on whether the nondiverse defendant is classified as an indispensable or dispensable party as defined by the Fed.R.Civ.P. 19." Id. Indeed, "[v]irtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be equitable instead of being based on whether a party is indispensable." Irizarry v. Marine Powers Int'l, 153 F.R.D. 12, 14 (D.P.R. 1994) (internal quotation marks omitted). Thus, "[w]hether to allow joinder is a discretionary decision guided by equitable factors that depend upon the circumstances." Schrepfer v. Framatome Connectors USA, Inc., 115 F. Supp. 2d 182, 186 (D.N.H. 1999); see also Harmon v. McCreary, No. 07-3-DLB, 2007 WL 4163879, at *3 (E.D. Ky. Nov. 20, 2007) ("The general impetus

for applying § 1447(e) is for the trial court to use its discretion and determine if allowing joinder would be fair and equitable.").

"When a plaintiff seeks to name a new party by amending the complaint after removal, the court 'should scrutinize that amendment more closely than an ordinary amendment' by considering several factors 'to balance the defendant's interests in maintaining the federal forum with the competing interests in not having parallel lawsuits.'" Schrepfer, 115 F. Supp. 2d at 186 (quoting Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (4th Cir. 1987)). Those factors are: "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." Hensgens, 833 F.2d at 1182;[2] see also Mayes, 198 F.3d at 461-63 (listing factors); 14B Charles A. Wright, et al., Federal Practice & Procedure §3723 (4th ed. 2009) (same). Several courts have stated that the first of these factors is the most important. See, e.g., City of Cleveland v. Deutsche Bank Trust Co., 571 F. Supp. 2d 807, 824 (N.D. Ohio 2008) ("Of all the relevant factors, the first appears to be of paramount importance."); Roberts v. Standard Ins. Co., No. 04 C 2027, 2004 WL

---

[2] "The factors delineated in Hensgens are still considered relevant even though the case was decided before subsection (e) was added to § 1447 in 1988." Kelley, 407 F. Supp. 2d at 305 n.3. The Hensgens factors have been cited with approval by the First Circuit. See Casas, 42 F.3d at 675 n.8.

Case 1:13-cv-12521-MLW Document 1-3 Filed 10/08/13 Page 8 of 15

2367741, at *5 (N.D. Ill. Oct. 15, 2004) (explaining that "the motive of the party seeking to amend a complaint is considered to be the most important factor").

III. ANALYSIS

The key jurisdictional facts in this case are not disputed. Plaintiffs are citizens of Massachusetts, and the original defendants, Wells Fargo and MERS, are not.[3] In the amended complaint, plaintiffs seek to join three additional defendants, two of whom are citizens of Massachusetts: defendant Next Home Mortgage Company, Inc. ("Next Home") is a Massachusetts corporation with its principal place of business in Massachusetts, and defendant Richard Gillis ("Gillis") is a former employee of Next Home who is currently incarcerated in Massachusetts.[4] If plaintiffs are permitted to join either Next Home or Gillis as a defendant,

---

[3] As a national bank with its main office in South Dakota, Wells Fargo is a citizen of South Dakota. See 28 U.S.C. §1348 ("All national banking associations shall . . . be deemed citizens of the States in which they are respectively located."); Wachovia Bank v. Schmidt, 546 U.S. 303, 318 (2006) ("Reading § 1348 in . . . context, one would sensibly 'locate' a national bank for the very same purpose, i.e., qualification for diversity jurisdiction, in the State designated in its articles of association as its main office."). MERS is a citizen of Delaware, where it is incorporated, and of Virginia, where its principal place of business is located. See 28 U.S.C. §1332(c)(1).

[4] The final defendant is BAC Home Loans Servicing, LP ("BAC"). BAC appears to be a citizen of New York and is, in any event, not alleged to be a citizen of Massachusetts. Therefore, its joinder would not destroy diversity jurisdiction and does not affect the court's jurisdictional analysis. See 28 U.S.C. §1332(a).

subject matter jurisdiction will be destroyed and the case must be remanded to state court. See Gorfinkle v. U.S. Airways, Inc., 431 F.3d 19, 22 (1st Cir. 2005) ("The addition of a non-diverse defendant in an amended complaint defeats diversity."). Therefore, the sole issue is whether joinder is appropriate under 28 U.S.C. §1447(e).

As noted earlier, the court has only two options: it may either deny joinder of Next Home and Gillis, or permit joinder and remand the case to state court. See 28 U.S.C. §1447(e); Mayes 198 F.3d at 462. This is a "discretionary decision guided by equitable factors that depends upon the circumstances." Schrepfer, 115 F. Supp. 2d at 186. Specifically, those factors may include "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." Hensgens, 833 F.2d at 1182.

In weighing the balance of equities in this case, the court is keenly aware of the circumstances that have led the parties to this juncture. In 2005, wishing to finance the purchase of a new home, plaintiffs contracted Gillis to obtain a mortgage loan for them on favorable terms and at the lowest available interest rate. Gillis, a mortgage broker employed by Next Home, allegedly signed a false loan application on plaintiffs' behalf without their knowledge and

submitted that application to various lenders, including Fremont Investment & Loan ("Fremont"). Gillis also allegedly misled plaintiffs about the terms of their loans. Fremont approved plaintiffs' application and authorized two loans to plaintiffs - the first for $358,200 and the second for $19,900. Those loans were secured by mortgages on plaintiffs' home, and MERS was named as the mortgagee. MERS then assigned the first mortgage to Wells Fargo. When plaintiffs eventually defaulted, Wells Fargo initiated foreclosure proceedings against plaintiffs' home; in response to the filing of this case, Wells Fargo cancelled those proceedings.

Under these circumstances, the Wells Fargo and MERS assertion that "[p]laintiffs' claims against the defendants are so entirely unrelated that they are severable from each other" is not convincing. Plaintiffs' claims against Gillis and Next Home arise out of the origination of plaintiffs' mortgage loans in 2005, and plaintiffs' claims against Wells Fargo and MERS arise out of the assignment of those same loans several years later. Both sets of claims, therefore, share a common, if narrow, set of facts: Gillis and Next Home allegedly put into motion the sequence of events that led to plaintiffs' default and, ultimately, to the threatened foreclosure proceedings. Moreover, the allegedly unfavorable terms secured for plaintiffs by Gillis and Next Home contributed to plaintiffs' subsequent inability to repay their mortgage loans. Accordingly, the two sets of claims are sufficiently interrelated

to be joined into a single action. <u>See</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 724 (1966) (stating that, under the Federal Rules of Civil Procedures, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged").

Therefore, although plaintiffs knew of their potential claims against Gillis and Next Home before filing their complaint in state court against Wells Fargo and MERS, the instant amendment is not merely a jurisdiction-defeating ruse. According to plaintiffs, the initial complaint was filed in response to the immediate threat of foreclosure. Once that immediate threat dissipated and Wells Fargo cancelled the foreclosure sale, plaintiffs' litigation strategy evolved to embrace a broader approach to resolving their mortgage-related troubles.

The court recognizes that where, as here, "a plaintiff seeks to add a non-diverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction." <u>Mayes</u>, 198 F.3d at 463; <u>see also Sutton v. Hollywood Entm't Corp.</u>, 181 F. Supp. 2d 504, 508 (D. Md. 2002). However, some courts have held that even such an impermissible purpose, "standing alone, is insufficient to defeat the joinder." <u>Soto v. Barnitt</u>, No. 00 Civ. 3453(DLC), 2000 WL

Case 1:10-cv-11752-MLW Document 30 Filed 07/22/11 Page 12 of 14

1206603, at *2 (S.D.N.Y. Aug. 23, 2000); see also Garland v. RLI Ins. Co., 491 F. Supp. 2d 338, 341 (W.D.N.Y. 2007) ("[E]ven if Plaintiff is motivated by a desire to return the matter to state court, its preferred forum, this factor is insufficient to avoid joinder and remand."). In addition, the court accepts that plaintiffs' "principal desire" is not to destroy federal jurisdiction. Nazario v. Deere & Co., 295 F. Supp. 2d 360, 364 (S.D.N.Y. 2003), Instead, plaintiffs are pursuing joinder so that all their mortgage-related claims can be adjudicated in one action. This is "a permissible motive." See id.

Plaintiffs will be prejudiced if joinder is denied, because they have a legitimate interest in avoiding parallel litigation in the federal and state courts. See Hensgens, 833 F.2d at 1182 (considering, in weighing equities, whether "plaintiff will be significantly injured if amendment is not allowed"). As noted earlier, although plaintiffs' legal claims against Gillis and Next Home differ from their claims against Wells Fargo and MERS, part of the factual underpinning of those claims is the same. Therefore, denying joinder in this case would undermine judicial economy and efficiency. Conversely, although Wells Fargo and MERS have "an interest in defending against this action in this forum, and though removal to this Court was properly executed," Nazario, 295 F. Supp. 2d at 365, the court discerns no prejudice to either defendant which alone would warrant denying joinder. "Nor do[] Defendant[s]

Case 1:10-cv-11752-MLW Document 13 Filed 07/22/11 Page 78 of 153

point to any specific prejudice that would result if the requested joinder is permitted." Garland, 491 F. Supp. 2d at 341.

In part, the fact that neither Wells Fargo nor MERS will be substantially prejudiced by the remand of this case is a function of plaintiffs' timeliness in seeking amendment. "Delay in seeking amendment is measured from the date of removal." Nazario, 295 F. Supp. 2d at 363 (holding that five-month delay "is without justification"). In this case, the complaint was filed on November 9, 2010. Wells Fargo and MERS jointly filed a notice of removal on December 10, 2010, and plaintiffs promptly filed the amended complaint less than one month later, on January 5, 2011. Accordingly, because plaintiffs were not dilatory, this action has not "advanced in any way to a point where remanding it to state court with additional defendants will require [Wells Fargo and MERS] to revise or abandon a litigation strategy for which resources have already been expended." Id. at 364; see also Garland, 491 F. Supp. at 341 (stating that motion for joinder filed within 30 days of removal "cannot be said to be dilatory").

IV. CONCLUSION

After weighing the relevant equitable factors, the court concludes that, in this case, "permitting joinder will comport with principles of fundamental fairness." Wyant v. Nat'l R.R. Passenger Corp., 881 F. Supp. 919, 923 (S.D.N.Y. 1995). Plaintiffs were not dilatory in seeking to amend the complaint and have a legitimate

interest in avoiding multiple litigation to the extent that all of their claims arise from a common set of facts. Conversely, because of the early stage of this litigation, defendants will not be unfairly prejudiced by defending this action in state court. Perhaps most importantly, plaintiffs' prompt action in joining Gillis and Next Home as defendants does not indicate a sole, or even principal, improper purpose of divesting this court of subject matter jurisdiction. Rather, there are legitimate reasons for joining those defendants at this point. Accordingly, pursuant to 28 U.S.C. §1447(e), the court is permitting the joinder of Gillis and Next Home and remanding this case to state court.

However, plaintiffs are not entitled to a monetary award for any fees or costs incurred as a result of the removal and remand of this action. That plaintiffs' post-removal amendment now requires that this case be remanded does not cast into doubt the propriety of defendants' initial removal.

V. ORDER

In view of the foregoing, it is hereby ORDERED that plaintiffs' Motion to Remand (Docket No. 7) is ALLOWED and this case is REMANDED to Suffolk Superior Court.

/s/ Mark L. Wolf
UNITED STATES DISTRICT JUDGE

# TAB 8

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**ARIEL MONGES et al.**
**Plaintiffs**

**v.** **C.A. No. 10-12131-MLW**

**WELLS FARGO BANK et al.**

**Defendants**

**ORDER OF REMAND**

**WOLF, D. J.**

**In accordance with the Court's Memorandum and Order dated AUGUST 23, 2011 in the above-referenced action, it is hereby ORDERED:**

**This case is remanded to the Massachusetts Superior Court for Suffolk County.**

**By the Court,**

**AUGUST 24, 2011**
**Date**

**/s/ Daniel C. Hohler**
**Deputy Clerk**

**(order of remand.wpd - 12/98)** **[jgm.]**

# TAB 9

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

NOTICE SENT 12.16.11 D.A.S. R.H.S. G.&P. N.F.L. R.H.F. T.H.G.

