# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ARIEL MONGES and DELMA
SANTIAGO,
     Plaintiffs,


     v.                           CIVIL ACTION NO. 13-11752-GAO


WELLS FARGO BANK,
NATIONAL ASSOCIATION,
*as Trustee for* SECURITIZED
ASSET BACKED
RECEIVABLES LLC 2005-FR4
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-FR4,
*et al*.,
     Defendants.


# REPORT AND RECOMMENDATION ON
## MOTION FOR SUMMARY JUDGMENT (#28).


KELLEY, U.S.M.J.


     In this action, Plaintiffs Ariel Monges and Delma Santiago seek to prevent the foreclosure

of their property. Pending before the Court is a motion for summary judgment that was filed by

Defendants Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed

Receivables LLC 2005-FR4 Mortgage Pass-Through Certificates, Series 2005-FR4; Mortgage

Electronic Registration Systems, Inc. ("MERS"); and Bank of America, N.A. (Defendants' Motion

for Summary Judgment, #28.) Plaintiffs responded in opposition to the motion, and Defendants

replied. (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, #35; Reply Brief,

#37.)  For the reasons that follow, I recommend that Defendants' Motion for Summary Judgment

be ALLOWED, and that judgment be entered in favor of these Defendants.[1]

I.     BACKGROUND

Except as otherwise noted, the following facts are undisputed. Ariel Monges and Delma

Santiago own a home at 20 Brook Street in Roslindale, Massachusetts. (Statement of Undisputed

Material Facts in Support of Defendants' Motion for Summary Judgment, #30 at 1.)  Plaintiffs

purchased the property by executing a note on March 4, 2005, in the amount of $358,200.00, in

exchange for a loan from Fremont Investment & Loan.[2] (*Id*. at 1-2 & exh. 1 at 76-79; Plaintiffs'

Responses to Defendants' Statement of Undisputed Material Facts and Plaintiffs['] Statement of

Additional Disputed Facts, #33 at 1-2.)  Defendants claim, and Plaintiffs dispute, that Wells Fargo

became the note holder by Fremont's endorsement on September 29, 2005. (#30 at 4; #33 at 8-10.)

The note was secured by a mortgage. (#30 at 2 & exh. 1 at 55-75.) The mortgage designates

Monges and Santiago as "Borrower[s]" and Fremont as "Lender." (*Id*. at exh. 1 at 55-56.) It also

refers to MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's

successors and assigns" and "the mortgagee under this Security Instrument." (*Id*. at exh. 1 at 55.)

The mortgage authorizes the lender to accelerate payments due and to foreclose on its interest in the

property if Plaintiffs fail to cure a default after proper notice. (*Id*. at exh. 1 at 67.) Specifically, the

mortgage provides:

> If the default is not cured on or before the date specified in the notice, Lender at its
> option may require immediate payment in full of all sums secured by this Security

---

[1]     Plaintiffs also filed claims against NextHome Mortgage Company, Inc., and Richard Gillis, but they are not a
subject of the pending summary judgment motion.

[2]     On the same date, Plaintiffs obtained a second loan from Fremont in the amount of $19,900. (#33 at 1-2.) The
second loan is not at issue in this case. (*See* #35 at 2 n 1.)

Instrument without further demand and may invoke the STATUTORY POWER OF SALE and other remedies permitted by Applicable Law.

(*Id*.) The mortgage also states that, if the lender invokes the power of sale, it must publish a notice of sale, and then otherwise sell the property in the manner prescribed by the applicable law. (*Id*.) Defendants claim that Wells Fargo became the mortgage holder on November 16, 2006, by MERS's assignment. (*Id*. at 3.) Plaintiffs contend that the alleged assignment was not valid. (#33 at 7-8.) There is no dispute that the alleged assignment of the mortgage by MERS to Wells Fargo was recorded in the Suffolk County Registry of Deeds on December 14, 2006. (*Id*. at 7.)

Plaintiffs' loan was initially serviced by Countrywide Home Loans Servicing, LP ("CHLSLP"). (#30 at 2.) At a later date, BAC Home Loans Servicing, LP ("BACHLSLP") succeeded CHLSLP as servicer. (*Id*. at 2 & exh. 3 at 2; #33 at 3.) Bank of America, N.A., is a successor by merger to BACHLSLP. (Corporate Disclosure Statement, #2, at 1.) CHLSLP and, later, BACHLSLP, sent monthly statements to Plaintiffs, and collected loan payments from them. (#30 at 2.) Plaintiffs failed to make regular loan payments beginning as early as 2005. (*Id*.; #33 at 3.) According to Defendants, CHLSLP sent notices of default on October 3, 2005, and June 2, 2006; Plaintiffs state that they "do not know whether they received" them. (#30 at 2 & exh. 3; #33 at 4.) Plaintiffs did, however, receive a subsequent letter from CHLSLP notifying them that a foreclosure sale of the property had been scheduled for January 31, 2007. (#30 at 2 & exh. 3.) That sale did not go forward.