ARIEL MONGES and DELMA SANTIAGO,

Plaintiffs,

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4 and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,

Defendants.

Civil Action No. 10-4419-D

**ASSENTED-TO MOTION FOR LEAVE TO WITHDRAW APPEARANCE OF NATALIE F. LANGLOIS**

Pursuant to Mass. R. Civ. P. 11(c), Defendants Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4, Mortgage Electronic Registration Systems, Inc., and Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, an entity now merged into Bank of America, N.A. ("Defendants") hereby move this Court for leave to withdraw the appearance of Natalie F. Langlois as counsel for Defendants in the above-captioned action and for an order that the docket of this action reflecting such withdrawal. As grounds for this motion, Defendants state that (i) Natalie F. Langlois will be leaving the firm of Goodwin Procter LLP; (ii) Rosalie H. Fazio of Goodwin Procter LLP has filed her Notice of Appearance and will continue represent Defendants in this matter; (iii) Attorney Fazio is familiar with the issues in this case and Defendants will not be prejudiced by withdrawal of counsel at this stage; and (iv)

allowed Geraline D. Jones 12/15/11

# TAB 10

23

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss. C.A. NO 10-4419

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BAC HOME LOANS SERVICING, LP, NEXT HOME MORTGAGE COMPANY, INC., and RICHARD GILLIS,
Defendants

NOTICE SENT 08.21.12. D.+S. R.H.S. G.P. R.H.F T.H.G N.F.L.

2012 AUG 15 PM 12:31
CLERK/MAGISTRATE

Hearing Aug. 29, 2012 at 2:00 PM

8/20/12 Allowed

**JOINT MOTION TO CONTINUE HEARING ON MOTION TO DISMISS**

The Plaintiffs and Defendants Wells Fargo National Association, as Trustee, Mortgage Electronic Registration Systems, Inc., and BAC Home Loans Servicing, LP, through their respective attorneys, move this Court to continue the hearing on Defendant's Motion To Dismiss, from August 22, 2012, as currently scheduled, to another day which is convenient for the Court and counsel.

# TAB 11

Notice sent 01.11.13 RHS LORS RHF THG NFL GP.LP (mdj

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss. C.A. NO. 10-4419

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BANK OF AMERICA CORP., NEXTHOME MORTGAGE COMPANY, INC., and RICHARD GILLIS,
Defendants

2012 NOV -9 PM 12:57

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND EXTEND TRACKING ORDER

Pursuant to Rule 15(a) of the Massachusetts Rules of Domestic Relations Procedure, the Plaintiffs, Ariel Monges and Delma Santiago, move this Court for leave to amend their Complaint. The Plaintiffs further request the Court to amend extend the Tracking Order by extending the deadline for completing discovery until from October 30, 2012, to December 31, 2012 and for serving motions for summary judgment from November 29, 2012, to January 31, 2013.

Allowed 1/10/13 Geraldine D. Hines

# TAB 12

Notify

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION NO. 10-4419-D

ARIEL MONGES & another[1]

vs.

WELLS FARGO BANK, N.A.[2]

Notice sent
5/13/2013
R. H. S.
R. H. F.
G. P.
T. H. G.
N. F. L.
(sc)

**MEMORANDUM OF DECISION AND ORDER ON CERTAIN DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

This action arises from foreclosure proceedings initiated by Wells Fargo, N.A., as trustee for Securitized Asset Backed Receivables, LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 ("FR-4"), on residential property ("the property") owned by Ariel Monges and Delma Santiago ("the plaintiffs"). The plaintiffs seek a declaration that their mortgage was not validly conveyed to Wells Fargo and, as a result, that Wells Fargo has no right to foreclose. The plaintiffs also pursue claims for conversion and unjust enrichment against Wells Fargo and BAC Home Loans Servicing, LP ("BAC"), alleging those defendants intentionally and wrongfully exercised dominion and control over their mortgage, and improperly collected mortgage payments thereunder. The plaintiffs assert a claim for money had and received against Wells Fargo that shares the same basis.

The court recites the relevant allegations in the Second Amended Complaint,[3] on which the plaintiffs' claims are based, in summary fashion. The plaintiffs purchased the property on

---

[1] Delma Santiago

[2] As trustee for Securitized Asset Backed Receivables, LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4, Mortgage Electronic Registration Systems, Inc., BAC Home Loans Servicing, LP, Next Home Mortgage Company, Inc., and Richard Gillis

[3] The plaintiffs' Motion to Amend is allowed. See Mass. R. Civ. P. 15(a).

March 4, 2005. They took out two mortgages on the property from Fremont Investment & Loan ("Fremont"), a bank in California. Mortgage Electronic Registration Systems, Inc. ("MERS") was named as nominee for Fremont on both mortgages, and Fremont held the notes associated with both. The mortgages were serviced by Countrywide Servicing, which collected payments from the plaintiffs.

In or about January 2007, MERS assigned one of the plaintiffs' mortgages ("the first mortgage") to Wells Fargo as trustee for FR-4.[4] [5] MERS, acting solely as nominee for Fremont, conveyed the first mortgage to Wells Fargo. BAC Home Loans Servicing, LP ("BAC") succeeded to Countrywide's interest as servicer of the plaintiffs' mortgages following the acquisition of Countrywide by Bank of America. In late September 2010, BAC sent the plaintiffs a notice of intent to foreclose. The foreclosure sale associated with that notice has been postponed several times, but remains pending.

The Motion to Dismiss rests in large part on the defendants' reference to what they claim are legal doctrines that prohibit a mortgagee from challenging foreclosure proceedings while in default on mortgage debt, or without first offering to tender full payment of all amounts owed under the mortgage being foreclosed upon. In this court's view, these are novel propositions with scant support in Massachusetts law.

---

[4] FR-4's "closing date" occurred in 2005. By the terms of FR-4's Pooling and Service Agreement, FR-4 should not have acquired further mortgages after this date.

[5] Before Wells Fargo obtained the first mortgage, Fremont sold it to Barclays Bank, which in turn sold it to a corporation affiliated with FR-4, Securitized Asset Backed Receivables, LLC, which then sold the first mortgage to FR-4.

The so-called rule categorically barring mortgagors from challenging foreclosure proceedings while in default on their mortgages is not supported by Beaton v. Land Court, 367 Mass. 385, 393 (1975), or McCombs v. Elmes, 197 Mass. 19, 21 (1907), or Lyons v. Mortg. Elec. Registration Sys., Inc., No. 09-Misc.-416377, 2011 WL 61186, at *2 (Mass. Land. Ct. Jan. 4, 2011) (Cypher, J.), in the defendants' brief. The mortgagors' default status under the mortgages was a peripheral issue in those cases, but none resolved the claims at issue according to any rule that prohibits mortgagors from challenging foreclosure proceedings while in default on the underlying mortgage.

The purported "tender rule" requiring that a mortgagor offer payment of all amounts owed under a mortgage before going forward with a challenge to foreclosure proceedings is likewise without support in Massachusetts law. Injunctive relief was denied to one plaintiff in one U.S. District Court action because her failure to make or offer payments on her mortgage meant, in that court's view, that she came into court with unclean hands. Durmic v. J.P. Morgan Chase Bank, N.A., No. 10-10380, 2010 WL 4825632, at *7 (D. Mass. Nov. 24, 2010). Notably, however, even the Durmic plaintiff's substantive claims were allowed to proceed.

More to the point, "[t]he 'clean hands' doctrine is not a judicial straight-jacket [and] is not favored by the courts . . . ." 10A Robert M. Rodman, Massachusetts Practice, § 2296 (1990), citing 30 C.J.S., Equity, §§ 98-99. "Application of the doctrine of unclean hands rests in the broad discretion of the trial court." Rodman, Massachusetts Practice, at § 2296, citing Fales v. Glass, 9 Mass. App. Ct. 570, 575 (1980). This court declines to apply the doctrine of unclean hands to bar the plaintiffs' claims. Particularly at the motion to dismiss stage, there is nothing before the court to suggest that the plaintiffs acted inequitably in failing to remain current on

mortgages with double-digit adjustable interest rates. Indeed, their Second Amended Complaint alleges that the plaintiffs fell behind on their payments through no fault of their own, which this court is procedurally constrained to treat as true for the purposes of the Motion to Dismiss.

Moreover, as the plaintiffs noted in their Opposition, it would be absurd to prevent plaintiffs from presenting a challenge to the defendants' right to foreclose because they are not current on their mortgage payments. If the plaintiffs were current, it is unlikely that any foreclosure proceedings would happen, and besides, Massachusetts law is clear that "void sales are open to collateral attack." A.L.R. 1431 (1919), citing Kennedy v. Duncklee, 67 Mass. (1 Gray) 65, 67 (1854). See, e.g., Moore v. Dick, 187 Mass. 207, 211-12 (1905) (improper exercise of statutory power of sale rendered foreclosure void); cf. Madden v. Madden, 359 Mass. 356, 361 (1971) (void judgment subject to collateral attack). The authorities supporting that proposition include no requirement that a mortgagee make or offer full payment of amounts owed on a mortgage before collaterally attacking such a sale. Rather, it is well-established that "one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." U.S. Bank, N.A. v. Ibanez, 458 Mass. 637, 646-47 (2011), and cases cited. See also Roche v. Farnsworth, 106 Mass. 509 , 513 (1871) (power of sale contained in mortgage "must be executed in strict compliance with its terms").

Separately, the defendants insist that the plaintiffs' claims must fail because Wells Fargo was properly authorized to foreclose on their mortgage. However, the Second Amended Complaint clearly alleges that the signature of MERS' agent conveying the mortgage to Wells Fargo and FR-4, on behalf of Fremont, was a forgery. This is not a mere label or conclusion. Contrast Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008). Instead, the plaintiffs have

alleged that the signature of M. Kelly Michie, assigning their mortgage to Wells Fargo as trustee for FR-4, is visibly dissimilar to other signatures of M. Kelly Michie on other mortgages available at the Suffolk County Registry of Deeds.[6] The court takes judicial notice of the widespread problems with so-called "robo-signing" in the mortgage industry. Based on the allegations suggesting that the signature assigning the plaintiffs' mortgage to Wells Fargo was a forgery, and given this court's obligation to resolve all reasonable inferences in favor of the plaintiffs, their claims based on the position that their mortgage was not validly assigned by MERS survive.

Because the Second Amended Complaint alleges that the plaintiffs' mortgage was not validly assigned by MERS, the inference, favorable to the plaintiffs, follows that Wells Fargo did not own their mortgage and lacks the power to foreclose. Therefore, the plaintiffs' claims for declaratory relief survive.

The defendants further suggest that, even assuming their exercise of dominion and control over the plaintiffs' mortgage was wrongful, the Second Amended Complaint does not establish that it was intentionally wrongful. However, according to the defendants' own cited authorities, "the issue . . . of the parties' intent. . . . cannot be resolved in the context of a motion to dismiss." Durmic, 2010 WL 4825632, at *4; accord White v. Town of Seekonk, 23 Mass. App. Ct. 139, 141 (1986). Therefore, the plaintiffs' claims for conversion survive.

---

[6] While it is not necessary for the resolution of this issue, the plaintiffs' Opposition also suggests that M. Kelly Michie's profile on the website LinkedIn indicates he was not employed by MERS at the time of his alleged assignment of the plaintiffs' mortgage. It is unclear whether or not Michie's profile is a public record properly considered on a motion to dismiss, see Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).

Finally, the defendants argue that, where the plaintiffs have adequate contractual remedies at law, their equitable claims for unjust enrichment or money had and received cannot proceed. However, because the mortgage was not validly assigned to Wells Fargo, there is no contract that governs its relationship with the plaintiffs. Similarly, there does not appear to be any contract before the court that governs BAC's relationship with the plaintiffs. Therefore, the plaintiffs' equitable claims survive.

In summary, all of the plaintiffs' claims will survive the Motion to Dismiss. The court adds a further word on some of the issues raised in the Motion to Dismiss that, while not wholly fatal to any of the plaintiffs' claims, will narrow the scope of the issues at the summary judgment stage.