In late Spring of 2009, Plaintiffs successfully applied for a loan modification from BACHLSLP. (*Id*.) However, Plaintiffs failed to make regular payments under the modification agreement. (#33 at 5.) Allegedly, BACHSLP sent Plaintiffs notices of intent to foreclose in August and September 2009. (*Id*. at 3; *but see* #33 at 5 [Plaintiffs state that they are unsure whether they

3

received these and that, in any event, the letterhead says "Bank of America Home Loans" instead of "BAC Home Loans Servicing, LP"].)

On October 5, 2010, the law firm of Guaetta and Benson, as representatives for Wells Fargo as trustee, sent Plaintiffs a letter notifying them that a foreclosure sale of the property had been scheduled for October 26, 2010. (#30 at exh. 3 at 89-93; #33 at 10-11.) The sale did not take place. On November 9, 2010, Plaintiffs filed an action in state court to challenge the threatened foreclosure. (*See* Notice of Removal, #1, at exh. C [#1-3] at 14.) In their original complaint, Plaintiffs sued Wells Fargo and MERS, seeking a declaratory judgment "that an alleged assignment of the Plaintiffs' mortgage loan from MERS TO [sic] Wells Fargo Bank, N.A., as trustee, is invalid and that, as a result, the defendant securitization trust is not the current mortgagee and has no standing or authority to foreclose." (#1-3 at 14-15.) Plaintiffs subsequently amended their complaint, adding claims for injunctive relief and for violations of state and common law. (*Id.* at 101-102.) Plaintiffs also added claims "against their mortgage broker, NextHome Mortgage Company, Inc. and its employee, Richard Gillis." (*Id.* at 102.) The case was removed on July 22, 2013, based on this court's federal question and supplemental jurisdiction. (#1 at 3-6.)

In their most recent complaint, Plaintiffs summarize their allegations against the movants:

> This action, brought by two homeowners, seeks a declaratory judgment that Wells Fargo Bank, N.A., claiming to be Trustee of a securitization trust, lacks the authority to foreclose their mortgage because it has failed to produce the original promissory note and because it is neither the current holder of their mortgage nor the underlying promissory note. The Plaintiffs are seeking injunctive relief to stop the threatened foreclosure.
>
> The Plaintiffs are also asserting various claims against Wells Fargo Bank, as Trustee, and Bank of America Corp. Trust for conversion, money had and received, breach of contract, breach of the implied covenant of good faith and fair dealing, unfair or deceptive acts and practices in violation of the Massachusetts consumer protection law and unjust enrichment; against Bank of America Corp. for violation

4

of G.L. c. 93, § 54A; and against Mortgage Electronic Registrations Systems, Inc.
for unfair or deceptive acts and practices in violation of the Massachusetts consumer
protection law.

(#1-3 at 101-02.) On August 22, 2014, Defendants Wells Fargo, MERS, and Bank of America filed

a motion for summary judgment on all of those claims. Having reviewed the arguments, the

evidence, and the applicable law, the Court recommends that the motion for summary judgment be

allowed.

## II.   STANDARD OF REVIEW

The purpose of summary judgment is "'to pierce the boilerplate of the pleadings and assay

the parties' proof in order to determine whether trial is actually required.'" *Rojas-Ithier v. Sociedad*

*Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1st Cir. 2005) (quoting

*Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992)). When considering a motion

for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "assert[ing] the absence of

a genuine issue of material fact and then support[ing] that assertion by affidavits, admissions, or

other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1st Cir.

2003). "'Once the moving party avers the absence of genuine issues of material fact, the nonmovant

must show that a factual dispute does exist, but summary judgment cannot be defeated by relying

on improbable inferences, conclusory allegations, or rank speculation.'" *Fontanez-Nunez v. Janssen*

*Ortho LLC*, 447 F.3d 50, 54-55 (1st Cir. 2006) (quoting *Ingram v. Brink's, Inc.*, 414 F.3d 222,

228–29 (1st Cir. 2005)). Instead, "the nonmovant must 'produce specific facts, in suitable

evidentiary form, to establish the presence of a trialworthy issue.'" *Clifford v. Barnhart*, 449 F.3d

276, 280 (1st Cir. 2006) (quoting *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Id.* (citing *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir. 2000)). The Federal Rules "mandate[] the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *accord Rojas-Ithier*, 394 F.3d at 42. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (further internal quotation marks omitted).