First, to the extent that the plaintiffs claim that Wells Fargo cannot foreclose on the mortgage because it cannot produce the underlying note evidencing the plaintiff' indebtedness, their claim fails. This argument has been addressed in Eaton v. Fed. Nat'l Mortg. Ass'n, 462 Mass. 569, 588-89 (2012). The requirement that the mortgagee must possess the underlying note evidencing the indebtedness secured by the mortgage, or act as agent of the note holder, in order to foreclose, see id. at 583-84, 586, applies only prospectively from the date of the Eaton decision on June 22, 2012. Id. at 588-89. Where, as here, "the mandatory notice of sale has been given [before] the date of [the Eaton] opinion," a mortgagee need not hold the underlying note or act as the agent of such a note-holder. Id.

Second, to the extent the plaintiffs claim that Wells Fargo cannot foreclose because FR-4 acquired the first mortgage after its closing date, their claim fails. The plaintiffs have produced no source of legal authority to suggest that there is no right to foreclose where a securitized asset

Notice Sent
5/13/2013 (sc)

corporation acquires a mortgage after its closing date. Certain adverse tax consequences may follow from the belated acquisition, but the plaintiffs, as strangers to FR-4's Pooling and Service Agreement, cannot rely on it to attack Wells Fargo's right to foreclose absent some legal authority connecting compliance with the Pooling and Service Agreement, and the right to exercise the power to foreclose. See generally Superior Court Rule 9A(a)(1).

**CONCLUSION AND ORDER**

For the foregoing reasons, the Motion to Dismiss is, in all respects, **DENIED**.

Geraldine S. Hines
Geraldine S. Hines
Justice of the Superior Court

DATED: January 10, 2013.

# TAB 13

Helen Nowby 6.25 6-27 **30**

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

ARIEL MONGES and DELMA SANTIAGO,

Plaintiffs,

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BAC HOME LOANS SERVICING, LP, NEXT HOME MORTGAGE COMPANY, INC., and RICHARD GILLIS,

Defendants.

Notice sent
6/28/2013
R. H. S.
LAW OFFS. OF
R. S.
R. H. F.
G. P.
T. H. G.
N. F. L. (sc)

Civil Action No. 10-4419

SUFFOLK SUPERIOR COURT
CIVIL CLERK'S OFFICE
2013 JUN 21 PM 4:09
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

**JOINT MOTION TO CONTINUE FINAL PRE-TRIAL CONFERENCE AND TO AMEND TRACKING ORDER**

Plaintiffs Ariel Monges and Delma Santiago ("Plaintiffs"), and defendants Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4 ("Wells Fargo"), Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"), through counsel, hereby jointly move the Court (1) to continue the Final Pre-Trial Conference currently scheduled for June 25, 2013; and (2) to amend the tracking order so as to allow the parties time to develop a factual record and to narrow the issues on summary judgment before proceeding to trial. The Parties submit that good cause exists for these requests, and in support state the following:

1. On November 30, 2012, Defendants moved with the assent of Plaintiffs to stay discovery in this matter pending resolution of Defendants' Motion to Dismiss ("Motion to

1ATO 7 07-1-13

6/26/13
Allowed as submitted (see page 2) for good cause shown. No further extensions to be considered. MacLeod, J.

# TAB 14

## Good, Thomas H

**From:** Bob Scarino <bob@rslawoffice.com>
**Sent:** Thursday, July 11, 2013 1:54 PM
**To:** Good, Thomas H
**Subject:** RE: Second Amended Complaint
**Attachments:** complaint - second amended_mtd - final.pdf; complaint - second amended_mtd - final - sig page.pdf

Hi Tom,

My apologies for the delay in getting back to you.

I'm attaching an executed copy of the Second Amended Complaint for service on Bank of America and Wells Fargo and a separate signature page. If you would like a wet ink signature, please let me know.

I noticed that the last entry on the amended tracking order is incorrect. The last entry states that final resolution and judgment should be issued by Oct. 25, 2013. Presumably, the date should be sometime in 2014. Let me know if you think we should bring this to the court's attention.

Best regards,

Bob

*Bob Scarino*
*225 Cedar Hill Street, Suite 200*
*Marlborough, MA 01752*
*Tel (508) 630-2133*
*Fax (508) 251-5335*

---

**From:** Good, Thomas H [mailto:TGood@goodwinprocter.com]
**Sent:** Tuesday, July 02, 2013 12:57 PM
**To:** bob@rslawoffice.com
**Subject:** Second Amended Complaint

Hi Bob,

I received a notice today from the court indicating that our joint motion to re-set the tracking order has been allowed as per the dates proposed. Please let me know if you did not receive a copy and I will forward a pdf.

I don't believe I have actually seen a signed Second Amended Complaint yet. As I mentioned, I can accept service for Bank of America and for Wells Fargo, but am unable to do so for MERS. By way of service, could you please send me an executed copy of the Second Amended Complaint?

Regards,

Tom

**Thomas H. Good**
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001

Tel: 202-346-4338
Fax: 202-346-4444
Mobile: 617-939-4901
email: tgood@goodwinprocter.com

*******************************************************************
IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
********************************************************************
********************************************************************
This message is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.
********************************************************************

COMMONWEALTH OF MASSACHUSETTS
THE TRIAL COURT
SUPERIOR COURT DEPARTMENT

SUFFOLK, ss. C.A. NO. 10-4419

ARIEL MONGES and DELMA SANTIAGO,
Plaintiffs

v.

WELLS FARGO BANK, NATIONAL ASSOCIATION, as TRUSTEE for SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., BANK OF AMERICA CORP., NEXTHOME MORTGAGE COMPANY, INC., and RICHARD GILLIS,
Defendants

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

This action, brought by two homeowners, seeks a declaratory judgment that Wells Fargo Bank, N.A., claiming to be Trustee of a securitization trust, lacks the authority to foreclose their mortgage because it has failed to produce the original promissory note and because it is neither the current holder of their mortgage nor the underlying promissory note. The Plaintiffs are seeking injunctive relief to stop the threatened foreclosure.

The Plaintiffs are also asserting various claims against Well Fargo Bank, as Trustee, and Bank of America Corp. Trust for conversion, money had and received, breach of contract, breach

of the implied covenant of good faith and fair dealing, unfair or deceptive acts and practices in violation of the Massachusetts consumer protection law and unjust enrichment; against Bank of America Corp. for violation of G.L. c. 93, § 54A; and against Mortgage Electronic Registrations Systems, Inc. for unfair or deceptive acts and practices in violation of the Massachusetts consumer protection law.

Lastly, Plaintiff's are asserting claims against their mortgage loan broker, NextHome Mortgage Company, Inc. and its employee, Richard Gillis, for fraud and misrepresentation, breach of fiduciary duty, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment.

**PARTIES**

1. The Paintiffs, Ariel Monges and Delma Santiago, are individuals residing at 20 Brook Street, Roslindale, Suffolk County, Massachusetts 02131 (collectively, the "Plaintiffs"). The Plaintiffs are husband and wife..

2. Defendant Wells Fargo Bank, National Association, is a national banking association which has a principal place of business at 101 N. Phillips Avenue, Sioux Falls, South Dakota 57104 ("Wells Fargo" or the "Trustee"). Wells Fargo is the Trustee of the Trust.

3. Defendant Securities Asset Backed Receivables LLC 2005-FR4, Mortgage Pass Through-Certificates Series 2005-FR4, is a securitization trust which has an address of 1015 10th Avenue SE, Minneapolis, Minnesota 55414 (the "Trust"). The beneficiaries of the Trust are the investors who purchased certificates entitling them to the cash flows from the loan payments made by homeowners whose mortgages were allegedly purchased by the Trust.

4. Defendant Mortgage Electronic Registration Systems, Inc., is a business corporation organized under the laws of Delaware with a principal office at 1818 Library Street, Reston, Virginia 20190 ("MERS"). MERS is a wholly-owned, subsidiary of MERSCORP., Inc., which also has a principal place of business at the same address ("MERSCORP"). MERSCORP is owned by a consortium of large banks, including Wells Fargo and Bank of America, N.A.

5 Defendant Bank of America Corp. ("Bank of America") is a Delaware corporation based in Charlotte, North Carolina. Bank of America is the successor in interest to Countrywide Home Loans Servicing LP ("Countrywide Servicing"), a wholly-owned subsidiary of Countrywide Financial Corp. ("Countrywide Financial). Bank of America acquired Countrywide Financial and its subsidiaries, including Countrywide Servicing, by merger. Bank of America is a successor in interest to BAC Home Loans Servicing, LP., a limited partnership and former subsidiary of Bank of America., which had its principal executive offices in Plano, Texas. Bank of America is liable for the wrongful conduct of Countrywide Servicing and BAC Servicing as their successor in interest.

6. Defendant NextHome Mortgage Company, Inc., ("Nexthome") is a Massachusetts corporation having a principal place of business at 229 Berkeley Street, Suite 500, Boston, MA 02116.

7. Defendant Richard Gillis ("Gillis") is an individual and former employee of NextHome who, upon information and belief, is currently an inmate at MCI-Norfolk, a correctional facility located in Norfolk, Massachusetts.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this matter pursuant to G.L. c. 212, § 4 (original jurisdiction over civil actions), G.L. c. 214, § 1 (equity jurisdiction) G.L. c. 231A, § (declaratory relief) and G.L. c. 93A § 9(1).

9. This Court has personal jurisdiction over Wells Fargo, as Trustee, the Trust and Bank of America pursuant to G.L. c. 223A, § 2.

10. This Court has personal jurisdiction over defendants NextHome, which is incorporated in and a resident of Massachusetts, and over Gillis, who, upon information and belief, is a resident of Massachusetts

11. This Court is the proper venue for this action because the plaintiffs live in Suffolk County, the defendants have all conducted business in Suffolk County and the property which is the subject of this action is located in Suffolk County.

## FACTS RELEVANT TO ALL CLAIMS

12. In late 2004 and/or early 2005, the Plaintiffs were looking to purchase their first home. Realizing that they needed to borrow money in order to purchase a home, the Plaintiffs entered into an agreement with a mortgage broker, Gillis, to obtain a mortgage loan for them.

13. Gillis was employed by NextHome and was an authorized agent of NextHome at that time.

14. Under the terms of the agreement between the Plaintiffs and Gillis and NextHome, Gillis and NextHome agreed to obtain a mortgage loan for the Plaintiffs with the lowest interest rate and the most favorable terms which the Plaintiffs were qualified to receive, and the Plaintiffs agreed to compensate Gillis and NextHome for this service.

15. The Plaintiffs told Gillis that they could only afford to make a down payment of $10,000.00. Gillis assured the Plaintiffs that $10,000.00 would be a sufficient down payment, that he could obtain a suitable mortgage loan for them and that he would take care of the entire application process for them. The Plaintiffs placed their trust in Gillis and relied on his superior knowledge and on his promises and representations.

16. Gillis and/or other employees or agents of NextHome completed a Uniform Residential Loan Application (the "Loan Application") containing financial and other information pertaining to the Plaintiffs, including their incomes, without informing them that he was doing so. Upon information and belief, Gillis or other employees or agents of NextHome signed the Loan Application on behalf of the Plaintiffs without their knowledge or consent and submitted it for approval to one or more mortgage lenders, including Fremont Investment & Loan.

17. The Plaintiffs found a new condominium unit in the Roslindale section of Boston (the "Unit") they liked and signed an agreement to purchase the Unit from its owner, Lowell Investment, LLC. The Unit was part of the Brook Street Condominium created by Master Deed dated May 21, 2004, and has a street address of 20 Brook Street, Roslindale, Massachusetts 02131.

18. The Plaintiffs gave the sum of $10,000.00 to a representative of the seller, Lowell Investment, LLC., as a deposit to be applied to the purchase of the Unit.

19. Gillis and NextHome arranged for the Plaintiffs to receive two mortgage loans (hereinafter referred to, collectively, as the "Loans") from Fremont Investment & Loan, a banking corporation then organized under the laws of the State of California and having a then

current address of 2727 East Imperial Highway, Brea, California 92821 ("Fremont") which were to be used by the Plaintiffs to purchase the Unit.