III.    DISCUSSION

In their amended complaint, Plaintiffs seek a declaratory judgment and injunctive relief to avoid foreclosure. They also seek damages from varying defendants for conversion, money had and received, unjust enrichment, breach of contract, breach of the implied covenant of good  faith and fair dealing, unfair or deceptive acts and practices in violation of state consumer protection laws, and violations of state credit reporting laws.  Defendants Wells Fargo, MERS, and Bank of America seek summary judgment on all of these claims, arguing that there are no genuine issues of material fact on any of them, and so they are entitled to judgment as a matter of law.

A. *Declaratory and Injunctive Relief*

Under Massachusetts law, if a mortgage grants a statutory "power of sale," and the mortgagor defaults, an authorized party "may sell the property at a public auction and convey the property to the purchaser in fee simple." *U.S. Bank Nat'l Ass'n v. Ibanez*, 941 N.E.2d 40, 49 (Mass. 2011) (citing Mass. Gen. Laws ch. 183, § 21). "[O]nly 'the mortgagee or his executors, administrators, successors or assigns' can exercise a statutory power of sale ... and foreclose without prior judicial authorization." *Mills v. U.S. Bank, NA*, 753 F.3d 47, 50 (1st Cir. 2014) (citing Mass. Gen. Laws ch. 183, § 21); *accord Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 290 (1st Cir. 2013); *Ibanez*, 941 N.E.2d at 50. As a rule, the mortgage holder need not also be the note holder to have authority to foreclose if notice of sale was made on or before June 22, 2012. *See Eaton v. Federal Nat'l Mortg. Ass'n*, 969 N.E.2d 1118, 1123-33 (Mass. 2012); *Sullivan v. Kondaur Capital Corp.*, 7 N.E.3d 1113, 1118 (Mass. App. Ct. 2014); *but see Galiastro v. Mortgage Elec. Registration Sys., Inc.*, 4 N.E.3d 270, 277 (Mass. 2014) (making an exception for certain cases that were pending on appeal when *Eaton* was decided on June 22, 2012). "'[A]ny effort to foreclose by a party lacking jurisdiction and authority to carry out a foreclosure under [Massachusetts] statutes is void.'" *Mills*, 753 F.3d at 50 (quoting *Ibanez*, 941 N.E.2d at 50).

In this case, it is undisputed that Plaintiffs defaulted on their loan. (#33 at 5; #1-3 at 108-09; #30 at exh. 3 at 3-4 .) On its face, the mortgage grants the statutory power of sale. (#30 at exh.1 at 67.) The original mortgagee was MERS, and the original note holder was Fremont. (*Id*. at exh. 1 at 55, 76.) Defendants contend that Wells Fargo is now both the mortgagee, through the assignment made by MERS in November 2006, and the note holder, claiming that it has had possession of the note since September 2005. (#29 at 6.) If Wells Fargo is the mortgagee, then under *Eaton*, it is

7

irrelevant whether it was also the note holder for purposes of the notice of sale made in 2010. *See Sullivan*, 7 N.E.3d at 1118; *Eaton*, 969 N.E.2d at 1123-33. The law is unclear whether a future notice of sale would trigger *Eaton* under these circumstances. The parties dispute whether Wells Fargo is the mortgage holder and the note holder, leading to the ultimate question of whether Wells Fargo has authority to foreclose on the subject property.

### 1.  Assignment of the Mortgage

Plaintiffs argue that Wells Fargo is not, in fact, the mortgagee. (#35 at 25.) Pointing out that Wells Fargo was not the original mortgage holder, they claim that Wells Fargo could only be the current holder of Plaintiffs' mortgage if it acquired the mortgage through a valid assignment. (*Id.* at 5-6, 25-26.) Plaintiffs take issue with the validity of the purported assignment from MERS to Wells Fargo, as trustee for the trust. (*Id.*; #1-3 at 114, 118-25; #30 at exh. 1 at 80.)

First, Plaintiffs challenge the execution of the assignment. The documented alleged assignment from MERS  to Wells Fargo purports to be signed by M. Kelly Michie, in his capacity as MERS's "1st Vice President," in front of Sandra L. Rivers, a notary public. (#30 at exh. 1 at 80.) Plaintiffs allege that Michie's signature looks different from his signatures that appear on other documents, and contend that the signature was likely made through a process known as "robo-signing." (#1-3 at 118-19.) Plaintiffs also claim that Michie did not actually sign the assignment in the presence of the notary public. (*Id.* at 119.) Plaintiffs further complain that, at the time of execution, both Michie and Rivers were employees of Countrywide Servicing, and that Michie was not truly employed by MERS. (*Id.* at 119, 121-22.) Plaintiffs offer no evidence in support of these assertions. Defendants, on the other hand, have provided evidence, in the form of affidavits by Michie, Brian Blake, an attorney for MERS's parent company, MERSCORP Holdings, and Melissa

Davidson, Assistant Vice President for BACHLSLP, that supports their claim that Michie properly signed the document as an officer of MERS, with authority to execute documents on MERS's behalf. (#30 at exh. 3 at 4, exh. 6 at 2, exh. 7 at 2.) The alleged assignment is also in evidence. (*Id.* at exh. 1 at 80.) Plaintiffs have not, then, met their burden to rebut the evidence Defendants present with their motion for summary judgment. *See Clifford*, 449 F.3d at 280.