20. The closing on the purchase of the Unit took place on March 4, 2005 (the "Closing"). The Plaintiffs received a unit deed (the "Deed") to the property and took title jointly. The Deed states that the purchase price for the Unit was $398,000.00. A copy of the Deed excluding the Unit's floor plan is attached as Exhibit 1.

21. At the Closing, the Plaintiff received two "piggyback" mortgage loans from Fremont which were applied to the purchase price of the Unit.

22. The principal amount of the first mortgage loan was $358,200.00. The loan had a term of 30 years and carried an initial fixed interest rate of 8.3% for a period of two years. After two years, beginning April 1, 2007, and every six months thereafter during the term of the loan, the interest rate was scheduled to adjust, with the new rate determined by adding a margin of 6.99% to the LIBOR Index, subject to certain minimum and maximum interest rates and rate changes.

23. The principal amount of second mortgage loan was for $19,900.00. The loan had a term of 15 years and carried a very high fixed interest rate of 12.25%.

24. Although they did not realize it at the time, the Plaintiffs are now informed and believe that the combined amount of the two mortgage loans they received from Fremont equaled or exceeded the fair market value of the Unit as of the day of the Closing.

25. In order to secure the repayment of the two mortgage loans, the Plaintiffs gave two separate mortgages on the Unit, one for each loan.

26. The first mortgage was given by the Plaintiffs, as mortgagors, to MERS, as nominee for Fremont's and its successors and assigns (the "First Mortgage"). The First Mortgage is recorded in the Suffolk Registry of Deeds in Book 36602, Page 112 (the "Mortgage"). A copy is attached as Exhibit 2.

27. The second mortgage was also given by the Plaintiffs, as mortgagors, to MERS as nominee for Fremont, and is recorded in the Suffolk Registry of Deeds in Book 36602, Page 133 (the "Second Mortgage').

28. The Plaintiffs also signed two promissory notes at the Closing, one for each mortgage loan. Both notes were payable to Fremont. MERS is not named or referenced in either promissory note. The promissory note signed by the Plaintiffs in connection with their First Mortgage is hereinafter referred to as the "Mortgage Note". A copy is attached as Exhibit 3.

29. Following the Closing, both mortgage loans were initially serviced by Countrywide Servicing. As part of its servicing duties, Countrywide Servicing sent monthly statements to the Plaintiffs, collected loan payments from the Plaintiffs and maintained an escrow account for the payment of real estate taxes and insurance.

30. The Plaintiffs made regularly scheduled payments on both of their mortgage loans for a period of time following the Closing, but experienced financial hardships which caused them to fall behind on their loan payments. By January 2007, the Plaintiffs were several months delinquent with regard to the payments on their first loan and Countrywide Servicing, as part of its servicing duties, began taking steps to foreclose.

31. One of these steps was to make arrangements to have the First Mortgage assigned from MERS, as nominee for Fremont, to Wells Fargo, as Trustee for the Trust.

32. On November 16, 2006, MERS, “acting solely as nominee” for Fremont, purportedly executed an Assignment of Mortgage to Wells Fargo, as Trustee for the Trust (the “Assignment”). A copy of the Assignment is attached as Exhibit 4.

33. Hoping to avoid losing their home to foreclosure, the Plaintiffs entered into discussions with Countrywide Servicing. These discussions led to a forbearance agreement whereby Countrywide Servicing, in its own capacity and/or as the agent of the owner of the Plaintiffs’ first mortgage loan, agreed not to foreclose if the Plaintiffs resumed making monthly payments. As part of this agreement, Countrywide Servicing added an additional amount to the original monthly payment amount that was to be applied to past due interest and fees until the they were paid in full. As a result, the amount which the Plaintiffs now had to pay each month beginning in February 2007 was substantially higher than the original monthly payment. The Plaintiffs were also still required to make payments on their second mortgage loan.

34. A few months later, the interest rate on the Plaintiffs’ first mortgage loan adjusted and the rate increased from 8.3% to 11.3% .This increase in the interest rate caused the amount of the monthly payment to substantially increase again. The Plaintiffs could not afford the higher payment and again fell behind.

35. After subsequent negotiations with Countrywide Servicing and/or its successor in interest, BAC Servicing, the Plaintiff’s first mortgage loan was modified. Upon information and belief, the balance owed on their second mortgage, including past due interest, late fees and other charges, was added to the balance owed on their first mortgage loan, which also included past due interest, late fees and other charges, and the two loans were combined into a single loan.

36. At this point in time, the Plaintiffs owed substantially more on their mortgage loan than they did when they originally purchased the Unit.

37. The Plaintiffs were unable to afford the new, combined loan payment and again fell behind on their payments due to no fault of their own.

The Securitization of the Plaintiffs' First Mortgage Loan.

38 Fremont was the original holder of the Mortgage Note and MERS was the original holder of the First Mortgage as nominee for Fremont.

39. The Plaintiffs have since learned that Wells Fargo, as Trustee, claims to have acquired ownership of their first mortgage loan (i.e, the First Mortgage and Mortgage Note) through a process known as "securitization.

40. The securitization of residential mortgage loans begins when a mortgage lender issues a mortgage loan to a borrower. The lender then sells the loan, usually in bulk with other loans, to the affiliate of an investment bank commonly referred to as the "sponsor". The sponsor then pools thousand of loans together which it acquired from one or more lenders and/or originated itself, and sells the pool of loans to another affiliate of the same investment bank, which is commonly referred to as the "depositor". The depositor then sells the pool of loans to special purpose vehicle, usually a common law trust, which is created through a "pooling and service agreement". The securitization trust then issues securities in the form of bonds or certificates which are sold to institutional investors. The certificates entitle the investors to the cash flows from the monthly principal and interest payments made by the borrowers whose loans the trust acquired.

41. For the reasons stated in the preceding paragraph, the securitization of the Plaintiffs' first mortgage loan would have required that the loan be sold or assigned several times before it was eventually sold or assigned to the Trust.

42. Assuming, without conceding, that the Plaintiffs' first mortgage loan was securitized, the Trust that now claims to own the Plaintiffs' first mortgage loan was created through a Pooling and Service Agreement dated September 1, 2005 (the "PSA"). A copy of the PSA can be found on the SEC website at http://www.sec.gov/Archives/edgar/data/1339777/000116231805000873/m465psa.htm and is incorporated by reference herein.

43. The parties to the PSA include Securitized Asset Backed Receivables LLC, a Delaware limited liability company and direct wholly-owned subsidiary of Barclays Bank PLC ("Barclays Bank"), as Depositor, Countrywide Servicing, as Servicer, Fremont, as "Responsible Party, and Wells Fargo, as Trustee.

44. According to the PSA and based on information and belief, Fremont sold the Plaintiffs' first mortgage loan to Barclays Bank or one of its affiliates, as Sponsor; Barclays Bank then sold the loan to the Depositor (Securitized Asset Backed Receivables LLC); and then the Depositor sold the loan to the Trust. Thus, the Plaintiffs' first mortgage loan was sold or assigned at least three times before the Trust allegedly acquired it. P

The Commencement of Foreclosure Proceedings.

45. As stated, MERS, "acting solely as nominee" for Fremont, allegedly executed the Assignment (Exhibit 4) which purports to assign both the First Mortgage and the Mortgage Note

to Wells Fargo, as Trustee of the Trust. The Assignment was recorded in the Registry of Deeds of Deeds on December 14, 2006, in Book 40933, Page 255.

46. Although executing the Assignment was the first step in foreclosing the Plaintiffs' first mortgage loan, Countrywide Servicing did not immediately take the additional steps required in order to foreclose for the reasons described above (forbearance and modification).

47. However, in early 2010, Wells Fargo, as Trustee, claiming to be the holder of the Plaintiffs' First Mortgage, filed a complaint in the Land Court seeking a judgment that the Plaintiffs were not serving in the military and were therefore not entitled to the benefits of the Servicemembers Civil Relief Act (SCRA). Since neither of the Plaintiffs were in active military service, they had no grounds for filing an objection with the Land Court.

48. On or about August 10, 2010, the Land Court issued an Order of Notice which was recorded in the Suffolk Registry of Deeds on September 16, 2010, in Book 46916, Page 229. A copy of the Order of Notice is attached as Exhibit 5.

49. In late September 2010, BAC Servicing sent the Plaintiffs a Notice of Intention To Foreclose their first mortgage loan. This notice stated that a foreclosure auction sale had been scheduled for October 26, 2010.

50 The Plaintiffs subsequently filed their original complaint, together with a motion seeking a preliminary injunction.

51. The foreclosure sale scheduled for October 26, 2010, was subsequently postponed by agreement. Several additional foreclosure auction sales have been scheduled but have also postponed.

52. Although all of the previously-scheduled foreclosure auction sale dates have been postponed, the Plaintiffs are informed and believed that the Trust still intends to foreclose and that it will schedule a new auction sale date in the future.

**COUNT I - DECLARATORY JUDGMENT**
**FAILURE TO PRODUCE ORIGINAL MORTGAGE NOTE**
**(Against Wells Fargo, as Trustee, Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4)**

53. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

54. In accordance with the Supreme Judicial Court's recent opinion in *Eaton v. Federal National Mortgage Association*, 462 Mass. 569 (2012), the Trust may not exercise the power of sale contained in the Mortgage and foreclose unless it is both the current mortgagee and either the current holder of the Mortgage Note or the authorized representative of the current note holder.

55. To date, the Trust has not produced the original Mortgage Note and has not made it available for inspection by the Plaintiffs and the Court.

56. The Trust has not filed an affidavit with this Court or recorded an affidavit in the Registry of Deeds stating that it is the current holder of Mortgage Note or that it is acting as the authorized representative of the current note holder.

57. The Trust did not claim to be the current holder of the Mortgage Note or the authorized representative of the current holder in any of the notices of sale it has sent to the Plaintiffs.

58. Unless and until the Trust produces the original Mortgage Note, there is no credible evidence that it was properly endorsed to the Trust in the manner required by the PSA.

59. Unless and until the Trust produces the original Mortgage Note, there is no credible evidence that the Mortgage Note was physically delivered to the Trust as required by the PSA.

60. Unless and until the Trust produces the original Mortgage Note, there is no credible evidence that it is the current holder of the Mortgage Note or that it is an authorized representative of the current note holder.

61. The Trust has the burden of producing the original Mortgage Note before it has the legal right to foreclose.

62. There is another entity that claims to own the Mortgage Note, as described in Count II below.

63. An actual controversy exists between the Plaintiffs and the Trust as to whether the Trust is the current holder of the Mortgage Note and whether it must produce the original Mortgage Note before it may foreclose.

64. For the foregoing reasons, this Court should issue a binding declaration that Wells Fargo, as Trustee, has the burden of producing the original Mortgage Note, properly endorsed in the manner required by the PSA, together with proof that the Mortgage Note was delivered to the Trust by its Closing Date, before may exercise the power of sale in the Plaintiffs' first mortgage and attempt to foreclose.

**COUNT II - DECLARATORY JUDGMENT**
**OWNERSHIP OF THE MORTGAGE NOTE**
**(Against Wells Fargo, as Trustee, Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4)**

65. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

66. The Mortgage Note is payable to Fremont. Accordingly, the Trust can be the current holder of the Mortgage Note only if it acquired the Mortgage Note from Fremont or one of Fremont's successors and assigns in the manner prescribed in the PSA.

67. The PSA provides that the Trust had a "closing date" of September 29, 2005 (the "Closing Date"). According to the PSA, this was the date by which the Trust was required to take ownership of the mortgage loans it was purchasing, including the Plaintiffs' first mortgage loan.

68. The PSA requires that the Plaintiffs' Mortgage Note to have been delivered and transferred to the Trust before the Closing Date in the manner prescribed in the PSA. The failure to follow these requirements would mean that the Trust never acquired the Mortgage Note and that is therefore not the current holder.

69. The PSA requires the original Mortgage Note to have been properly endorsed before was delivered to the Trust by the Closing Date. Specifically, the Mortgage Note should have been delivered to the Trust "bearing all intervening endorsements showing a complete chain of endorsement from the originator to the last endorsee, endorsed 'Pay to the order of _________, without recourse' and signed (which may be by facsimile signature) in the name of the last endorsee by an authorized officer." (PSA, § 2.01(b)(I)).