Regardless, Plaintiffs lack standing to make their claims. The First Circuit has made it clear that "under Massachusetts law a mortgagor has standing *only* 'to challenge a mortgage assignment as invalid, ineffective or void (if, say, the assignor had nothing to assign or had no authority to make an assignment to a particular assignee).'" *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 9 (1st Cir. 2014) (quoting *Culhane*, 708 F.3d at 291) (emphasis in original); *accord Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 354 (1st Cir. 2013). "[S]tanding exists for challenges that contend that the assigning party never possessed legal title and, as a result, no valid transferable interest ever exchanged hands." *Id.* A mortgagor "'does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party but otherwise effective to pass legal title.'" *Wilson*, 744 F.3d at 9 (quoting *Culhane*, 708 F.3d at 291). The First Circuit has provided further guidance on the difference between "void" and "voidable" contracts, as follows:

> 'Void' contracts or agreements are 'those ... that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification.' *Allis v. Billings*, 47 Mass. 415, 417 (1843). By contrast, 'voidable' refers to a contract or agreement that is 'injurious to the rights of one party, which he may avoid at his election.' *Ball v. Gilbert*, 53 Mass. 397, 404 (1847). Thus, while the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it. *See Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 637-43, 863 N.E.2d 503 (2007).

*Id.* The alleged procedural infirmities claimed by Plaintiffs here, even if proved true, are precisely the types of allegations that would render the assignment no more than "voidable." *See id.* at 11-14

(borrower lacked standing to assert that person who signed assignment did not work for MERS or, alternatively, that she worked for both the assignor and assignee); *Culhane*, 708 F.2d at 294 (no standing to complain that the person who signed the assignment was named an officer of the assignor only for "administrative convenience"); *Carver v. Bank of N.Y. Mellon*, 2014 WL 6983431, at *6 (D. Mass. 2014) (no standing to challenge whether the use of a "robo-signing" process met legal requirements). "'[A] deficiency in an assignment that makes it merely voidable at the election of one party or the other would not automatically invalidate the title of a foreclosing mortgagee, and accordingly would not render void a foreclosure sale conducted by the assignee or its successors in interest.'" *Bank of N.Y. Mellon Corp. v. Wain*, 11 N.E.3d 633, 502 (Mass. App. Ct. 2014) (quoting *Sullivan*, 7 N.E.3d at 1116 n.7). Because the alleged defects Plaintiffs complain about would do no more than render the assignment voidable, Plaintiffs lack standing to assert them. *See Wilson*, 744 F.3d at 11-14.

While Plaintiffs do have standing to challenge the assignment as "void," they have not presented evidence to support such an argument. In order to show that an assignment was void, a party has to show that it was ineffective under the law. An assignment is ineffective if "'the assignor had nothing to assign or had no authority to make an assignment.'" *Id*. at 9 (quoting *Culhane*, 708 F.3d at 291). Here, there is no dispute that MERS was the original mortgage holder. (#30 at exh. 1 at 55.) The First Circuit has held that MERS has full authority to assign a mortgage. *See Mills*, 753 F.3d at 49; *Butler v. Deutsche Bank Trust Co. Americas*, 748 F.3d 28, 32-33 (1st Cir. 2014); *Serra v. Quantum Servicing Corp.*, 747 F.3d 37, 40-42 (1st Cir. 2014). Plaintiffs argue that MERS nevertheless could only act at the direction of Fremont, which they allege no longer owned the mortgage at the time the assignment was executed. (#1-3 at 120, 124.) The language of the mortgage

rebuts this argument, stating that MERS is a corporation which acts as nominee not only for Fremont, but also for Fremont's "successors and assigns." (#30 at exh. 1 at 55.) Also, courts in this jurisdiction have uniformly held that MERS has full power under Massachusetts law to assign a mortgage on behalf of subsequent lenders, and not just the original lender. *See Butler*, 748 F.3d at 32-33; *Woods*, 733 F.3d at 355; *Culhane*, 708 F.3d at 293. As a result, both the law and the mortgage document granted MERS the authority to assign the mortgage even if Fremont was no longer the lender. Notably, in their response, Plaintiffs do not challenge Defendants' assertion that MERS had the authority to assign the mortgage to Wells Fargo. (*See* #37 at 6.) In short, they have failed to make a showing that MERS could not validly assign the mortgage.