70. Since the Trust has not produced the original Mortgage Note, there is and can be no credible evidence that it was properly endorsed.

MERS Had No Authority to Assign the Mortgage Note to the Trust

71. The Mortgage Note was not payable to MERS and at no time did MERS have a legal or equitable interest in the Mortgage Note.

72. Since it had no legal or equitable interest in the Mortgage Note, MERS had no authority to assign the Mortgage Note to the Trust. Accordingly the Assignment, by which MERS purports to have assigned both the Mortgage and Mortgage Note to the Trust, is invalid and failed to assign or convey the Mortgage Note to the Trust.

The Assignment Was Executed After the Trust's Closing Date

73. The Assignment was executed on November 16, 2006, more than a year after the Trust's Closing Date of September 29, 2005.

74. Therefore, even if MERS had authority to assign the Mortgage Note to the Trust, which the Plaintiffs deny, it would mean that the Trust did not acquire ownership of the Mortgage Note until after the Closing Date, which would be a violation of the PSA.

75. The terms of the PSA governing the assignment of the Mortgage Note to the Trust supersede and take precedence over the provisions of the Massachusetts Uniform Commercial Code, G.L. c. 106, that relate to assignment of negotiable instruments. Consequently, the transfer and delivery of the Mortgage Note to the Trust must comply with the requirements set forth in the PSA with regard thereto.

Signature Group Holdings, LLC, Also Claims to Own the Mortgage Note

76. The Plaintiffs' original lender, Fremont (Investment & Loan), was a wholly-owned subsidiary of Fremont General Corporation

77. On or about June 18, 2008, Fremont General Corporation ("Fremont General"), filed a voluntary petition for relief under Chapter 11 of the US Bankruptcy Code.

78. Signature Group Holdings LLC, a private investment firm, filed a plan to reorganize Fremont General with the US Bankruptcy Court. On June 11, 2010, its reorganization plan was confirmed by the Bankruptcy Court and became effective that day. As part of reorganization plan, Fremont General changed its name to Signature Group Holdings, Inc. and has continued to do business under that name.

79. The Plaintiffs received a notice dated March 23, 2011, from "SGH, Inc. SII to Fremont Investment & Loan" ("SGH"). A copy of the notice is attached as Exhibit 6.

80. The Plaintiffs are informed and believe that SGH and Signature Group Holdings, Inc. are the same company or that SGH is owned by or affiliated with Signature Group Holdings, Inc. The Plaintiffs are further informed and believe that "SII" as appearing on the above notice stands for "successor in interest".

81. In the notice it sent to the Plaintiffs, SGH states that it acquired the Plaintiffs' first mortgage loan on March 23, 2011. The notice states in relevant part" "[w]e are sending you this notice because we are required by law to notify you that your mortgage loan identified below has been sold or transferred to us. We are the new creditor of your mortgage loan"

82. If the Plaintiffs’ second mortgage was combined with their first mortgage loan, as they believe, it is not known whether SGH is claiming to have acquired only their first mortgage loan or the combined loan.

83. The notice from SGH further states that the Mortgage Note “is in our possession or held on our behalf by our custodian.”

84. The notice from SGH clearly refers to the Plaintiffs’ first mortgage loan. It correctly identifies the name of the originating lender (Fremont), the loan date (March 4, 2005), and the loan amount ($358,200.00). The mortgage identification number or MIN stated in the notice also matches the MIN on the Plaintiffs’ first mortgage loan (1001944-8000038634-0). See Exhibit 6.

85. The Trust has also represented that it owns the Plaintiffs’ first mortgage loan in various pleadings and motions filed with this Court, the Land Court and the federal court and in various notices it has sent to the Plaintiffs.

86. There exists an actual controversy as to the ownership of the Mortgage Note since both Signature Group Holdings, LLC (or SGH) and the Trust claim ownership.

87. For the foregoing reasons, this Court should issue a binding declaration and determination as to whether the Mortgage Note is owned by the Trust or by SGH or either of them, and should enjoin the Trust from foreclosing until the Court determines the true owner of the Mortgage Note.

**COUNT III - DECLARATORY JUDGMENT**
**VALIDITY OF THE ASSIGNMENT OF THE PLAINTIFFS' MORTGAGE**
**(Against Wells Fargo, as Trustee, Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4, and Mortgage Electronic Registration Systems, Inc).**

88. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

89. In accordance with the Supreme Judicial Court's recent opinions in *US Bank National Association v. Ibanez,* 458 Mass. 637 (2011) and *Eaton v. Federal National Mortgage Association, supra*, the Trust may not exercise the power of sale contained in the Plaintiffs' First Mortgage unless it is the current holder of the Mortgage.

90. Since the Trust was not the original mortgage holder, it can be the current mortgage holder only if it acquired the Mortgage through a valid assignment.

91. For the reasons set forth below, the Trust is not the current holder of the Plaintiffs' Mortgage and it therefore has no legal right or authority to foreclose.

<u>The Assignment of the Mortgage From MERS to Wells Fargo Was Not Executed by the Person Whose Name Appears on the Assignment</u>

92. On November 16, 2006, more than a year after the Trust's Closing Date, MERS allegedly assigned the First Mortgage to the Trust. See Exhibit 4.

93. The Assignment bears the signature of "M. Kelly Michie" ("Michie") who claims to have executed the Assignment as a "1st Vice President" of MERS.

94. Michie has executed numerous mortgage assignments which are recorded in the Suffolk Registry of Deeds and elsewhere. A comparison of Michie's signature on these other documents to his signature on the Assignment reveals substantial dissimilarities and indicates

that the signature on the Assignment was either forged or affixed to the Assignment by someone other than Michie. The execution of mortgage-related documents by a person other than the person whose name appears on the documents is commonly referred to as "robo-signing".

The Assignment Was Not Signed in the Presence of Notary Public

95. The notary jurat on the Assignment states that Michie's signature was notarized by Sandra Rivers ("Rivers") in Collins County, Texas.

96. Both Michie and Rivers were employed by Countrywide Servicing or one of its affiliated companies and assigned to its "Document Execution Team" at the time Rivers allegedly notarized Michie's signature.

97. When executing mortgage assignments and other documents, the Document Execution Team at Countrywide Servicing followed certain procedures put in place by its management. These procedures called for members of the Document Execution Team to execute mortgage assignments while not in the presence of a notary public. The executed assignments were then brought to other members of the Document Team who would notarize the signatures. As a result of these procedures, mortgage assignments and other documents that were notarized were not actually signed in the presence of a notary public even though the assignments state otherwise.

98. As a result of the procedures in place when Michie allegedly executed the Assignment, the Assignment was not executed in Rivers' presence and the jurat on the Assignment is therefore fraudulent, making the Assignment void.

99. Since the Assignment was not signed in the presence of Rivers, she cannot have truthfully attested to the true identity of the person who allegedly executed the Assignment and the true identity of the person who executed the Assignment is therefore unknown.

100. For the foregoing reasons, the Assignment is fraudulent, invalid and ineffective and did not assign ownership of the First Mortgage to the Trust.

<u>MERS Had No Authority to Execute the Assignment on Behalf of Fremont</u>

101. The Assignment states that it was executed by MERS “acting solely as nominee” for Fremont. See Exhibit 4.

102. As a nominee or agent, MERS had no authority to execute the Assignment unless it was directed to do so by its principal at that time.

103. As a nominee or agent of a third party, MERS had no authority to execute the Assignment on its own behalf without being directed to do so by its principal.

104. The Assignment states that it was executed by MERS as nominee for Fremont. However, if the Plaintiffs’ First Mortgage had been assigned to the Trust by its closing date, as the PSA requires, then Fremont no longer owned the Mortgage when MERS allegedly executed the Assignment at Fremont’s direction.

105. Since Fremont did not own the Mortgage when the Assignment was executed, Fremont could not authorize MERS to execute the Assignment.

106. Since MERS had no authority to act on behalf of Fremont and Fremont had no right to authorize MERS to act as its nominee or agent, the Assignment is void and it failed to assign, convey or otherwise transfer the First Mortgage or the Mortgage Note to the Trust.

Michie Had No Authority to Execute the Assignment on Behalf of MERS

107. Michie was employed by Countrywide Servicing and a member of its Document Execution Team at the time he allegedly executed the Assignment on behalf of MERS.

108. Assuming that he was the person who executed the Assignment, Michie was not an employee of MERS, was not compensated by MERS, did not report to work at MERS' offices, and did not take instructions or supervision from anyone at MERS.

109. MERS allows its members to designate their employees as "certifying officers" or "signing officers" of MERS by entering relevant information into the MERS computer system which then generates a boilerplate corporate resolution purporting to appoint the employees as signing officers. These individuals then sign documents on behalf of MERS, allegedly with its authority. The term "signing officer", as used herein, shall have the same meaning as "certifying officer".

110. MERS and the Trust claim that Michie executed the Assignment as a signing officer of MERS and, as such, that he was authorized to execute the Assignment on MERS' behalf.

111. MERS' use of signing officers who are not employees of MERS to execute documents on its behalf is a sham and does not bestow such authority.

112. Even if Michie was authorized to execute the Assignment on MERS' behalf, the corporate resolution allegedly creating such authority is not recorded in the Registry of Deeds and is not otherwise available to the public.

113. Since Michie's signature on the Assignment was either forged or affixed by someone other than Michie, there is no evidence that the person who executed the Assignment was authorized to act on MERS' behalf as one of its signing officers..

The First Mortgage Was Not Assigned to the Trust Prior to its Closing Date.

114. The Trust claims to have acquired the Plaintiffs' first mortgage loan through its alleged assignment to the Trust as part of the securitization process. The requisites for proper assignment are set forth in the PSA.

115. As described above, the Plaintiffs' first mortgage loan would have to have been assigned several times before being assigned to the Trust; specifically, from Fremont to Barclays Bank, as Purchaser; then from Barclays Bank to the Depositor; and then finally from the Depositor to the Trust.

116. There are no assignments from Fremont to Barclays Bank or from Barclays Bank to the Depositor recorded in the Registry of Deeds.

117. The only recorded assignment of the Mortgage is the Assignment which was executed on November 16, 2006, and recorded in the Registry of Deeds on December 14, 2006. See Exhibit 4. The Assignment was executed more than one year after the Trust's Closing Date and was therefore ineffective in transferring ownership of the Mortgage to the Trust prior to its Closing Date.

The Intervening Assignments of the First Mortgage Should Have Been Publicly Recorded

118. MERS operates and administers an electronic database (the "MERS System") which claims to privately track ownership interests in mortgages and servicing rights for its members so that the members can avoid paying recording fees.

119. MERS claims that when it is designated as a mortgagee, it continues to serve as the "mortgagee of record" as nominee or agent for successive assignors of the mortgages which are sold or assigned from one member of MERS to another member.

120. According to MERS, its members contractually agree to appoint MERS as their common agent with regard to all mortgages that are registered on the MERS System.

121. According to MERS' membership rules, when a mortgage loan is assigned by one member of MERS to another member, the assignment must be recorded electronically in the MERS System. MERS claims that a corresponding paper assignment does not need to be recorded in public land records when mortgages are assigned from one member of MERS to another member because MERS remains the mortgagee of record for each MERS member.

122. But MERS' rules do require that a paper assignment be publicly recorded when a mortgage loan is assigned by a member of MERS to a non-member.

123. The Plaintiffs are informed and believe that Fremont and Barclays Bank were both members of MERS when Fremont allegedly sold the First Mortgage to Barclays Bank.

124. The Plaintiffs are also informed and believe that neither the Depositor nor the Trust are members of MERS or were members of MERS when the First Mortgage was allegedly assigned to the Trust.

125. Since the Depositor was not a member of MERS, MERS' rules require that an assignment of the First Mortgage from Barclays Bank (a member of MERS) to the Depositor (a non-member) should have been recorded in the Registry of Deeds. However, no such assignment of the First Mortgage was recorded. Similarly, when the Depositor allegedly assigned the First

Mortgage to the Trust, another assignment should have been publicly recorded since neither the Depositor nor the Trust are members of MERS.