The assignment is valid on its face. Under Massachusetts law, an assignment is valid if it is "executed before a notary public, . . . by a person purporting to hold the position of . . . vice president . . . or other similar office . . . or otherwise purporting to be an authorized signatory for such entity." Mass. Gen. Laws ch. 183, § 54B. When an assignment complies with this statute, it is deemed to be valid and binding. *See Butler*, 748 F.3d at 34; *Wilson*, 744 F.3d at 12-13; *Kirtz v. Wells Fargo Bank N.A.*, 2012 WL 5989705, at *10 (D. Mass. 2012); *Wain*, 11 N.E.3d at 638; *Laguer v. OneWest Bank, FSB*, 2013 WL 831055, at *6 (Mass. Super. 2013); *Kitner v. Mortgage Lenders Network USA, Inc.*, 2013 WL 1324899, at *3 (Mass. Super. 2013). In this case, the assignment complies with the statute, as it is signed by Michie, as MERS's "1st Vice President," and was executed before Sandra Rivers, a notary public. (#30 at exh. 1 at 80.) As a result, it meets all of the requirements of Massachusetts law for a valid assignment. *See* Mass. Gen. Laws ch. 183, § 54B; *Wilson*, 744 F.3d at 12-13; *Wain*, 11 N.E.3d at 638.

Plaintiffs raise an additional challenge to the assignment: that "[t]he requisites for proper assignment are set forth in the PSA [pooling and service agreement]," and were not followed with respect to their mortgage. (#1-3 at 122; *see* #35 at 26-30.) PSAs are securitized trust agreements that "operate[] as the governing document for the Trust." *See Matt v. HSBC Bank*, 968 F. Supp. 2d 35, 360 (D. Mass. 2013). Plaintiffs do not claim to be parties to or intended third-party beneficiaries of the PSA at issue in this case. The PSA contains the following choice of law clause:

> THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

*Http://www.sec.gov/Archives/edgar/data/1339777/000116231805000873/m465psa.htm* (cited in #1-3 at 110). Under New York law, it is well settled that challenges such as Plaintiffs' are not cognizable.[3] *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86-87 (2d Cir. 2014). Borrowers are precluded from challenging a PSA to which they were not parties or intended third-party beneficiaries. *See id.* at 86 ("the rule adhered to in New York ... [is] that the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract"); *Bank of N.Y. Mellon v. Gales*, 116 A.D.3d 723, 725 (N.Y. 2014) (borrowers "did not have standing to assert noncompliance with the subject lender's pooling service agreement"); *Cimerring v. Merrill Lynch Mortg. Investors, Inc.*, 953 N.Y.S.2d 549, 2012 WL 2332358, at *9 (N.Y. Sup. 2012) (borrowers lacked standing "because they are not parties to [the PSA], nor do they allege that they are third-party beneficiaries to the agreement"). Accordingly, under the applicable law, Plaintiffs lack standing to challenge any alleged violations of the PSA.

---

[3]

The rule is the same under Massachusetts law. *See Butler*, 748 F.3d at 37.

Finally, in their amended complaint, Plaintiffs allege that the assignment violated MERS Membership Rules. (#1-3 at 122-24.) They contend that, prior to the assignment to Wells Fargo, Fremont sold the mortgage to Barclays Bank, which conveyed it to Securities Asset Backed Receivables LLC, as a depositor, which in turn conveyed it to Wells Fargo.[4] (*Id.*; *see* #35 at 2-3.) They claim that the MERS Membership Rules dictate that the transfers to the depositor and then to Wells Fargo should have been recorded in the Registry of Deeds, but that they were not.[5] (#1-3 at 123-24.) In their response, Plaintiffs do not present evidence in support of these allegations. Further, Plaintiffs do not claim to have been parties to MERS's internal rules, nor do they demonstrate third-party beneficiary status with regard to the rules. As is the case with PSAs, "claims that merely assert procedural infirmities in the assignment of a mortgage ... are barred for lack of standing." *Woods*, 733 F.3d at 354; *see Butler*, 748 F.3d at 37. Such infirmities are considered to make the transaction voidable, rather than void, and even then only subject to challenge by a party or direct beneficiary to the agreed-upon rules. *See id.*; *Wilson*, 744 F.3d at 10; *Woods*, 733 F.3d at 354. Courts dealing specifically with MERS's internal rules have also found that any alleged violation would render a transaction merely voidable, not void. *See Galvin v. EMC Mortg. Corp.*, 27 F. Supp. 3d 224, 232 (D.N.H. 2014) (citing *Hines v. Wells Fargo Bank, N.A.*, 2014 WL 897805, at \*5 (S.D. Tex. 2014)). It is clear, then, that Plaintiffs lack standing to challenge alleged violations of the MERS Membership Rules.