126. Since the Depositor was not a member of MERS, it had no right or authority to record its assignment of the Mortgage to the Trust on the MERS System. Instead, it should have recorded an assignment in the Registry of Deeds, but failed to do so.

Neither Fremont Nor the Trust Could Authorize MERS to Execute the Assignment

127. The Assignment states that it was executed by MERS "acting solely as nominee" for Fremont. However, Fremont no longer owned the First Mortgage when the Assignment was executed and therefore had no right or ability to authorize MERS to execute the Assignment on its behalf.

128. Since the Trust was not a member of MERS, MERS had no authority to act as a common agent of the Trust and could not authorize MERS to execute the Assignment on its behalf.

The Trust Is Not the Current Mortgage Holder

129. The Trust, through Wells Fargo, its Trustee, has no legal right to exercise the power of sale contained in the First Mortgage and foreclose unless and until it proves that it is the current mortgagee, as that term is defined in G.L. c. 183, § 21, G.L. 244, § 14 and Massachusetts case law.

130. In order to prove that it is the current mortgagee of the First Mortgage, the Trust must prove and document each and every alleged assignment of the First Mortgage, including the intervening assignments that occurred before the First Mortgage was allegedly securitized.

131. None of the intervening assignments pre-dating the Trust's formation are recorded in the Registry of Deeds and the Trust has not produced any of the unrecorded intervening assignments.

132. For the reasons stated above, the Trust has not proven that is the current holder of the Mortgage.

133. For the foregoing reasons, this Court should enter a binding declaration that the Assignment of the Mortgage from MERS to the Trust is void, that the Trust is not the current mortgagee and that it has no legal right or authority to exercise the power of sale in the Mortgage and foreclose.

**COUNT IV - UNFAIR OR DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF GENERAL LAWS CHAPTER 93A (Against Mortgage Electronic Registration Systems, Inc. )**

134. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

135. MERS was designated as the nominee of the Plaintiffs' First Mortgage. It then subsequently assigned or attempted to assign the First Mortgage to Wells Fargo, as Trustee of the Trust.

136. MERS also serves as mortgagee of record in connection with numerous other mortgages recorded in the Suffolk Registry of Deeds and in the Registry of Deeds for all counties in Massachusetts. It has also commenced non-judicial foreclosure proceedings in its own name against property located in Massachusetts which was owned by residents of Massachusetts. For these and other reasons, MERS was engaged in trade or commerce in Massachusetts at all times relevant to the allegations set forth in this Complaint.

137. MERS has committed various unfair or deceptive acts and practices declared unlawful by G.L. c. 93A and various regulations promulgated thereunder which include, but may not be limited to the following:

a) allowing the Assignment to be executed by a signing officer of MERS at a place other than MERS' corporate offices and failing to supervise the execution of the Assignment to ensure that it was properly executed in the presence of a notary public;

b) allowing a person who was not a signing officer of MERS to execute the Assignment;

c) falsely representing to have executed the Assignment at the direction of Fremont and falsely stating that it was acting on behalf of Fremont when Fremont no longer had a legal or equitable interest in the Mortgage;

d) executing the Assignment on its own behalf without the legal right or authority to do so;

e) taking unauthorized action on behalf of the Depositor and/or the Trust, neither of which were members of MERS;

f) maintaining a private land recording system which hid and obscured from the Plaintiffs the true owner of their mortgage loan while failing to provide access to the MERS System to the Plaintiffs and other homeowners;

g) using deceptive, confusing and misleading language in the Mortgage, to wit: claiming to be both the mortgagee and nominee of the mortgagee (in effect, claiming to be both agent and principal);

h) failing to record assignments of the Mortgage in violation of MERS' own rules;

I) using or assisting other entities in using false representations or deceptive means to collect a debt in violation of 209 CMR 18.16(10);

j) transacting business in Massachusetts while not maintaining a registered office in Massachusetts in violation of G.L. c. 156D, § 15.07;

k) engaging in oppressive and unconscionable acts and practices and failing to comply with the rules, regulations and laws of the Commonwealth of Massachusetts, as described above, in violation of 940 CMR 3.16.

138. The unfair or deceptive acts or practices described herein were committed both willfully and knowingly.

139. As a result of the unfair or deceptive acts or practices described herein, the Plaintiffs have sustained injuries, including, but not limited to, statutory damages and legal fees and expenses, which damages the Plaintiffs will prove at trial.

140. On November 22, 2011, the Plaintiffs, through their attorney, served MERS with a written demand for relief, by certified mail, return receipt, postage prepaid, as required by G.L. c. 93A, § 9. A copy of said demand letter is attached hereto as Exhibit 7.

141. MERS responded to the Plaintiffs written demand for relief, but its response failed to include a written tender of settlement, as provided in G.L. c. 93A, § 9(3).

**COUNT V - UNFAIR OR DECEPTIVE ACTS AND PRACTICES**
**IN VIOLATION OF GENERAL LAWS CHAPTER 93A**
**(Against Bank of America Corp.)**

142. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

Successor Liability of Bank of America

143. The PSA designated Countrywide Servicing as the original servicer of the mortgage loans that were allegedly purchased by the Trust, including the Plaintiff's first mortgage loan.

144. On July 1, 2008, Bank of America acquired Countrywide Servicing's parent company, Countrywide Financial, through an all-stock transaction involving a Bank of America subsidiary created for the sole purpose of facilitating the acquisition of Countrywide Financial. As a result of this transaction, the shareholders of Countrywide Financial became shareholders of Bank of America.

145. Countrywide Servicing, as a wholly-owned a subsidiary of Countrywide Financial, was acquired by Bank of America as part of its acquisition of Countrywide Financial.

146. Bank of America acquired Countrywide Financial and its subsidiaries, including Countrywide Servicing, for the purpose of merging Countrywide Financial with and into Bank of America and not to hold the acquired companies as subsidiaries of Bank of America.

147. Upon information and belief, substantially all of the assets of both Countrywide Financial and Countrywide Servicing assets were transferred to Bank of America on or about November 7, 2008.

148. Upon information and belief, Countrywide Financial ceased filing its own financial statements in November 2008, and its assets and liabilities have been included in Bank of America's financial statements since that time.

149. Bank of America has described the transaction through which it acquired Countrywide Financial and its subsidiaries as a merger and has expressed its intention to integrate Countrywide Financial and its subsidiaries into Bank of America.

150. For the foregoing reasons, there has been a merger or “de facto” merger of Countrywide Financial and its subsidiaries, including Countrywide Servicing, with and into Bank of America. Accordingly, Bank of America is successor in liability to Countrywide Servicing and is jointly and severally liable for the wrongful conduct Countrywide Servicing.

151. On April 27, 2009, Countrywide Servicing filed a Certificate of Amendment of Registration of a Foreign Limited Partnership with the Massachusetts Secretary of State. This Certificates states that the name of Countrywide Servicing was now changed to BAC Home Loans Servicing, Limited Partnership (“BAC Servicing”)

152. Thereafter, BAC Servicing took over Countrywide Servicing’s duties and became the servicer of the Plaintiffs’ first mortgage loan.

153. After taking over servicing duties from Countrywide Servicing, BAC Servicing sent monthly mortgage statements to the Plaintiffs, collected monthly payments from the Plaintiffs and maintained an escrow account from which BAC paid or was supposed to pay real estates taxes and insurance on the Plaintiffs’ home.

154. On July 1, 2011, BAC Servicing filed a Certificate of Withdrawal of Foreign Limited Partnership with the Massachusetts Secretary of State. This Certificate states that BAC Servicing was no longer doing business in Massachusetts.

155. Effective July 1, 2011, BAC Servicing was merged with and into Bank of America and thereafter became known as "Bank of America, N.A, as successor by merger to BAC Home Loans Servicing, LP."

156. As successor by merger to BAC Servicing, Bank of America is also successor in liability to both BAC Servicing and Countrywide Servicing and is jointly and severally liable for the wrongful acts and conduct of BAC Servicing and Countrywide Servicing.

157. On or about July 1, 2011, Bank of America took over the servicing of the Plaintiffs' first mortgage loan.

Countrywide Servicing and BAC Servicing Violated an FTC Consent Order

158. On June 15, 2010, the United States District Court for the Central District of California approved a Consent Judgment and Order (the "Consent Order") by and between the Federal Trade Commission (FTC), as plaintiff, and Countrywide Home Loans, Inc. and BAC Servicing, as defendants (the "Consent Order Defendants"), in Case No. 2:10-cv-04193-JFW-SS.

159. The Consent Order prohibits the Consent Order Defendants from misrepresenting the status or amounts owed on mortgage loans they were servicing, from assessing and/or collecting unauthorized default-related fees, from misrepresenting that fees are allowed by loan instruments, and from misrepresenting the amount, nature or terms of fees charged to borrowers.

160. The Consent Order further prohibits the Consent Order Defendants from assessing or collecting fees for default-related services unless those fees are reasonable and charged by third-party service providers.

161. The Consent Order further prohibits the Consent Order Defendants from initiating foreclosure actions or assessing fees in connection with an actual or threatened foreclosure action

before reviewing "Competent and Reliable Evidence" demonstrating that the borrower is in default under the terms of the loan instrument and from consummating foreclosure sales without first investigating non-frivolous disputes by borrowers and informing borrowers of the results of its investigation.

162. As part of the Consent Order, the Consent Order Defendants agreed to pay $108,000,000.00 in penalties.

163. On or about March 22, 2012, the United States District Court for the Central District of California approved a Supplemental Consent Judgment and Order (the "Supplemental Consent Order") by and between the Federal Trade Commission (FTC), as plaintiff, and Countrywide Home Loans, Inc. and BAC Servicing, as defendants (the "Supplemental Consent Order Defendants"), Case No. 2:10-cv-04193-JFW-SS. A copy of the Supplemental Consent Order can be found at the FTC's website at http://ftc.gov/os/caselist/0823205/120209countrywideorder.pdf and is incorporated by reference herein.

164. The Supplemental Consent Order arose out of allegations made by the FTC that BAC Servicing, during the period between June 17, 2010 and June 30, 2011, had, *inter alia*, misrepresented the amounts owed on loans through court submissions and in other ways, had misrepresented the status of loans by improperly completing foreclosures, and had assessed and/or collected $36,100,034.00 in unauthorized default-related fees in violation of the Consent Order. See § F, ¶ 1-4, p. 3 and lines 16-17, p. 5.

165. The Supplemental Consent Order provides that BAC Servicing merged into Bank of America effective July 1, 2011 and that Bank of America agreed to assume the monetary liabilities of BAC Servicing arising from its alleged violation of the Consent Order. See ¶ 2, p. 5.

Unfair or Deceptive Acts and Practices

166. For the reasons stated herein, including, but not limited to, the servicing of the Plaintiffs' first mortgage loan, Countrywide Servicing, BAC Servicing and Bank of America are or were engaged in trade or commerce at all times relevant to the allegations set forth in this Complaint.