---

[4]

As established earlier, MERS maintained the right to assign the mortgage even if it changed hands from Fremont to another lender. (#30 at exh. 1 at 55.)

[5]

Defendants' uncontroverted evidence shows that the assignment from MERS to Wells Fargo was, in fact, recorded in the Suffolk County Registry of Deeds. (*Id.* at exh. 2 at 3; *see* #38-1.)

In sum, Plaintiffs have failed to show that there is a genuine issue of material fact about the validity of the assignment of the mortgage from MERS to Wells Fargo.

### 2. Identity of the Note Holder

Plaintiffs also challenge Defendants' claim that Wells Fargo is the note holder. As addressed below, Defendants have shown that Wells Fargo has, in fact, been the note holder at all relevant times. Regardless, it is undisputed that Wells Fargo, through its counsel, sent Plaintiffs a notice of sale on October 5, 2010, invoking its statutory power of sale. (#30 at exh. 3, at 89-90; *see* #33 at 10-11.) Under *Eaton*, because the notice of sale was sent well in advance of June 22, 2012, whether Wells Fargo was the note holder is irrelevant to the issue of its authority to foreclose on the property. *See* 969 N.E.2d at 1123-33; *accord Butler*, 748 F.3d at 38; *Sullivan*, 7 N.E.3d at 1118. Instead, its status as the mortgage holder alone authorizes Wells Fargo to foreclose. *See id*.

To the extent that Plaintiffs argue that the note holder's identity may be relevant because a sale has not yet occurred, they have failed to cite any law to that effect. The First Circuit held that:

> *Eaton* applies to two sets of litigants: (1) those challenging foreclosures for which the notice of sale was given after June 22, 2012, and (2) those with wrongful foreclosure claims (predicated on the theory that the foreclosing entity did not possess their note) that were on appeal as of June 22, 2012. To the claims of all litigants outside these closed sets, we apply the pre-*Eaton* rule, under which reunification is not required. *See Eaton*, 969 N.E.2d at 1131.

*Butler*, 748 F.3d at 38. Plaintiffs' case does not fall into either of the two categories, because notice of sale was given before June 22, 2012, and they were not appealing a ruling on their claims when *Eaton* was issued. *See id*. Because the record shows that Wells Fargo was the mortgage holder and had the authority to foreclose when it sent the notice of sale, and there is no suggestion that either of those statuses has changed, the Court need not resolve the issue of the note holder's identity with

respect to the foreclosure issue. *See id.*; *see also Jepson v. HSBC Bank USA, Nat'l Ass'n*, 2013 WL 639184, at \*6 n.8 (D. Mass. 2013).

Plaintiffs also seek declaratory judgment on the sole issue of note ownership. (#1-3 at 114-17.) On this matter, Plaintiffs first point out that the note was originally held by Fremont. (*Id.* at 114; *see* #30 at exh. 1 at 76-79.) Defendants have presented evidence that Wells Fargo became the note holder on or before September 29, 2005, which was the closing date of the trust set up by the PSA that governs the transaction. (#38 at exh. 1 at 3 [Affidavit of Daniel Sweeney, an Assistant Vice President of Wells Fargo]; #30 at exh. 8 [Affidavit of Thomas Good, counsel for Defendants, and a copy of the note purporting to be endorsed in blank by Steven Patton, Fremont's Senior Vice President].) Plaintiffs have not presented evidence to the contrary. Instead, they offer collateral challenges to the effectiveness of the transfer.

First, Plaintiffs claim that Defendants must produce the original note both to foreclose and so that they can verify whether the endorsement was proper. Under Massachusetts law, a foreclosing party need not have physical possession of the note in order to foreclose. *See Rice v. Wells Fargo Bank, N.A.*, 2 F. Supp. 3d 25, 36 (D. Mass. 2014); *Eaton*, 969 N.E.2d at 1131; *Sullivan*, 7 N.E.3d at 1119. Further, Plaintiffs present no evidence that rebuts Defendants' evidence that Wells Fargo possesses the endorsed note. As a result, this claim has no merit.

Next, Plaintiffs argue that the alleged transfer of interest did not comply with the requirements set out in the PSA. (#1-3 at 114-17.) The Court has already concluded, however, that Plaintiffs lack standing to challenge compliance with the PSA. *See Rajamin*, 757 F.3d at 86-87; *Bank of N.Y. Mellon*, 116 A.D.3d at 725; *Cimerring*, 2012 WL 2332358, at \*9.

Plaintiffs also challenge MERS's authority to transfer the note. (#1-3 at 115.) The evidence shows, however, that Wells Fargo obtained the note directly from Fremont, and not from MERS. (#38 at exh. 1 at 3; #30 at exh. 8.) Under the Uniform Commercial Code ("UCC"), because a note is a negotiable instrument, the note holder may endorse a note "in blank," making it payable to the bearer. *See* Mass. Gen. Laws ch. 106, §§ 3-205(b), 3-109(a)(2). Because Fremont, as the note holder, endorsed the note in blank, Wells Fargo became the note holder when it took possession of it in September 2005. *See id.* There is no evidence that Wells Fargo subsequently lost or transferred possession of the note.