167. Countrywide Servicing, BAC Servicing and/or Bank of America have committed various unfair or deceptive acts and practices declared unlawful by G.L. c. 93A and various regulations promulgated thereunder, for which Bank of America is directly liable or liable as successor in interest to Countrywide Servicing and/or BAC Servicing. These unfair or deceptive acts and practices include, but may not be limited to the following:

a) collecting or attempting to collect a debt from the Plaintiffs in the form of monthly mortgage loan payments on behalf of the Trust when the Trust did not own the Plaintiffs' first mortgage loan and remitting some or all of the collected payments to the Trust;

b) knowingly and/or recklessly aiding, abetting and assisting the Trust in its attempt to foreclose the Plaintiffs' First Mortgage when Bank of America or its predecessors in interest knew or should have known that the Trust had no right or legal authority to foreclose, in violation of 209 CMR 18.17(6) and 18.21(9);

c) falsely representing the legal status of the Plaintiff's first mortgage loan in violation of 209 CMR 18.16(2)(a) and 940 CMR 7.07(2), including, but not limited to, representing that the loan was owned by the Trust;

d) collecting or attempting to collect default-related fees and charges, including late fees and foreclosure-related fees, and attempting to collect excessive fees and charges that cannot be legally collected, in violation of 209 CMR 18.16(2)(b);

e) using false or deceptive means to collect a debt in violation of 209 CMR 18.16(10);

f) collecting or attempting to collect default-related fees, charges or expenses that were not authorized by the Plaintiffs' First Mortgage and/or not permitted by law and which exceeded the actual or reasonable cost of the services provided, including, but not limited to, charging the Plaintiffs with excessive fees for default-related services by funneling these services through affiliated companies, marking up the cost, and then charging the Plaintiffs a marked-up fee, in violation of 209 CMR 18.17(1) and the Mortgage;

g) knowingly misapplying or recklessly applying loan payments and escrow account payments made by the Plaintiffs to the outstanding balance of their mortgage loan, in violation of 209 CMR 18.21(1) and (2);

f) negligently supervising the execution of the Assignment, failing to ensure that it was executed by the person whose name appears on the Assignment and failing to ensure that it was executed in the presence of a notary public;

g) intentionally maintaining and implementing procedures which resulted in the Assignment not being executed in the presence of a notary public;

h) adding excessive and unauthorized fees and charges to the principal balance of the Plaintiffs' first mortgage loan;

j) falsely representing that the Plaintiffs owe unauthorized, excessive and unreasonable foreclosure-related fees and charges;

k) engaging in oppressive and unconscionable acts and practices and failing to comply with the rules, regulations and laws of the Commonwealth of Massachusetts, as described above, in violation of 940 CMR 3.16;

l) violating the Consent Order for the reasons stated therein; and

m) providing and reporting inaccurate information regarding the Plaintiffs to one or more consumer reporting agencies and failing to maintain without reasonable cause to believe that such information is accurate in violation of G.L. c. 93, § 54A.

168. Countrywide Servicing, BAC Servicing and/or Bank of America committed the unfair or deceptive acts or practices described herein both knowingly and intentionally and Bank of America is liable therefore as successor in interest to Countrywide Servicing and BAC Servicing, and for its own unfair and deceptive acts or practices..

169. As a result of the unfair or deceptive acts or practices described herein, the Plaintiffs have sustained injuries, including, but not limited to, statutory damages and legal fees and expenses, which damages the Plaintiffs will prove at trial.

170. On November 22, 2011, the Plaintiffs, through their attorney, served BAC Servicing with a written demand for relief, by certified mail, return receipt, postage prepaid, as required by G.L. c. 93A, § 9. A copy of said demand letter is attached hereto as Exhibit 8.

171. BAC Servicing responded to the Plaintiffs written demand for relief, but its response failed to include a written tender of settlement, as provided in G.L. c. 93A, § 9(3)

**COUNT VI - BREACH OF CONTRACT**
**(Against Bank of America Corp.)**

172. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

173. The First Mortgage is a binding and enforceable contract that governs what default-related fees and charges may be assessed against the Plaintiffs for failing to stay current with their loan payments.

174. Countrywide Servicing and/or BAC Servicing ordered various default-related services when the Plaintiffs first mortgage loan became delinquent. Upon information and belief, these default-related services included, but may not be limited to, property inspection fees, title search fees and property appraisals.

175. Rather than obtaining default-related services directly from third-party vendors and charging the Plaintiffs for the actual cost of such services, Countrywide Servicing and/or BAC Servicing ordered such services from their subsidiary or affiliated companies (the “Default Subsidiaries”) which, in turn, ordered the services from third-party vendors. The Default Subsidiaries then charged fees to the Plaintiffs that were was significantly higher than the fees charged by the third-party vendors.

176. The use of Default Subsidiaries was a part of a vertical-integration and diversification strategy through which Countrywide Servicing and BAC Servicing sought to generate unlawful and impermissible fees and to profit from homeowners in default, including the Plaintiffs.

177. While the First Mortgage authorizes Countrywide Servicing and BAC Servicing to pay for default-related fees when reasonably necessary or appropriate to protect the Unit and its value, it does not authorize Countrywide Servicing and BAC Servicing to mark-up the cost of such services in order to profit thereby, which each of them did.

178. In marking up fees for default-related services and charging the Plaintiffs more than the actual cost of such services and/or charging Plaintiffs for fees which were not reasonably necessary or appropriate to protect the Unit, Countrywide Servicing, BAC Servicing and/or Bank of America violated and breached the terms of the Mortgage and are liable to the Plaintiffs .

179. Bank of America is liable as successor in interest to Countrywide Servicing and BAC Servicing and for its own conduct in breaching the First Mortgage.

180. As a result of Countrywide Servicing and BAC Servicing breaching the First Mortgage, the Plaintiffs suffered damages, including the addition of unauthorized and unlawful fees to the principal balance of their first mortgage loan and interest charged on such fees, which they will prove at trial.

**COUNT VII - BREACH OF CONTRACT**
**(Against Wells Fargo, as Trustee, and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4)**

181. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

182. Countrywide Servicing, BAC Servicing and/or Bank of America breached the terms of the Mortgage by charging unlawful and unauthorized default-related fees to the Plaintiffs , as previously described herein.

183. In charging unlawful and unauthorized default-related fees to the Plaintiffs, Countrywide Servicing and BAC Servicing were each acting as the duly authorized agent of the Trust and within the scope of their authority to act on behalf of the Trust. .

184. Wells Fargo, as Trustee, and the Trust are liable for the acts and conduct of their authorized agents, Countrywide Servicing and BAC Servicing, for their conduct in breaching the terms of the First Mortgage by charging unauthorized and unlawful default-related fees and as otherwise described herein.

**COUNT VIII - VIOLATION OF G.L. c. 93, § 54A**
**(Against Bank of America Corp.)**,

185. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

186. The Plaintiffs are informed and believe that Countrywide Servicing, BAC Servicing and/or Bank of America have inaccurately reported to one or more consumer reporting agencies that the Plaintiffs failed to make loan payments to the Trust when, in fact, the Trust had no right to collect such payments.

187. Countrywide Servicing, BAC Servicing and Bank of America all had reasonable cause to believe such information was inaccurate or incomplete at the time such information was reported..

188. For the foregoing reasons, Countrywide Servicing, BAC Servicing, and/or Bank of America have violated G.L. 93, § 54A.

189. Bank of America is liable therefor as successor in interest to Countrywide Servicing and BAC Servicing and for its own wrongful conduct.

**COUNT IX - CONVERSION**
**(Against Wells Fargo, as Trustee, and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4)**

190. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

191. The Trust never acquired ownership of the Mortgage Note for the reasons stated hereinabove.

192. Since the Trust never acquired ownership of the Mortgage Note, it had no right to collect and receive loan payments from the Plaintiffs in connection with the Mortgage Note.

193. The Plaintiffs made payments on the Mortgage Note to Countrywide Servicing and BAC Servicing, both of which acted as servicer for the Plaintiffs's first mortgage loan at various times. In collecting loan payments from the Plaintiffs, Countrywide Servicing and BAC Servicing were acting as authorized agents for the Trust.

194. The Trust, through its agents, Countrywide Servicing and BAC Servicing, accepted and retained the Plaintiffs' loan payments even though the Trust did not have the right to receive such payments.

195. The Trust exercised dominion and control over the payments it received from the Plaintiffs.

196. The acts of the Trust in collecting and receiving loan payments from the Plaintiffs were intentional.

197. The Plaintiffs remain liable to pay the true owner of their Mortgage Note and were therefore damaged by the Trust's unlawful receipt and retention of their loan payments.

198. For the foregoing reasons, Wells Fargo, as Trustee, and the Trust are required to return all of the loan payments collected or received from the Plaintiffs.

**COUNT X - CONVERSION**
**(Against Bank of America Corp.)**

199. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

200. The Trust never acquired ownership of the Mortgage Note for the reasons previously stated herein.

201. Since the Trust never acquired ownership of the Mortgage Note, it had no right to collect and receive loan payments from the Plaintiffs in connection with the Mortgage Note.

202. The Plaintiffs made payments on the Mortgage Note to Countrywide Servicing and BAC Servicing, both of which acted as servicer for the underlying mortgage loan at various times.

203. Countrywide Servicing and BAC Servicing deducted servicing fees, late fees and other charges from the Plaintiffs' loan payments before remitting the remaining part of the payments to the Trust.

204. Countrywide Servicing and BAC Servicing exercised dominion and control over the fees and charges each of them deducted from the Plaintiffs' loan payments..

205. The acts of Countrywide Servicing and BAC Servicing in deducting fees and charges from the Plaintiffs' loan payments were intentional.

206. For the foregoing reasons, Countrywide Servicing and BAC Home Loans are required to return all of the fees and charges that each of them deducted from the Plaintiffs' loan payments.

207. Bank of America is liable for the wrongful acts and conduct of Countrywide Servicing and BAC Home Loans as their successor in interest.

**COUNT XI - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against Bank of America Corp.)**

208. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

209. The First Mortgage granted by the Plaintiffs to MERS, as nominee for Fremont and its successor and assigns, includes an implied covenant of good faith and fair dealing.

210. Countrywide Servicing and BAC Servicing breached the implied covenant of good faith and fair dealing in connection with the performance of their loan servicing duties through their conduct as previously described herein. Such conduct includes, but may not be limited to, charging unlawful and unauthorized default-related fees and adding such fees to the principal balance of the Mortgage Note.

211. The Plaintiffs were damaged by the collection of unauthorized and unlawful fees by Countrywide Servicing and BAC Servicing.

212. Bank of America is liable for the conduct of Countrywide Servicing and BAC Servicing in breaching the implied covenant of good faith and fair dealing, as their successor in interest.

**COUNT XII - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
(**Against Wells Fargo, as Trustee, and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4**)

213. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

214. The First Mortgage granted by the Plaintiffs to MERS, as nominee for Fremont and its successors and assigns, includes an implied covenant of good faith and fair dealing.

215. The Trust claims to have acquired the First Mortgage as a successor to the original lender, Fremont. If the Trust did acquire the First Mortgage, then it is subject to the implied covenant of good faith and fair dealing contained in the First Mortgage.

216. Countrywide Servicing and BAC Servicing were acting as the authorized agents of the Trust when servicing the Plaintiffs' first mortgage loan and when charging unlawful and unauthorized default-related fees as described herein.

217. Countrywide Servicing and BAC Servicing breached the implied covenant of good faith and fair dealing through their conduct which includes, but may not be limited to, charging unlawful and unauthorized default-related fees and adding such fees to the principal balance of the Mortgage Note.

218. The Plaintiffs were damaged by the unlawful acts and conduct of Countrywide Servicing and BAC Servicing.

219. Wells Fargo, as Trustee, and the Trust are liable for the unlawful acts and conduct of Countrywide Servicing, BAC Servicing and Bank of America Corp. since Countrywide Servicing, BAC Servicing and/or Bank of America Corp. were acting as authorized agents of Wells Fargo and/or the Trust and within the scope of their authority.

220. Wells Fargo, as Trustee, and the Trust are liable for the breach of implied covenant of good faith and fair dealing contained in the Mortgage by their authorized agents, Countrywide Servicing, BAC Servicing and Bank of America Corp.

221. Wells Fargo, as Trustee, and the Trust are liable for their own breach of the implied covenant of good faith and fair dealing contained in the Mortgage, as described herein.

**COUNT XIII - MONEY HAD AND RECEIVED**
**(Against Bank of America Corp.)**

222. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

223. The Plaintiffs remain liable to the true owner of their Mortgage Note for the unpaid principal balance, accrued and unpaid interest, and late fees and other charges.

224. Countrywide Servicing and BAC Servicing were unjustly enriched when they deducted and received servicing fees, late fees, default-related fees and other charges from the Plaintiffs' loan payments which they were not entitled to receive and to which they had no rightful claim.

225. The Plaintiffs should recover all fees and monies deducted by Countrywide Servicing and BAC Servicing from the Plaintiffs' loan payments and Countrywide Servicing and BAC Servicing should disgorge all such fees and monies received from the Plaintiffs.

226. The Plaintiffs should recover all monies deducted from their loan payments by Countrywide Servicing and BAC Servicing.