In addition, Plaintiffs point to a letter they received dated March 23, 2011, titled "SGH, Inc. SII to Fremont Investment & Loan," "MORTGAGE LOAN TRANSFER DISCLOSURE NOTICE." (#33 at exh. 2 at 1-6 [Monges Affidavit and letter].) The letter stated, "We are the new creditor of your mortgage loan." (*Id.*) The letter also claimed that SGH had the note in its possession. (*Id.*) Plaintiffs state that they believe "SGH" to be the same or an affiliate of Signature Group Holdings, Inc., the company Fremont is alleged to have renamed itself following a reorganization in bankruptcy. (#1-3 at 116.) Plaintiffs admit "that they have not received any additional communications from SGH; that SGH has not directly demanded payment on the Note, or issued a default notice or initiated foreclosure proceedings in its own name." (#33 at exh. 2 at 10.) They assert, however, that a number of lawsuits and settlement agreements during the relevant time concerned Fremont's selling of defective loans. (#35 at 16.) Plaintiffs argue that, on these facts, there is a fact issue about the true identity of the note holder. Aside from this notice, however, there is no evidence of SGH's identity or that SGH actually owns the note. On the other hand, Defendants have evidence that they have the note in their possession. Under the UCC, one who possesses a note

endorsed in blank is the bearer of the note. *See* Mass. Gen. Laws ch. 106, §§ 3-205(b), 3-109(a)(2). As Wells Fargo has shown that it has possession of the note endorsed in blank, it is the note holder under the law.

In their response, Plaintiffs raise an additional challenge to Wells Fargo's status as the note holder. (#35 at 4.) They point out that the note itself is paginated "Page 1 of 4" through "Page 4 of 4" (*see* #30 at exh. 1 at 76-79) while the note attached to Good's affidavit is five pages long, with the "signature in blank" on an unnumbered fifth page. (#35 at 4; *see* #30 at exh. 8 at 5-9.) With their reply, Defendants proffered a new affidavit, in which Good provides the following explanation, under penalty of perjury:

> In their Opposition to the Defendants' Motion for Summary Judgment, Plaintiffs state that they believe the endorsement of the Note is contained on a separate, fifth page attached to the Note, rather than being made on the Note itself. This is incorrect[.] The endorsement was made on the back of page 4 of the original Note, not on a separate page. When I submitted my Affidavit with a copy of the Note, I was not able to file a two-sided copy of the Note.

(#37 at exh. 1 at 3.) With that, and in the absence of any contradictory evidence, the "fifth page" does not call into question whether Wells Fargo is the note holder.

On this record, Wells Fargo has shown that there is no genuine issue of material fact that it is the note holder. Further, Plaintiffs have failed to show a genuine issue of material fact about Wells Fargo's authority to foreclose. Accordingly, summary judgment is recommended in favor of Defendants on Plaintiffs' claims for declaratory and injunctive relief.

B. *State Law Claims*

Defendants also seek summary judgment on Plaintiffs' state statutory and common law claims.

1. Unfair or Deceptive Practices against MERS

In their amended complaint, Plaintiffs allege that MERS is liable for unfair or deceptive practices in violation of chapter 93A of the Massachusetts General Laws. (#1-3 at 125.) They complain about MERS's actions as mortgagee and its assignment of the mortgage. (*Id*. at 125-27.) A four-year statute of limitations applies to actions brought under Chapter 93A. *See* Mass. Gen. Laws ch. 260, § 5A; *Latson v. Plaza Home Mortg., Inc*., 708 F.3d 324, 326 (1st Cir. 2013); *Minasidis v. Pappas*, 24 N.E.3d 1061, 2015 WL 522752, at *2 n.5 (Mass. App. Ct. Jan. 30, 2015). The actions about which Plaintiffs complain pertain to the time period between March 2005, when they executed the mortgage, and November 2006, when the assignment from MERS to Wells Fargo was recorded. However, they did not file a lawsuit for six years. Plaintiffs offer no argument or evidence for tolling the statute of limitations and, indeed, do not even address Defendants' limitations argument in their response. As a result, Plaintiffs' chapter 93A claim against MERS should be dismissed as time barred.