227. Bank of America is liable for the for the unjust enrichment of Countrywide Servicing and BAC Home Loans as their successor in interest and should disgorge all such fees and monies that Countrywide Servicing and BAC Servicing received from the Plaintiffs

**COUNT XIV - UNJUST ENRICHMENT**
**(Against Wells Fargo, as Trustee and Securitized Asset Backed Receivables LLC 2005-FR4 Mortgage Pass-through Certificates, Series 2005-FR4)**

228. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

229. Wells Fargo, as Trustee, and the Trust was not entitled to collect and receive loan payments from the Plaintiffs because the Trust never acquired the Mortgage Note and therefore never acquired the right to collect and receive such payments.

230. The Trust was unjustly enriched through its receipt of loan payments made by the Plaintiffs which it had no right to receive and collect.

231. Wells Fargo, as Trustee, and or the Trust are therefore required to disgorge all monies and loan payments received from the Plaintiffs and to pay all such monies either of them received from the Plaintiffs.

**COUNT XV - UNJUST ENRICHMENT**
**(Against Bank of America, Corp)**

232. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

233. Countrywide Servicing and BAC Servicing were not entitled to deduct servicing fees, late fees and other charges from the Plaintiffs' loan payments because their principal, the Trust, never acquired the Mortgage Note and therefore had no right to receive loan payments from the Plaintiffs.

234. Countrywide Servicing and BAC Servicing were unjustly enriched through their receipt of servicing fees, late fees and other charges which each of them deducted from the Plaintiffs' loan payments.

235. Countrywide Servicing and BAC Servicing were also unjustly enriched through their receipt of unauthorized default-related fees in violation of the terms of the First Mortgage and the Consent Order.

236. Countrywide Servicing and BAC Servicing are therefore required to disgorge all servicing fees, late charges and default-related fees that each of them received from the Plaintiffs or deducted from the Plaintiffs' loan payments.

237. Bank of America is liable for the unjust enrichment of Countrywide Servicing and BAC Home Loans as their successor in interest and is therefore required to disgorge all servicing fees, late charges and default-related fees that Countrywide Servicing and BAC Servicing received from the Plaintiffs or deducted from the Plaintiffs' loan payments.

**COUNT XVI - COMMON LAW FRAUD AND MISREPRESENTATION**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

238. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

239. At all times material and relevant hereto, Gillis was employed by and acted as an authorized agent of NextHome, and NextHome is liable for the actions of Gillis, its authorized agent.

240. In the course of their dealings and communications with the Plaintiffs, Gillis and NextHome made material misrepresentations to the Plaintiffs and omitted and failed to apprise the Plaintiffs of material facts regarding the Plaintiffs' mortgage loans and the loan application process and procedures.

241. These false and misleading misrepresentations made by Gillis and NextHome include, but may not be limited to, preparing a Uniform Residential Loan Application (the "Loan Application") which had false and inaccurate information relating to the Plaintiffs, including their incomes; signing the Plaintiffs' names on the Loan Application without their knowledge or consent; submitting the Loan Application to Fremont and possibly other lenders without their knowledge or consent; misrepresenting the terms of the mortgage loans which they procured for the Plaintiffs and omitting material information and terms in connection therewith; arranging a loan for the Plaintiffs with knowledge that the Plaintiffs could not afford to make payments thereon; and misleading the Plaintiffs to believe that they would be able to refinance the loans in the near future.

242. Gillis and NextHome knew that their statements and representations were false and misleading at the time they were made and made those statements and representations with the intent to mislead, deceive and defraud the Plaintiffs.

243. The Plaintiffs justifiably relied on the false statements and representations and misleading omissions described herein.

244. The Plaintiffs would not have closed on the mortgage loans had they not been deceived and misled.

245. As a result of such fraud and misrepresentation on the part of Gillis and NextHome, the Plaintiffs suffered damages which they will prove at trial.

**COUNT XVII - BREACH OF FIDUCIARY DUTY**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

246. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

247. The Plaintiffs hired Gillis and NextHome as a mortgage loan broker to act on their behalf and to obtain a mortgage loan or loans for them having the lowest interest rate and the most favorable terms which they were qualified to receive, which induced the Plaintiffs to trust and rely on Gillis and NextHome to act in their best interest.

248.. In consideration of Gillis' and NextHome's promise and agreement to obtain a mortgage loan or loans for the Plaintiffs having the lowest interest rate and the most favorable terms which they were qualified to receive, the Plaintiffs agreed to compensate Gillis and NextHome for their services.

249. In arranging and procuring mortgage loans for the Plaintiffs, Gillis and NextHome acted as their agent by express and implied contract and by operation of law.

250. In their capacity as an agent for the Plaintiffs, Gillis and NextHome owed a fiduciary duty and a duty of loyalty to the Plaintiffs to act primarily for their benefit, to act on their behalf with skill and diligence, to not arrange a loan with disadvantageous terms and to not to profit at their expense.

251. Gillis and NextHome breached their fiduciary duty to the Plaintiffs by:

a) failing to arrange mortgage loans for the Plaintiffs with the lowest interest rate and most favorable terms which they were qualified to receive;

b) arranging and procuring mortgage loans for the Plaintiffs with terms that were not advantageous and not in their interest;

c) arranging and procuring mortgage loans for the Plaintiffs with knowledge that the Plaintiffs could not afford to make the payments thereon;

d) accepting and receiving excessive fees and compensation unrelated to the services provided to the Plaintiffs, including, but not limited to, accepting and receiving an excessive and unjustified "yield spread premium" from Fremont which was intended as an incentive to steer the Plaintiffs into loans with higher interest rates and/or less favorable terms than the Plaintiffs were qualified to receive;

e) making false and misleading statements and representations and failing to disclose important and material facts to the Plaintiffs which, if known, would have caused them not to enter into the loan transaction described herein and/or to seek a loan from other sources; and

f) failing to act in good faith and in the Plaintiff's best interest, and by profiting at their expense.

252. As a result of the breach of their fiduciary duty to the Plaintiffs, Gillis and Next Home are liable to the Plaintiffs for damages which the Plaintiffs will prove at trial.

**COUNT XVIII - NEGLIGENT MISREPRESENTATION**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

253. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

254. Based on their superior knowledge of and expertise with regard to mortgage loans and the mortgage loan process, Gillis and NextHome owed a duty to the Plaintiffs to provide complete and accurate information regarding the terms of the loans they arranged for the Plaintiffs.

255. Gillis and NextHome breached their duty to provide complete and accurate information to the Plaintiffs by failing to provide such information.

256. Gillis and NextHome also made false and inaccurate statements and misrepresentations which they knew or were negligent in not knowing at the time to be false, in order to induce the Plaintiffs to accept and close on the mortgage loans arranged for them.

257. At the time these misrepresentations were made, Gillis and NextHome knew or were negligent in not knowing that their statements were false, misleading and inaccurate, and that such information was not known to the Plaintiffs.

258. Gillis and NextHome knew or were negligent in not knowing that the Plaintiffs were relying on their false, misleading and inaccurate misrepresentations and on their misleading omissions.

259. The Plaintiffs did rely on such false, misleading and inaccurate misrepresentations and omissions and suffered damages as a result.

260. By reason of the foregoing, Gillis and NextHome are liable to the Plaintiffs for negligent misrepresentation.

261. The Plaintiffs have suffered damages as the result of such negligent misrepresentations which they will prove at trial.

**COUNT XIX - BREACH OF CONTRACT**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

262. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

263. The Plaintiffs and Gillis and Next Home entered into a binding and enforceable contract whereby Gillis and NextHome agreed to procure a mortgage loan for the Plaintiffs with the lowest interest rate and the most favorable terms then available and the Plaintiffs agreed to compensate Gillis and NextHome for this service.

264. The Plaintiffs paid consideration to Gillis and NextHome for their services through fees that were deducted from the gross mortgage loan proceeds received by the Plaintiffs at the time of closing.

265. The Plaintiffs duly performed all of their obligations under their agreement with Gillis and NextHome.

266. Gillis and NextHome failed to perform the services they agreed to provide and breached their agreement with the Plaintiffs by arranging and procuring mortgage loans for the Plaintiffs that did not have the lowest interest rates and/or the most favorable terms which they were qualified to receive.

267. For the foregoing reasons, Gillis and NextHome are liable to the Plaintiffs for breach of contract

268. As a result of such breach, the Plaintiffs have suffered damage and injuries which they will prove at trial..

**COUNT XX - UNJUST ENRICHMENT**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

269. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

270 Gillis and NextHome were unjustly enriched at the expense of the Plaintiffs through their receipt of fees and compensation paid by the Plaintiffs and through their receipt of an excessive and unjustified yield spread premium paid to them by Fremont

271. Gillis and NextHome failed to perform the services for which they were compensated.

272. The Plaintiffs were damaged and harmed by the unjust enrichment of Gillis and NextHome.

273. As a result of such unjust enrichment, Gillis and NextHome are liable to the Plaintiffs to return and pay over to the Plaintiffs all of the compensation they received in connection with the Plaintiffs' mortgage loans, including the spread premium paid to them by Fremont.

**COUNT XXI - BREACH OF IMPLIED COVENANT OF GOOD FAITH . AND FAIR DEALING**
**(Against Richard Gillis and Next Home Mortgage Company, Inc.)**

274. The Plaintiffs repeat and reallege the previous allegations set forth in this Complaint as if fully set forth herein.

275. The agreement between the Plaintiffs and Gillis and NextHome includes an implied covenant of good faith and fair dealing.

276. Gillis and NextHome breached the implied covenant of good faith and fair through their conduct as described herein.

277. As a result of such breach, the Plaintiffs were damaged and were denied their right to receive the fruits of their agreement with Gillis and NextHome, to wit: to receive a mortgage loan with the lowest interest rate and most favorable terms they were qualified to receive.

278 Gillis and NextHome are liable to the Plaintiffs for their bad faith in breaching the implied covenant of good faith and fair dealing.

279. The Plaintiffs have suffered damages as a result of such breach which they will prove at trial.

**REQUESTS FOR RELIEF**

WHEREFORE, the Plaintiffs, Ariel Monges and Delma Santiago, respectfully request this Court to:

a) enter declaratory judgments and binding declarations as requested herein;

b) if the Court determines that Wells Fargo, as Trustee, and the Trust are not the current holder of the Mortgage Note and/or are not the current holder of the First Mortgage, enter a preliminary injunction restraining and enjoining Wells Fargo, as

Trustee, and the Trust, and their predecessors, successors, nominees, assigns, subsidiaries, affiliates, attorneys or agents, and any other person, from foreclosing the First Mortgage secured by the Plaintiffs' condominium unit;

c) award damages in favor of the Plaintiffs against all defendants, jointly and severally, or as the Court deems just and proper, for all damages and monetary losses suffered by the Plaintiffs as a result of the Defendants' wrongful acts and conduct, in amounts to be proven at trial;

d) award double or treble damages to the Plaintiffs' on their claims for violation of G.L. c. 93A;

e) award the Plaintiffs' attorneys' fees and costs of suit;

f) grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

The Plaintiffs demand a trial by jury on all issues so triable.

ARIEL MONGES and DELMA SANTIAGO
By their attorney,

October 18, 2012

______________________________

Robert Scarino
BBO NO. 444340
225 Cedar Hill Street, Suite 200
Marlborough, MA 01752
(508) 630-2133
bob@rslawoffice.com

Trustee, and the Trust, and their predecessors, successors, nominees, assigns, subsidiaries, affiliates, attorneys or agents, and any other person, from foreclosing the First Mortgage secured by the Plaintiffs' condominium unit;

c) award damages in favor of the Plaintiffs against all defendants, jointly and severally, or as the Court deems just and proper, for all damages and monetary losses suffered by the Plaintiffs as a result of the Defendants' wrongful acts and conduct, in amounts to be proven at trial;

d) award double or treble damages to the Plaintiffs' on their claims for violation of G.L. c. 93A;

e) award the Plaintiffs' attorneys' fees and costs of suit;

f) grant such other relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

The Plaintiffs demand a trial by jury on all issues so triable.

ARIEL MONGES and DELMA SANTIAGO
By their attorney,

October 18, 2012

[signature]

Robert Scarino
BBO NO. 444340
225 Cedar Hill Street, Suite 200
Marlborough, MA 01752
(508) 630-2133
bob@rslawoffice.com