Further, most of Plaintiffs' chapter 93A claims against MERS fail on the merits in any event because, as discussed earlier in this report, Defendants have shown that MERS's conduct and authority was lawful, and Plaintiffs have not met their summary judgment burden to present evidence to the contrary. *See Clifford*, 449 F.3d at 280. Plaintiffs have also neglected to submit evidence showing that they suffered damages as a result of MERS's conduct, as is required for their claim. *See Minasidis*, 2015 WL 522752, at *2. "'[W]hen ... damages are sought they must be proved and not left, as here, to speculation.'" *Id*. (quoting *Snelling & Snelling of Mass., Inc. v. Wall*, 345 Mass. 634, 636 (1963)). In response to Defendants' arguments about these claims in their motion, Plaintiffs merely assert that they "have alleged sufficient facts to support their Chapter 93A claims and virtually all of those facts are in dispute." (#35 at 32.) In so stating, however, Plaintiffs are

referencing the standard for responding to a motion to dismiss, not for summary judgment. *See Clifford*, 449 F.3d at 280. It is clear that Plaintiffs have failed to show that there is a genuine issue for trial on MERS's chapter 93A liability. On both limitations grounds and on the merits, then, it is recommended that summary judgment be entered on Plaintiff's Chapter 93A claim against MERS in Defendants' favor.

### 2. Servicing Claims

In the remainder of their claims against the movants, Plaintiffs complain about the servicing of their loan. Plaintiffs bring claims against Bank of America for unfair or deceptive acts and practices and inaccurate reporting to creditor agencies in violation of chapter 93A, breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, money had and received, and unjust enrichment. (#1-3 at 127-43.) And they bring claims against Wells Fargo for breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (*Id*. at 136-43.)

As a preliminary matter, these claims are based, in large part, on Plaintiffs' challenges to the transfer and the ownership of the note, as well as the assignment of the mortgage. (*Id*. at 127-43.) Plaintiffs complain that Bank of America and Wells Fargo collected loan payments and fees from them even though Wells Fargo did not, in fact own the loan; that they threatened foreclosure on the false premise that they owned the loan; and that they were complicit in the improper execution of the assignment. (*Id*.) As discussed above, there is no genuine issue of material fact that the assignment was valid and that Wells Fargo was the note holder at all relevant times. As a result, to the extent that Plaintiffs' claims depend on facts and law that have been found in Defendants' favor, their claims necessarily must fail.

Also, to the extent that Plaintiffs are further challenging actions taken under PSAs, they lack standing to do so. *See Rajamin*, 757 F.3d at 86-87; *Bank of N.Y. Mellon*, 116 A.D.3d at 725; *Cimerring*, 2012 WL 2332358, at *9.

In addition, although Plaintiffs claim that Bank of America can be held liable as a "successor" to CHLSLP for CHLSLP's actions, they have failed to present any evidence to prove that. (*Id*. at 127-43.)

Plaintiffs claim, as well, that Bank of America violated a Consent Order and Supplemental Consent Order that were entered in a California District Court in 2010 and 2012, respectively, in a case between the Federal Trade Commission, as plaintiff, and Countrywide Home Loans, Inc., and BACHLSLP, as defendants. (#1-3 at 130-32; #35 at 9-11 & exh. 5-7.) Those orders were the result of a finding that those defendants had engaged in a series of unlawful acts and practices in servicing loans that harmed borrowers. (#35 at exh. 5.) It is not clear how Plaintiffs believe that Defendants here violated the order, except in the broad sense that Countrywide and BACHLSLP had been found liable for unlawful practices and, so, one could speculate that they may have engaged in unlawful practices with respect to these Plaintiffs. It is clear, however, that Plaintiffs were not a party to that order, and have no standing to enforce it. *See Woods*, 733 F.3d at 357 (finding "nothing in [a] consent agreement [that] appears to create a private right of action on which Woods or similarly situated plaintiffs could challenge compliance with its terms"); *see also Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013); *SEC v. Prudential Sec. Inc*., 136 F.3d 153, 160 (D.C. Cir. 1998). Further, Plaintiffs have submitted no evidence that their loan was covered by the Consent Order. Finally, they have presented no evidence to show that, in fact, the Consent Order

was violated with respect to their situation. As a result, there is no genuine issue of fact regarding the Consent Order.

As a final matter, Plaintiffs have simply failed to support their remaining claims with evidence, despite the fact that Defendants challenged them in their summary judgment motion. (*See* #29 at 18-19; #35 at 31-36.) Instead, they merely assert that they have "sufficiently plead" facts or the elements of their claims. (#35 at 31-36.) As a result, Plaintiffs have not met their summary judgment burden, and there is no genuine issue of material fact on any of their servicing claims.

Accordingly, the court recommends summary judgment in Defendants' favor on all claims.

IV.     CONCLUSION

For the reasons stated above, the Court recommends that Defendants' Motion for Summary Judgment (#28) be ALLOWED, and that judgment be entered in favor of those defendants.

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st  Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
                                        M. Page Kelley
March 3, 2015                            United States Magistrate Judge